POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF MIAMI FIRE FIGHTERS' AND POLICE OFFICERS' RETIREMENT TRUST, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OKTA, INC., TODD MCKINNON, BRETT TIGHE, MICHAEL KOUREY, WILLIAM E. LOSCH, and DAVID BRADBURY <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION</u> <br><br> COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Okta, Inc. ("Okta" or the "Company"),

analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Okta securities between March 5, 2021 and March 22, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Okta provides identity solutions for enterprises, small and medium-sized businesses, universities, non-profits, and government agencies in the U.S. and internationally.  The Company offers a variety of cybersecurity products and services.  Following its completed merger with Auth0, Inc., a Delaware corporation ("Auth0"), on May 3, 2021 (the "Merger"), Okta began providing additional Auth0 products related to cybersecurity and login solutions.

3.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Okta had inadequate cybersecurity controls; (ii) as a result, Okta's systems were vulnerable to data breaches; (iii) Okta ultimately did experience a data breach caused by a hacking group, which potentially affected hundreds of Okta customers; (iv) Okta initially did not disclose and subsequently downplayed the severity of the data breach; (v) all the foregoing, once revealed, was likely to have a material negative impact on Okta's business, financial condition, and reputation; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4.      On or around March 21, 2022, hackers known as LAPSUS$ posted screenshots on their Telegram[1] channel showing what they claimed was Okta's internal company environment. Thereafter, on March 22, 2022, the Company's Chief Executive Officer ("CEO"), Defendant Todd McKinnon ("McKinnon"), posted a statement on his Twitter account, disclosing that, "[i]n late January 2022, Okta detected an ***attempt*** to compromise the account of a third party customer support engineer working for one of our subprocessors" (emphasis added); that "[t]he matter was investigated and contained by the subprocessor"; that "[w]e believe the screenshots shared online are connected to this January event"; and that, "[b]ased on our investigation to date, there is no evidence of ongoing malicious activity beyond the activity detected in January."

5.      On this news, Okta's stock price fell $2.98 per share, or 1.76%, to close at $166.43 per share on March 22, 2022.

6.      Later, on March 22, 2022, during after-market hours, in a statement on Okta's website, the Company's Chief Security Officer ("CSO"), Defendant David Bradbury ("Bradbury"), disclosed, *inter alia*, that "[a]fter a thorough analysis of [the LAPSUS$] claims, we have concluded that a small percentage of customers – approximately 2.5% – have potentially been impacted and whose data may have been viewed or acted upon."

7.      Following Okta's updated statement, multiple news outlets reported that hundreds of the Company's clients were potentially affected by the January 2022 data breach.  For example, on March 23, 2022, *CNN* published an article entitled "Okta concedes hundreds of clients could be affected by breach[,]" noting that, despite the Company's statement that "a small percentage of customers – approximately 2.5% – have potentially been impacted[,]" the Company "has over

---

[1] Telegram is a cloud-based instant-messaging service.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

15,000 customers, according to its website." That same day, *Reuters* and others published similar reports.

8.      Separately, Okta was downgraded by Raymond James from "strong buy" to "market perform," noting, among other things, that "[w]hile partners were willing to trust Okta's track record, the handling of its latest security incident adds to our mounting concerns."

9.      Following Okta's after-market update and Raymond James downgrade, the Company's stock price fell $17.88 per share, or 10.74%, to close at $148.55 per share on March 23, 2022.

10.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Okta is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

14.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

15.     Plaintiff, as set forth in the attached Certification, acquired Okta securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Okta is a Delaware corporation with principal executive offices located at 100 First Street, Suite 600, San Francisco, California 94105.  Okta's Class A common stock trades in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the trading symbol "OKTA".

17.     Defendant McKinnon has served as Okta's CEO at all relevant times.  McKinnon is also a co-founder of the Company.

18.     Defendant Brett Tighe ("Tighe") has served as Okta's Chief Financial Officer ("CFO") since January 2022.  Tighe also served as the Company's interim CFO from June 2021 to his appointment as permanent CFO in January 2022.

19.     Defendant Michael Kourey ("Kourey") served as Okta's CFO from March 2021 to June 2021.

20.     Defendant William E. Losch ("Losch") served as Okta's CFO from before the start of the Class Period to March 2021.

21.     Defendant Bradbury has served as Okta's CSO at all relevant times.

22.     Defendants McKinnon, Tighe, Kourey, Losch, and Bradbury are sometimes referred to herein as the "Individual Defendants."

23.     The Individual Defendants possessed the power and authority to control the contents of Okta's SEC filings, press releases, and other market communications.  The Individual

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Defendants were provided with copies of Okta's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Okta, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

24.     Okta provides identity solutions for enterprises, small and medium-sized businesses, universities, non-profits, and government agencies in the U.S. and internationally.  The Company offers a variety of cybersecurity products and services.  Following the completed Merger with Auth0 on May 3, 2021, Okta began providing additional Auth0 products related to cybersecurity and login solutions.

### Materially False and Misleading Statements Issued During the Class Period

25.     The Class Period begins on March 5, 2021, the day after Okta filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its fiscal fourth quarter and year ended January 31, 2021 (the "2021 10-K").  In discussing generic, potential risks related to data breaches, that filing simultaneously assured investors, in relevant part, that Okta had made "significant efforts to create security barriers to such threats" and that "[t]he security measures we have integrated into our internal systems and platform . . . are designed to detect unauthorized activity and prevent or minimize security breaches[.]"

26.     Appended as an exhibit to the 2021 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants McKinnon and Losch certified that "[t]he Company's [2021 10-K] fully complies with the requirements of Section 13(a) or Section 15(d) of the Exchange Act" and that "[t]he information contained in the [2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

27.     On May 3, 2021, Okta issued a press release announcing the completion of the Merger with Auth0. That press release stated, in relevant part:

> Both Okta's and Auth0's platforms will be supported, invested in, and integrated over time — accelerating innovation and making the Okta Identity Cloud even more compelling for the full spectrum of customers and users.

> * * *

> Okta's and Auth0's comprehensive, complementary, and flexible identity platforms solve every identity use case, regardless of the audience or user . . . . With combined expertise across developer communities and the enterprise, Okta and Auth0 will provide enhanced depth and breadth of identity solutions and will be even better suited to integrate quickly into the modern tech stack of today's developers.

28.     On May 26, 2021, Okta issued a press release announcing the Company's financial results for its first quarter ended April 30, 2021. That press release quoted Defendant McKinnon, who represented, in relevant part: "With the closing of the Auth0 acquisition earlier this month, we are further enhancing Okta's market-leading identity platform, enabling us to provide even more choice and unprecedented innovation to customers and developers."

29.     On May 27, 2021, Okta filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended April 30, 2021 (the "1Q22 10-Q"). That filing contained the same statements as referenced in ¶ 25, *supra*, regarding Okta's cybersecurity measures.

30.     Appended as an exhibit to the 1Q22 10-Q were substantively the same SOX certifications as referenced in in ¶ 26, *supra*, signed by Defendants McKinnon and Kourey.

7

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

31. On September 2, 2021, Okta filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended July 31, 2021 (the "2Q22 10-Q"). That filing contained the same statements as referenced in ¶ 25, *supra*, regarding Okta's cybersecurity measures.

32. Additionally, with respect to Okta's acquired Auth0 business, the 2Q22 10-Q stated, in relevant part, that "[t]he Company expects to combine Auth0's developer-centric identity solution with the Company's Okta Identity Cloud to drive synergies, product options and value for current and future customers."

33. Appended as an exhibit to the 2Q22 10-Q were substantively the same SOX certifications as referenced in in ¶ 26, *supra*, signed by Defendants McKinnon and Tighe.

34. On December 2, 2021, Okta filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended October 31, 2021 (the "3Q22 10-Q"). That filing contained the same statements as referenced in ¶ 25, *supra*, regarding Okta's cybersecurity measures.

35. Appended as an exhibit to the 3Q22 10-Q were substantively the same SOX certifications as referenced in in ¶ 26, *supra*, signed by Defendants McKinnon and Tighe.

36. On March 7, 2022, Okta filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its fiscal fourth quarter and year ended January 31, 2022 (the "2022 10-K"). That filing contained the same statements as referenced in ¶ 25, *supra*, regarding Okta's cybersecurity measures.

37. Appended as an exhibit to the 2022 10-K were substantively the same SOX certifications as referenced in in ¶ 26, *supra*, signed by Defendants McKinnon and Tighe.

38. The statements referenced in ¶¶ 25-37 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse

facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Okta had inadequate cybersecurity controls; (ii) as a result, Okta's systems were vulnerable to data breaches; (iii) Okta ultimately did experience a data breach caused by a hacking group, which potentially affected hundreds of Okta customers; (iv) Okta initially did not disclose the data breach; (v) all the foregoing, once revealed, was likely to have a material negative impact on Okta's business, financial condition, and reputation; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

39.    On or around March 21, 2022, hackers known as LAPSUS$ posted screenshots on their Telegram channel showing what they claimed was Okta's internal company environment. Thereafter, on March 22, 2022, Defendant McKinnon posted a statement on his Twitter account, disclosing the following:

> In late January 2022, Okta detected an attempt to compromise the account of a third party customer support engineer working for one of our subprocessors. The matter was investigated and contained by the subprocessor. (1 of 2)
>
> * * *
>
> We believe the screenshots shared online are connected to this January event. Based on our investigation to date, there is no evidence of ongoing malicious activity beyond the activity detected in January. (2 of 2)

40.    On this news, Okta's stock price fell $2.98 per share, or 1.76%, to close at $166.43 per share on March 22, 2022.  Despite this decline in the Company's stock price, Okta securities continued to trade at artificially inflated prices throughout the remainder of the Class Period as a result of Defendants' continued misrepresentations and omissions regarding the true scope and severity of the data breach.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

41.     For example, in answering an individual's reply to the same March 22, 2022 Twitter post, which questioned why "Okta gives 'superuser' access to customer tenants to people who are not Okta employees[,]" Defendant McKinnon downplayed the level of access a potential breach would have afforded any malicious actors, stating as follows:

> Let's be clear. Nobody had "SuperUser admin". Support reps have access to a support tool with the (unfortunate) name of SuperUser. What they do with that tool is limited to what a support rep needs. It's built with "Least privileges" in mind. Our blog has more detail.

In response, other individuals continued to reply to Defendant McKinnon's Twitter post—and went unanswered—questioning whether there was "[a]ny proof[]" regarding the data breach and whether "the 'attempt' [was] successful?"

42.     Also on March 22, 2022, Okta published an "Official Okta Statement on LAPSUS$ Claims" on the Company's website, wherein Okta's CSO, Defendant Bradbury, assured investors, in relevant part:

> ***The Okta service has not been breached*** and remains fully operational. There are no corrective actions that need to be taken by our customers.
>
> In January 2022, Okta detected an ***unsuccessful*** attempt to compromise the account of a customer support engineer working for a third-party provider. As part of our regular procedures, we alerted the provider to the situation, while simultaneously terminating the user's active Okta sessions and suspending the individual's account. Following those actions, we shared pertinent information (including suspicious IP addresses) to supplement their investigation, which was supported by a third-party forensics firm.
>
> Following the completion of the service provider's investigation, we received a report from the forensics firm this week. The report highlighted that there was a five-day window of time between January 16-21, 2022, where an attacker had access to a support engineer's laptop. This is consistent with the screenshots that we became aware of yesterday.
>
> ***The potential impact to Okta customers is limited to the access that support engineers have.*** These engineers are unable to create or delete users, or download customer databases. Support engineers do have access to limited data - for example, Jira tickets and lists of users - that were seen in the screenshots. Support engineers are also able to facilitate the resetting of passwords and multi-factor authentication factors for users, but are unable to obtain those passwords.

10

We are actively continuing our investigation, including identifying and contacting those customers that may have been impacted. There is no impact to Auth0 customers, and there is no impact to HIPAA and FedRAMP customers.

We take our responsibility to protect and secure our customers' information very seriously. ***We are deeply committed to transparency*** and will communicate additional updates when available.

(Emphases added.)

43.     The statements referenced in ¶¶ 39 and 41-42 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Okta had inadequate cybersecurity controls; (ii) as a result, Okta's systems were vulnerable to data breaches; (iii) Okta ultimately did experience a data breach caused by a hacking group, which potentially affected hundreds of Okta customers; (iv) Okta downplayed the severity of the data breach; (v) all the foregoing, once revealed, was likely to have a material negative impact on Okta's business, financial condition, and reputation; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **The Truth Fully Emerges**

44.     On March 22, 2022, during after-market hours, in a statement on Okta's website, Defendant Bradbury revealed, in relevant part:

As we shared earlier today, we are conducting a thorough investigation into the recent LAPSUS$ claims and any impact on our valued customers. The Okta service is fully operational, and there are no corrective actions our customers need to take.

***After a thorough analysis of these claims, we have concluded that a small percentage of customers – approximately 2.5% – have potentially been impacted and whose data may have been viewed or acted upon.*** We have identified those customers and already reached out directly by email. We are sharing this interim update, consistent with our values of customer success, integrity, and transparency.

> Our customers are our pride, purpose, and #1 priority. We take our responsibility to protect and secure customers' information very seriously. We deeply apologize for the inconvenience and uncertainty this has caused.

(Emphasis added.)

45.     Following Okta's updated statement, multiple news outlets reported that hundreds of the Company's clients were potentially affected by the January 2022 data breach.  For example, on March 23, 2022, *CNN* published an article entitled "Okta concedes hundreds of clients could be affected by breach[,]" noting that, despite the Company's statement that "a small percentage of customers – approximately 2.5% – have potentially been impacted[,]" the Company "has over 15,000 customers, according to its website."  That same day, *Reuters* and others published similar reports.

46.     Separately, Okta was downgraded by Raymond James from "strong buy" to "market perform," noting, among other things, that "[w]hile partners were willing to trust Okta's track record, the handling of its latest security incident adds to our mounting concerns."

47.     Following Okta's after-market update and Raymond James downgrade, the Company's stock price fell $17.88 per share, or 10.74%, to close at $148.55 per share on March 23, 2022.

48.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**Post-Class Period Developments**

49.     Between March 23 and March 24, 2022, news outlets reported that the suspected LAPSUS$ hackers behind Okta's January 2022 data breach were teenagers.  For example, on March 23, 2022, *Bloomberg* reported that researchers investigating LAPSUS$ "have traced the attacks to a 16-year-old living at his mother's house near Oxford, England[,]" who "they believe .

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

. . is the mastermind." Similarly, on March 24, 2022, *Bloomberg* reported that "London police arrested seven people in the U.K. on Thursday in connection with an investigation into" LAPSUS$, and that "[t]he suspects, ages 16 to 21, have been released under investigation[.]"

50.     On March 25, 2022, as part of an FAQ regarding the January 2022 data breach, Okta apologized for not notifying customers regarding the cybersecurity attack in January when it was initially discovered. That statement stated, in relevant part:

> **Why didn't Okta notify customers in January?**
>
> We want to acknowledge that we made a mistake. Sitel is our service provider for which we are ultimately responsible.
>
> In January, we did not know the extent of the Sitel issue – only that we detected and prevented an account takeover attempt and that Sitel had retained a third party forensic firm to investigate. At that time, we didn't recognize that there was a risk to Okta and our customers. We should have more actively and forcefully compelled information from Sitel.
>
> In light of the evidence that we have gathered in the last week, it is clear that we would have made a different decision if we had been in possession of all of the facts that we have today.

(Emphasis in original.)

51.     Following these additional developments, Okta's stock price closed as low as $138.11 per share on March 25, 2022.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Okta securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Okta securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Okta or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

54.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

55.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Okta;

- whether the Individual Defendants caused Okta to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- whether the prices of Okta securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

58.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Okta  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Okta securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

59.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

60.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

15

*United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## **COUNT I**

### **(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

61.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

62.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

63.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Okta securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Okta securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

64.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Okta securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Okta's finances and business prospects.

65.     By virtue of their positions at Okta, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

66.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Okta, the Individual Defendants had knowledge of the details of Okta's internal affairs.

67.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Okta.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Okta's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Okta securities was artificially inflated throughout the Class Period.  In ignorance of the adverse

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

facts concerning Okta's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Okta securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

68.     During the Class Period, Okta securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Okta securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Okta securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Okta securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

69.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

71.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.     During the Class Period, the Individual Defendants participated in the operation and management of Okta, and conducted and participated, directly and indirectly, in the conduct of Okta's business affairs.  Because of their senior positions, they knew the adverse non-public information about Okta's misstatement of income and expenses and false financial statements.

73.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Okta's financial condition and results of operations, and to correct promptly any public statements issued by Okta which had become materially false or misleading.

74.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Okta disseminated in the marketplace during the Class Period concerning Okta's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Okta to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Okta within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Okta securities.

75.     Each of the Individual Defendants, therefore, acted as a controlling person of Okta. By reason of their senior management positions and/or being directors of Okta, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Okta to engage in the unlawful acts and conduct complained of herein.  Each of the Individual

Defendants exercised control over the general operations of Okta and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

76.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Okta.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  May 20, 2022

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

KLAUSNER, KAUFMAN, JENSEN &
LEVINSON
Robert D. Klausner
(*pro hac vice* application forthcoming)
7080 NW 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS