1  James M. Wagstaffe (#95535)
   Frank Busch (#258288)
2  **WAGSTAFFE, VON LOEWENFELDT,**
   **BUSCH & RADWICK LLP**
3  100 Pine Street, Suite 2250
   San Francisco, California 94111
4  Telephone: (415) 357-8900
   Facsimile: (415) 357-8910
5  wagstaffe@wvbrlaw.com
   busch@wvbrlaw.com
6
7  *Proposed Liaison Counsel for the Class*

8  **LABATON SUCHAROW LLP**
   Christopher J. Keller (*pro hac vice* forthcoming)
9  Eric J. Belfi (*pro hac vice* forthcoming)
   Francis P. McConville (*pro hac vice* forthcoming)
10 140 Broadway
   New York, New York 10005
11 Telephone: (212) 907-0700
   Facsimile: (212) 818-0477
12 ckeller@labaton.com
   ebelfi@labaton.com
13 fmcconville@labaton.com

14 *Counsel for Proposed Lead Plaintiff*
   *the Nebraska Investment Council and Proposed*
15 *Lead Counsel for the Class*

16             **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
17

| | |
|---|---|
| CITY OF MIAMI FIRE FIGHTERS' AND POLICE OFFICERS' RETIREMENT TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OKTA, INC., TODD MCKINNON, BRETT TIGHE, MICHAEL KOUREY, WILLIAM E. LOSCH, and DAVID BRADBURY,<br><br>Defendants. | Case No. 3:22-cv-02990-SI<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION OF THE NEBRASKA INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>**Date:** August 26, 2022<br>**Time:** 10:00 a.m.<br>**Courtroom:** 1 – 17th Floor<br>**Judge:** Susan Illston |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

I.    STATEMENT OF THE ISSUES TO BE DECIDED ............................................................ 1

II.    PRELIMINARY STATEMENT ................................................................................................ 2

III.    FACTUAL BACKGROUND .................................................................................................... 3

IV.    ARGUMENT ............................................................................................................................... 5

    A.    Nebraska Should Be Appointed Lead Plaintiff ........................................................... 5

        1.    The PSLRA Standard for Appointing Lead Plaintiff ................................ 5

    B.    Nebraska Is the "Most Adequate Plaintiff" ............................................................. 6

        1.    Nebraska Satisfied the PSLRA's Procedural Requirements ...................... 6

        2.    Nebraska Has the Largest Financial Interest in the Outcome of the Action ................................................................................................... 6

        3.    Nebraska Satisfies Rule 23's Typicality and Adequacy Requirements ............................................................................................... 7

            (a)    Nebraska's Claims Are Typical of Those of the Class ................. 7

            (b)    Nebraska Will Fairly and Adequately Protect the Interests of the Class ............................................................................................ 8

        4.    Nebraska Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA ....................................................... 9

    C.    The Court Should Approve Nebraska's Choice of Counsel ................................ 10

CONCLUSION ........................................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ..................................................................................6, 10

*In re Cohen v. United States District Court*,
    586 F.3d 703 (9th Cir. 2009) ........................................................................................10

*In re Critical Path, Inc. Sec. Litig.*,
    156 F. Supp. 2d 1102 (N.D. Cal. 2001) .........................................................................9

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D 427 (S.D. Tex. 2002) ...............................................................................9, 10

*Felix v. Symantec Corp.*,
    No. 18-cv-02902 WHA, 2018 WL 4029053 (N.D. Cal. Aug. 23, 2018) .................7, 8

*Lloyd v. CVB Fin. Corp.*,
    No. 10-cv-06256 MMM, 2011 WL 13128303 (C.D. Cal. Jan. 21, 2011) ....................7

*Perlmutter v. Intuitive Surgical, Inc.*,
    No. 10-cv-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ..........................9

*Richardson v. TVIA, Inc.*,
    No. 06-cv-06304-RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .....................7

*Tanne v. Autobytel*,
    226 F.R.D. 659 (C.D. Cal. 2005) ..................................................................................7

**Rules & Statutes**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

15 U.S.C. 78u-4 *et seq.* ........................................................................................... *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04-cv-08141 (S.D.N.Y.) ........................................................................................10

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    No. 08-md-01963 (S.D.N.Y.) ......................................................................................10

*In re Broadcom Corp. Class Action Litig.*,
    No. 06-cv-05036 (C.D. Cal.) .......................................................................................11

*In re Countrywide Fin. Corp. Sec. Litig.*,
   No. 07-cv-5295 (C.D. Cal.) ........................................................................................................10

*In re Mercury Interactive Corp. Sec. Litig.*,
   No. 05-cv-3395 (N.D. Cal.) ........................................................................................................10

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .................................9

**NOTICE OF MOTION AND MOTION**

TO:   ALL PARTIES AND THEIR COUNSEL OF RECORD

**PLEASE TAKE NOTICE** that Lead Plaintiff movant the Nebraska Investment Council ("Nebraska")[1] by and through its counsel, hereby moves this Court in Courtroom 1 – 17th Floor of the Honorable Susan Illston at the United States District Court, Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, on August 26, 2022 at 10:00 a.m., or as soon thereafter as the matter may be heard, for the entry of an Order: (i) appointing Nebraska as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.*; (ii) approving the selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and Wagstaffe, von Loewenfeldt, Busch & Radwick LLP ("WVBR") as Liaison Counsel for the Class (the "Motion"); and (iv) granting such other and further relief as the Court may deem just and proper.

This Motion is made on the grounds that Nebraska believes it is the "most adequate plaintiff" under the PSLRA, and should therefore be appointed Lead Plaintiff. Specifically, Nebraska believes it has the "largest financial interest" in the relief sought by the Class in this litigation. Nebraska also otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of other Class members' claims, and because it will fairly and adequately represent the Class.

This Motion is based upon the accompanying Memorandum of Law in support thereof, the Declaration of James M. Wagstaffe ("Wagstaffe Decl.") filed herewith, the pleadings and other filings herein, and such other written or oral argument as may be permitted by the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   STATEMENT OF THE ISSUES TO BE DECIDED**

1.   Whether the Court should appoint Nebraska as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and

---

[1] All references to "Nebraska" relate specifically to the Omaha School Employees' Retirement System, as the State of Nebraska Defined Benefit Plan that transacted in the subject security.

2. Whether the Court should approve of Nebraska's selection of Labaton Sucharow as Lead Counsel for the Class and WVBR as Liaison Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

## II. PRELIMINARY STATEMENT

Presently pending before the Court is a securities class action alleging that Okta, Inc. ("Okta") and certain of its current and former senior executives (together with Okta, "Defendants") violated Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) in connection with a January 2022 data breach of Okta's security systems by a hacking group known as Lapsus$. Specifically, the Action alleges that, from March 5, 2021 to March 23, 2022, inclusive (the "Class Period"), Defendants failed to disclose that Okta's platform had inadequate cybersecurity controls and that Okta initially concealed and subsequently downplayed the severity of the January 2022 breach.

Under the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which member of the Class has the "largest financial interest" in the relief sought in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Nebraska respectfully submits that it should be appointed Lead Plaintiff because it has the "largest financial interest" in this litigation and has made the requisite showing of typicality and adequacy required by the standards of the PSLRA. As set forth in detail below, Nebraska incurred ***$2,181,843.99*** in losses as a result of its Class Period transactions in Okta shares.[2] In light of this significant loss, Nebraska has a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.

---

[2] A Copy of the PSLRA-required Certification of Nebraska, signed by Douglas J. Peterson, the Attorney General of the State of Nebraska, is attached as Exhibit A to the accompanying Wagstaffe Decl., which sets forth all transactions for Nebraska in Okta shares during the Class Period.

1     Nebraska also meets the typicality and adequacy requirements of Rule 23 as required by the PSLRA, because its claims are typical of those of absent Class members and because it will fairly and adequately represent the interests of the Class. As set forth in greater detail in its Declaration, Nebraska fully understands the Lead Plaintiff's obligations to the Class under the PSLRA, and it is willing and able to undertake those responsibilities to guarantee vigorous prosecution of this action. Accordingly, Nebraska is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

    Nebraska has also demonstrated its adequacy through its selection of Labaton Sucharow as Lead Counsel on behalf of the Class. Labaton Sucharow is a nationally recognized securities class action firm that has recovered billions of dollars for the benefit of injured investors, and has the expertise and resources necessary to handle litigation of this complexity and scale.

    Accordingly, Nebraska requests that the Court appoint it Lead Plaintiff and otherwise grant its Motion.

## III. FACTUAL BACKGROUND

    Okta provides identity solutions for enterprises, small and medium-sized businesses, universities, non-profits, and government agencies throughout the world. The Company offers a variety of cybersecurity products and services. Following its completed merger with Auth0, Inc. ("Auth0") on May 3, 2021, Okta began providing additional Auth0 cybersecurity products.

    Okta's customers, which include large corporations like FedEx Corp. and Moody's Corp., depend on the Company's multi-factor authentication services to protect them from cybersecurity threats. Okta's revenue comes from these customers subscribing to, and then renewing their subscriptions for, the Company's authentication services. Okta's internal policies require that Okta notify its customers in the event of a data breach that may compromise their sensitive information, including a sign-in from a new or unrecognized user. This notification policy allows Okta customers to take their own remedial actions to prevent or minimize any injuries that may occur as a result of the breach.

    In March 2021 (prior to the start of the Class Period), Okta disclosed that it had fallen victim to a cyberattack in which hackers reportedly had access to "root shells" within Okta's

corporate network. Access to the root shells allowed the hackers to gain access to very sensitive information, including footage from security cameras within Okta's corporate offices in San Francisco. In the months following this attack, Okta continuously touted its ability to secure its customers systems from outsiders.

Then, on January 12, 2022, hackers were able to control a workstation used by an engineer for Sitel Group—a third-party vendor supplying customer service to Okta. At the time of this breach, Okta had knowledge that this workstation was infiltrated and that customers were exposed but waited until late March 2022 to report this event to its customers and investors. Specifically, on March 22, 2022, the Company's Chief Executive Officer, Defendant Todd McKinnon, posted a statement on his Twitter account disclosing that "[i]n late January 2022, Okta detected an attempt to compromise the account of a third party customer support engineer working for one of our subprocessors"; that "[t]he matter was investigated and contained by the subprocessor"; that "[w]e believe the screenshots shared online are connected to this January event"; and that, "[b]ased on our investigation to date, there is no evidence of ongoing malicious activity beyond the activity detected in January." On this news, Okta's stock price fell $2.98 per share, or 1.76 percent, to close at $166.43 per share on March 22, 2022. This breach was concerning to customers because of Okta's role as an authentication hub for managing access to numerous other technology platforms.

Subsequently, on March 22, 2022, in an after-hours statement on Okta's website, the Company's Chief Security Officer, Defendant David Bradbury, disclosed that "[a]fter a thorough analysis of [the LAPSUS$] claims, we have concluded that a small percentage of customers - approximately 2.5% - have potentially been impacted and whose data may have been viewed or acted upon." Okta also announced mitigation efforts it had put in place after the breach, including terminating its relationship with third-party contractor Sitel, requiring all other third-party contractors to use Okta-managed devices, and pledging to take action within 8 hours of learning of a breach (rather than the three weeks it took to untangle the Lapsus$ breach). On this news, the Company's stock price fell $17.88 per share, or 10.74 percent, to close at $148.55 per share on March 23, 2022.

The action alleges that, throughout the Class Period, Defendants knowingly misled investors by failing to disclose that: (1) Okta had inadequate cybersecurity controls; (2) as a result, Okta's systems were vulnerable to data breaches; and (3) Okta ultimately did experience a data breach caused by a hacking group, which potentially affected hundreds of Okta customers.

As a result, Nebraska and the Class have been damaged from Defendants' alleged violations of the U.S. securities laws.

## IV.   ARGUMENT

### A.   Nebraska Should Be Appointed Lead Plaintiff

Nebraska respectfully submits that it is the presumptively "most adequate plaintiff" because it has complied with the PSLRA procedural requirements, holds the largest financial interest of any qualified movant, and otherwise satisfies Rule 23's typicality and adequacy requirements.

#### 1.   The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B).  First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class --
>
> (I)   of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)   that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, under the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff.  Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (… the "most adequate plaintiff") ….

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person who: (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (discussing three-step competitive process for selecting a lead plaintiff).  This presumption "'may be rebutted only upon proof … that the presumptively most adequate plaintiff [ ] will not fairly and adequately protect the interests of the class'" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cavanaugh*, 306 F.3d at 730.

**B.     Nebraska Is the "Most Adequate Plaintiff"**

**1.     Nebraska Satisfied the PSLRA's Procedural Requirements**

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  On May 20, 2022, the City of Miami Fire Fighters' and Police Officers' Retirement Trust, represented by Pomerantz LLP, filed the above-captioned action in this District.  That same day, Pomerantz LLP published a notice on *Globe Newswire* alerting investors to the pendency of the action and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is July 19, 2022.  *See* Ex. D.  Accordingly, Nebraska has timely moved for appointment as Lead Plaintiff through the filing of this Motion.

**2.     Nebraska Has the Largest Financial Interest in the Outcome of the Action**

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with "the largest financial interest in the relief

sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Richardson v. TVIA, Inc.*, No. C 06 06304-RMW, 2007 WL 1129344, at *2 (N.D. Cal. Apr. 16, 2007) (discussing the PSLRA's lead plaintiff appointment process).

During the Class Period, Nebraska suffered substantial losses of **$2,181,843.99** as a result of its transactions in Okta shares. *See* Loss Analysis, Wagstaffe Decl. Ex. B. Nebraska is presently unaware of any other movant with a larger financial interest in the outcome of the Action. Consequently, and because Nebraska also satisfies Rule 23's typicality and adequacy requirements, Nebraska is entitled to the legal presumption that it is the most adequate plaintiff.

### 3. Nebraska Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, Nebraska satisfies the applicable requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (i) the class is so numerous that joinder of all members is impracticable; ii) there are questions of law or fact common to the class; (iii) such claims are typical of those of the class; and (iv) the representative will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). However, at the lead-plaintiff-selection stage, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See, e.g.*, *Tanne v. Autobytel*, 226 F.R.D. 659, 667 (C.D. Cal. 2005) (noting that a "preliminary showing" of typicality and adequacy is all that is necessary at the lead plaintiff stage).

#### (a) Nebraska's Claims Are Typical of Those of the Class

"The typicality requirement is satisfied when the putative lead plaintiff has suffered the same injuries as absent class members as a result of the same conduct by the defendants." *Felix v. Symantec Corp.*, No. C 18-02902 WHA, 2018 WL 4029053, at *3 (N.D. Cal. Aug. 23, 2018) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The claims need not be "substantially identical" to support a finding of typicality. *Lloyd v. CVB Fin. Corp.*, No. CV 10-06256 MMM (PJWx), 2011 WL 13128303, at *5 (C.D. Cal. Jan. 21, 2011) (citation omitted).

Here, the claims that Nebraska asserts are typical of the claims of the other members of the putative Class because, like all other Class members, Nebraska: (i) purchased Okta shares during the Class Period; (ii) was adversely affected by Defendants' alleged violations of the federal securities laws; and (iii) suffered damages as a result thereof.  Because the claims that Nebraska asserts are based on the same legal theories and arise "from the same event or practice or course of conduct that gives rise to the claims of other class members," typicality is satisfied. *See Newberg, et al.*, NEWBERG ON CLASS ACTIONS, §3:13 (4th ed. 2002).  Thus, Nebraska satisfies the typicality requirement.

### (b)  Nebraska Will Fairly and Adequately Protect the Interests of the Class

Nebraska will fairly and adequately represent the interests of the proposed Class.  Under Rule 23(a)(4), a representative party must "fairly and adequately protect the interests of the Class."  Fed. R. Civ. P. 23(a)(4).  The thrust of the adequacy inquiry is: "(1) whether there are conflicts within the class; and (2) whether plaintiff and counsel will vigorously fulfill their duties to the class."  *Symantec Corp.*, 2018 WL 4029053, at *3 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)).

Here, no antagonism exists between Nebraska's interests and those of the absent Class members; rather, the interests of Nebraska and Class members are squarely aligned.  In addition, Nebraska has demonstrated its adequacy through its selection of Labaton Sucharow as Lead Counsel to represent the Class in this action.  As discussed more fully below, Labaton Sucharow is highly experienced in prosecuting securities class actions vigorously and efficiently, and timely submitted its choice to the Court for approval, in accordance with the PSLRA.  *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v).  Finally, as a sophisticated institutional investor, Nebraska is well-versed in the oversight of counsel.  Accordingly, because Nebraska is highly incentivized and capable to diligently oversee counsel and maximize recovery for the Class, it satisfies the adequacy requirement.

### 4. Nebraska Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

In addition to satisfying the requirements of Rule 23, Nebraska—a sophisticated institutional investor—is precisely the type of investor Congress envisioned, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See id.* at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.

To this end, many courts, including courts in this District, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions. *See Perlmutter v. Intuitive Surgical, Inc*., No. 10-CV-03451-LHK, 2011 WL 566814, at *13 (N.D. Cal. Feb. 15, 2011) ("appoint[ing] an institutional investor, … comports with the PSLRA's goal to increase the likelihood that institutional investors would serve as lead plaintiffs"); *In re Critical Path, Inc. Sec. Litig.,* 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2001) ("[W]hile it may be true that losing a high percentage of one's net worth due to an alleged fraud contributes to one's desire to prosecute a lawsuit against the wrongdoer, that desire is no substitute for the experience and resources of an institutional investor with, presumably, an in-house legal team and experience in the securities business.").

Here, Nebraska is well suited to fulfill this Congressional intent. There can be no doubt that Nebraska has the resources and institutional sophistication required to effectively manage and supervise complex securities class actions against multibillion dollar companies. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D 427, 457 (S.D. Tex. 2002) (rejecting a motion to be appointed as lead plaintiff filed by an investor with "fractured attention and resources" because

1   the *Enron* "litigation [was] probably the largest and most complex of its kind in the history of
2   this country and … will demand the full focus of Lead Plaintiff(s) and Lead Counsel").
3         Accordingly, Nebraska has the sophistication and resources necessary to effectively
4   litigate this matter and supervise Class counsel.

      **C.**      **The Court Should Approve Nebraska's Choice of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Cohen v. United States District Court*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)); *see also Cavanaugh*, 306 F.3d at 734 ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs. And, indeed, it did not. While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff.").

Here, Nebraska has selected Labaton Sucharow, highly-qualified counsel, to serve as Lead Counsel for the proposed Class. Labaton Sucharow has significant experience in prosecuting securities class actions and has excelled as lead counsel in numerous landmark securities class actions throughout the United States on behalf of defrauded investors. Labaton Sucharow served as a lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which it served as co-lead counsel, and secured a $117.5 million settlement in *In re Mercury Interactive Corp. Securities Litigation*, No. 05-cv-3395 (N.D. Cal.). In addition, Labaton Sucharow was a lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which achieved a settlement of $624 million—one of the largest securities fraud settlements

1  arising from the financial crisis of 2007 and 2008, and also secured a $160.5 million settlement
2  as lead counsel in *In re Broadcom Corp. Class Action Litigation*, No. 06-cv-05036 (C.D. Cal.).
3  Labaton Sucharow presently serves as lead and co-lead counsel in several significant investor
4  class actions. *See* Wagstaffe Decl., Ex. D.

5      Likewise, WVBR is well qualified to represent the Class as Liaison Counsel. WVBR
6  maintains an office in San Francisco, California, and James M. Wagstaffe has substantial litigation
7  experience in this court. *See* Wagstaffe Decl., Ex. E. Thus, the firm is well qualified to represent
8  the Class as Liaison Counsel. *See* MANUAL FOR COMPLEX LITIGATION (Fourth) § 10.221 (2004)
9  (discussing role of liaison counsel and noting that "[l]iaison counsel will usually have offices in
10 the same locality as the court").

11     Thus, the Court may be assured that by granting this motion and approving Nebraska's
12 selection of counsel, the Class will receive the highest caliber of legal representation.

## CONCLUSION

14     For the foregoing reasons, Nebraska respectfully requests that the Court: (i) appoint
15 Nebraska as Lead Plaintiff; (ii) approve its selection of Labaton Sucharow as Lead Counsel for
16 the Class and WVBR as Liaison Counsel for the Class; and (iii) grant such other and further
17 relief as the Court may deem just and proper.

18 DATED: July 19, 2022                          Respectfully submitted,

19                                              */s/ James M. Wagstaffe*

20                                              James M. Wagstaffe (#95535)
                                                Frank Busch (#258288)
21                                              **WAGSTAFFE, VON LOEWENFELDT,
                                                BUSCH & RADWICK, LLP**
22                                              100 Pine Street, Suite 2250
                                                San Francisco, California 94111
23                                              Telephone: (415) 357-8900
                                                Facsimile: (415) 357-8910
24                                              wagstaffe@wvbrlaw.com
                                                busch@wvbrlaw.com
25
                                                *Proposed Liaison Counsel for the Class*
26
                                                **LABATON SUCHAROW LLP**
27                                              Christopher J. Keller (*pro hac vice* forthcoming)
                                                Eric J. Belfi (*pro hac vice* forthcoming)
28                                              Francis P. McConville (*pro hac vice* forthcoming)
                                                140 Broadway

New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff the Nebraska Investment Council and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on July 19, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ <i>James M. Wagstaffe</i><br>
James M. Wagstaffe