POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movant City of Miami Fire Fighters' and Police Officers' Retirement Trust and Proposed Lead Counsel for the Class*

(*additional counsel on signature page*)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF MIAMI FIRE FIGHTERS' AND POLICE OFFICERS' RETIREMENT TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OKTA, INC., TODD MCKINNON, BRETT TIGHE, MICHAEL KOUREY, WILLIAM E. LOSCH, and DAVID BRADBURY,<br><br>Defendants. | Case No.: 3:22-cv-02990-SI<br><br>NOTICE OF MOTION AND MOTION OF CITY OF MIAMI FIRE FIGHTERS' AND POLICE OFFICERS' RETIREMENT TRUST FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br><u>CLASS ACTION</u><br><br>Date: August 26, 2022<br>Time: 10:00 a.m.<br>Judge: Hon. Susan Illston<br>Courtroom: 1 – 17th Floor |

## **TABLE OF CONTENTS**

**Page(s)**

NOTICE OF MOTION ..................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................2

    I.    PRELIMINARY STATEMENT ........................................................................2

    II.    STATEMENT OF FACTS .................................................................................3

    III.    ARGUMENT .......................................................................................................5

        A.    MIAMI FIPO SHOULD BE APPOINTED LEAD PLAINTIFF ..............5

            1.    Miami FIPO Is Willing to Serve as Class Representative .............6

            2.    Miami FIPO Has the Largest Financial Interest in the Action ......6

            3.    Miami FIPO Otherwise Satisfies the Requirements of Rule 23 ....7

        B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......................................................................................................10

    IV.    CONCLUSION ..................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bao v. SolarCity Corp.*,
  No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869 (N.D. Cal. Aug. 11, 2014) ................................................................................................................................ 8

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  No. 11-CV-04003-LHK, 2012 U.S. Dist. LEXIS 2776 (N.D. Cal. Jan. 9, 2012) ................................................................................................................................ 7

*Feyko v. Yuhe Int'l Inc.*,
  No. CF 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040 (C.D. Cal. Mar. 2, 2012) ............................................................................................................. 2, 9

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................................................. 8

*Hessefort v. Super Micro Comput., Inc.*,
  317 F. Supp. 3d 1056 (N.D. Cal. 2018) ................................................................................. 8

*In re AudioEye, Inc.*,
  CV-15-163-TUC-DCB, 2015 U.S. Dist. LEXIS 193348 (D. Ariz. July 31, 2015) ............................................................................................................................. 3, 9

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .................................................................................................. 7

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ........................................................................................................... 7, 10

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ....................................................................................... 7

*In re Petrobras Securities Litigation*,
  No. 14-cv-09662 (S.D.N.Y.) ................................................................................................ 10

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
  No. 07-02830, 2010 U.S. Dist. LEXIS 132902 (W.D. Tenn. Dec. 15, 2010) ........................ 2

*In re SolarCity Corp. Sec. Litig.*,
  No. 16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan. 25, 2017) ................................................................................................................................ 8

*Knox v. Yingli Green Energy Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................................................ 7

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ................................ 7

*Nicolow v. Hewlett Packard Co.*,
    Nos. 12-05980 CRB *et al.*, 2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4,
    2013) ..................................................................................................................................... 7

*Osher v. Guess?, Inc*., No. CV 01-00871 LGB (RNBx), 2001 U.S. Dist. LEXIS
    6057 (C.D. Cal. Apr. 26, 2001)........................................................................................... 10

*Richardson v. TVIA, Inc.*,
    No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16,
    2007) ..................................................................................................................................... 8

*Shenwick v. Twitter, Inc.*,
    No. 16-cv-05314-JST, 2016 U.S. Dist. LEXIS 177714 (N.D. Cal. Dec. 22,
    2016) .................................................................................................................................. 2, 9

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................................ 9

**Statutes**

15 U.S.C. § 78u-4(a)(3) ............................................................................................... 2, 5, 6, 10

Private Securities Litigation Reform Act of 1995 ..............................................................*passim*

Securities Exchange Act of 1934 ......................................................................................... 7, 8

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................................*passim*

# NOTICE OF MOTION

TO:   ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on August 26, 2022, or as soon thereafter as the matter may be heard, before the Honorable Susan Illston, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Miami FIPO") will and hereby does respectfully move this Court, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Miami FIPO as Lead Plaintiff on behalf of a class consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired Okta, Inc. ("Okta" or the "Company") securities between March 5, 2021 and March 22, 2022, both dates inclusive (the "Class Period") (the "Class"); and (2) approving Miami FIPO's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

This motion is made on the grounds that, to the best of its knowledge, Miami FIPO is the "most adequate plaintiff" to lead the Class within the meaning of the PSLRA and that the PSLRA therefore mandates Miami FIPO's appointment as Lead Plaintiff. Specifically, Miami FIPO believes that it has the "largest financial interest" in the relief sought by the Class in the above-captioned action (the "Action") by virtue of, *inter alia*, its significant losses incurred in connection with its transactions in Okta securities as a result of the fraud alleged in this Action. Miami FIPO also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of the claims of other putative Class members and because it will fairly and adequately represent their interests.

In addition, the PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. Miami FIPO's choice of counsel, Pomerantz, has the skill, knowledge, expertise, resources, and experience that will enable the firm to prosecute this Action effectively and expeditiously under Miami FIPO's direction.

This motion is supported by the memorandum of points and authorities submitted herewith, the Declaration of Jennifer Pafiti, Esq. ("Pafiti Decl."), and all exhibits thereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Miami FIPO purchased or otherwise acquired 2,350 shares of Okta securities, expended $489,633 on its purchases, retained 2,350 of its Okta shares, and, as a result of the disclosures revealing the misrepresentations and/or omissions during the Class Period, incurred losses of approximately $220,030 in connection with its purchases of Okta securities. *See* Pafiti Decl., Exhibit ("Ex.") A.

Beyond its significant financial interest, Miami FIPO also meets the applicable requirements of Rule 23 because its claims are typical of absent Class members and because it will fairly and adequately represent the interests of the Class. As a sophisticated institutional investor with a significant financial interest in the litigation, Miami FIPO is a paradigmatic lead plaintiff under the PSLRA, and its appointment would thus advance the legislative purpose of "increasing the role of institutional investors in class actions" in order to "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at *34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733. For this reason, courts in this Circuit strongly prefer appointment of institutional investors to lead complex securities class actions. *See, e.g.*, *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST, 2016 U.S. Dist. LEXIS 177714, at *7 (N.D. Cal. Dec. 22, 2016) ("as an institutional investor, [movant] is likely to be an effective lead plaintiff"); *Feyko v. Yuhe Int'l Inc.*, No. CF 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040, at *8 (C.D. Cal. Mar. 2, 2012) (appointing institutional investor as lead plaintiff, finding it to be "'exactly the type of sophisticated market participant[] Congress intended to take on the role of lead plaintiff following the PSLRA's reforms'" (quoting *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830, 2010 U.S. Dist. LEXIS 132902,

at *8 (W.D. Tenn. Dec. 15, 2010))); *In re AudioEye, Inc.*, CV-15-163-TUC-DCB, 2015 U.S. Dist. LEXIS 193348, at *13 (D. Ariz. July 31, 2015) (appointing as lead plaintiff "an institutional investor, which is precisely the kind of investor that Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions").

In order to fulfill its responsibilities as Lead Plaintiff and vigorously prosecute this Action on behalf of the Class, Miami FIPO has selected Pomerantz as Lead Counsel for the Class. Pomerantz is a nationally-recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors, as detailed in its firm resume, and is well qualified to serve as Lead Counsel in this Action.

Accordingly, based on its significant financial interest and commitment to overseeing this litigation, Miami FIPO respectfully requests that the Court enter an order appointing Miami FIPO as Lead Plaintiff and approving its selection of Pomerantz as Lead Counsel.

## II.   STATEMENT OF FACTS

As alleged in the Complaint in the Action, Okta provides identity solutions for enterprises, small and medium-sized businesses, universities, non-profits, and government agencies in the United States and internationally. The Company offers a variety of cybersecurity products and services. Following its completed merger with Auth0, Inc., a Delaware corporation ("Auth0"), on May 3, 2021, Okta began providing additional Auth0 products related to cybersecurity and login solutions.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Okta had inadequate cybersecurity controls; (ii) as a result, Okta's systems were vulnerable to data breaches; (iii) Okta ultimately did experience a data breach caused by a hacking group, which potentially affected hundreds of Okta customers; (iv) Okta initially did not disclose and subsequently downplayed the severity of the data breach; (v) all the foregoing, once revealed, was likely to have a material

negative impact on Okta's business, financial condition, and reputation; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

On or around March 21, 2022, hackers known as LAPSUS$ posted screenshots on their Telegram channel (a cloud-based instant-messaging service) showing what they claimed was Okta's internal company environment.  Thereafter, on March 22, 2022, the Company's Chief Executive Officer, Defendant Todd McKinnon, posted a statement on his Twitter account, disclosing that, "[i]n late January 2022, Okta detected an *attempt* to compromise the account of a third party customer support engineer working for one of our subprocessors" (emphasis added); that "[t]he matter was investigated and contained by the subprocessor"; that "[w]e believe the screenshots shared online are connected to this January event"; and that, "[b]ased on our investigation to date, there is no evidence of ongoing malicious activity beyond the activity detected in January."

On this news, Okta's stock price fell $2.98 per share, or 1.76%, to close at $166.43 per share on March 22, 2022.

Later, on March 22, 2022, during after-market hours, in a statement on Okta's website, the Company's Chief Security Officer, Defendant David Bradbury, disclosed, *inter alia*, that "[a]fter a thorough analysis of [the LAPSUS$] claims, we have concluded that a small percentage of customers – approximately 2.5% – have potentially been impacted and whose data may have been viewed or acted upon."

Following Okta's updated statement, multiple news outlets reported that hundreds of the Company's clients were potentially affected by the January 2022 data breach.  For example, on March 23, 2022, *CNN* published an article entitled "Okta concedes hundreds of clients could be affected by breach[,]" noting that, despite the Company's statement that "a small percentage of customers – approximately 2.5% – have potentially been impacted[,]" the Company "has over 15,000 customers, according to its website."  That same day, *Reuters* and others published similar reports.

Separately, Okta was downgraded by Raymond James from "strong buy" to "market perform," noting, among other things, that "[w]hile partners were willing to trust Okta's track record, the handling of its latest security incident adds to our mounting concerns."

Following Okta's after-market update and Raymond James downgrade, the Company's stock price fell $17.88 per share, or 10.74%, to close at $148.55 per share on March 23, 2022.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Miami FIPO and other Class members have suffered significant losses and damages.

## III.    ARGUMENT

### A.    MIAMI FIPO SHOULD BE APPOINTED LEAD PLAINTIFF

Miami FIPO should be appointed Lead Plaintiff because, to its knowledge, Miami FIPO has the largest financial interest in the Action and otherwise strongly satisfies the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i)-(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Miami FIPO satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.  Miami FIPO Is Willing to Serve as Class Representative

On May 20, 2022, Pomerantz, counsel for the plaintiff in the Action, Miami FIPO, caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities class action had been filed against Okta and certain of its officers, and which advised investors in Okta securities that they had until July 19, 2022—*i.e.*, 60 days from the date of the PSLRA Notice's publication—to file a motion to be appointed as lead plaintiff.  *See* Pafiti Decl., Ex. B.

Miami FIPO has filed the instant motion pursuant to the PSLRA Notice, and it has submitted a Certification, signed by a representative duly authorized to bind Miami FIPO and enter into litigation on its behalf, attesting that Miami FIPO is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Dania L. Orta, Administrator of Miami FIPO, signed the Certification on behalf of Miami FIPO.  *See id.*  Accordingly, Miami FIPO satisfies the first requirement to serve as Lead Plaintiff of the Class.

Miami FIPO is, in every respect, exactly the sort of well-managed, sophisticated institutional investor that Congress intended to fulfill the lead plaintiff role created by the PSLRA. Miami FIPO administers the retirement benefit plan for the fire fighters and police officers of the City of Miami, with the objective of providing effective services to all active and retired members, accumulating, managing, and disbursing the retirement fund assets in accordance with fiduciary standards, actuarial soundness and all applicable statutes, ordinances, and regulations, and maximizing investment returns while exercising a prudent investment policy.

### 2.  Miami FIPO Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of its knowledge, Miami FIPO has the

largest financial interest of any Okta investor or group of investors seeking to serve as Lead Plaintiff. For claims arising under the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997). In accord with courts nationwide,[1] these *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District. *See, e.g.*, *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 U.S. Dist. LEXIS 29876, at *18 (N.D. Cal. Mar. 4, 2013); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 U.S. Dist. LEXIS 2776, at *10-*11 (N.D. Cal. Jan. 9, 2012); *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015). Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing financial interest. *See, e.g.*, *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at *18-*19; *Knox*, 135 F. Supp. 3d. at 1163.

During the Class Period, Miami FIPO: (1) purchased or otherwise acquired 2,350 shares of Okta securities; (2) expended $489,633 on its purchases and/or acquisitions of Okta securities; (3) retained 2,350 of its shares of Okta securities; and (4) incurred losses of approximately $220,030 in connection with its transactions in Okta securities. *See* Pafiti Decl., Ex. A. To the best of its knowledge, Miami FIPO thus possesses the largest financial interest in this litigation within the meaning of the PSLRA.

### 3. Miami FIPO Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must

---

[1] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007).

"otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869, at *9 (N.D. Cal. Aug. 11, 2014). Moreover, "[t]his showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy." *In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553, at *13 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *16 (N.D. Cal. Apr. 16, 2007) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Miami FIPO's claims are typical of those of the Class. Miami FIPO alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or by omitting to disclose material facts concerning Okta. Miami FIPO, as did all Class members, purchased Okta securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Okta's share price downward. These shared

claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members," and "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

Miami FIPO has submitted a signed Certification declaring its commitment to protecting the interests of the Class. *See* Pafiti Decl., Ex. C. Further, there is no evidence of antagonism or conflict between Miami FIPO's interests and the interests of the Class. The significant losses incurred by Miami FIPO demonstrate that it has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on the Class's behalf.

Miami FIPO is a sophisticated institutional investor. As such, its appointment would be consistent with the PSLRA's preference for the appointment of institutional investors as class representatives in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Indeed, courts in this Circuit strongly prefer appointment of institutional investors to lead complex securities class actions. *See, e.g.*, *Twitter*, 2016 U.S. Dist. LEXIS 177714, at *7 ("as an institutional investor, [movant] is likely to be an effective lead plaintiff"); *Yuhe Int'l*, 2012 U.S. Dist. LEXIS 28040, at *8 (appointing institutional investor as lead plaintiff, finding it to be "'exactly the type of sophisticated market participant[] Congress intended to take on the role of lead plaintiff following the PSLRA's reforms'" (quoting *Regions Morgan Keegan*, 2010 U.S. Dist. LEXIS 132902, at *8)); *AudioEye*, 2015 U.S. Dist. LEXIS 193348, at *13 (appointing as lead plaintiff "an institutional investor, which is precisely the kind of investor that Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions").

Miami FIPO believes that the securities class action against Okta is meritorious and should be led by a dedicated and sophisticated institutional investor that is committed to maximizing the recovery on behalf of the Class.

### B. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in a lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc*., No. CV 01-00871 LGB (RNBx), 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001). The Court should not interfere with Lead Plaintiff's selection unless it is necessary to do so in order to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Miami FIPO has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Pafiti Decl., Ex. D. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Miami FIPO's counsel, Pomerantz, has the skill, knowledge, expertise, and

experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Miami FIPO's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## IV. CONCLUSION

For the foregoing reasons, Miami FIPO respectfully requests that the Court issue an Order: (1) appointing Miami FIPO as Lead Plaintiff for the Class; and (2) approving Miami FIPO's selection of Pomerantz as Lead Counsel for the Class.

Dated: July 19, 2022

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice application forthcoming*)
J. Alexander Hood II
(*pro hac vice application forthcoming*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Movant City of Miami Fire Fighters' and Police Officers' Retirement Trust and Proposed Lead Counsel for the Class*

KLAUSNER, KAUFMAN, JENSEN & LEVINSON
Robert D. Klausner
(*pro hac vice application forthcoming*)
7080 NW 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232

bob@robertdklausner.com

*Additional Counsel for Movant City of Miami Fire Fighters' and Police Officers' Retirement Trust*

PROOF OF SERVICE

I hereby certify that on July 19, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti