1
2

Michael P. Canty (*pro hac vice*)
James T. Christie (*pro hac vice*)
Nicholas Manningham (*pro hac vice*)

3

**LABATON SUCHAROW LLP**
140 Broadway

4

New York, New York 10005
Telephone: (212) 907-0700

5

Facsimile: (212) 818-0477
Email: mcanty@labaton.com

6

jchristie@labaton.com
nmanningham@labaton.com

7

*Attorneys for Plaintiffs and the Class*

James M. Wagstaffe (#95535)
Frank Busch (#258288)

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
100 Pine Street, Suite 2250
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 371-0500
Email: wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Class*

8
9
10

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

11
12
13
14
15
16
17
18
19

IN RE OKTA, INC. SECURITIES
LITIGATION

Case No.: 3:22-cv-02990-SI

**PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**HEARING:**
Date:        March 29, 2024
Time:        10:00 a.m.
Judge:       Hon. Susan Illston
Courtroom: 1, 17th Floor

20
21
22
23
24
25
26
27
28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 24, 2024, at 10:00 a.m., or as thereafter as the matter may be heard before the Honorable Susan Illston, in Courtroom 1, Seventeenth Floor, of the United States District Court for the Northern District of California at 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Plaintiff Nebraska Investment Council and Additional Plaintiff North Carolina Retirement Systems will, and hereby do, move this Court, pursuant to Rules 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, for an order granting class certification.

Plaintiffs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Expert Report of Chad Coffman and Exhibits 1-13 attached thereto, Declaration of Michael P. Canty and Exhibits A-D attached thereto, Declaration of Benjamin Garner, and Declaration of Michael Walden-Newman, and any other documents on file in this action and any oral argument of counsel.

Dated: November 1, 2023

**LABATON SUCHAROW LLP**

*/s/ Michael P. Canty*
Michael P. Canty (*pro hac vice*)
James T. Christie (*pro hac vice*)
Nicholas Manningham (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: mcanty@labaton.com
        jchristie@labaton.com
        nmanningham@labaton.com

*Attorneys for Plaintiffs and the Class*

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
James M. Wagstaffe (#95535)
Frank Busch (#258288)
100 Pine Street, Suite 2250
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 371-0500
Email: wagstaffe@wvbrlaw.com
        busch@wvbrlaw.com

*Liaison Counsel for the Class*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................iiv

STATEMENT OF ISSUES TO BE DECIDED ......................................................................1

I.   PRELIMINARY STATEMENT.......................................................................................1

II.  STATEMENT OF FACTS ...............................................................................................3

    A.   Okta: A Data Security Company..............................................................................3

    B.   Okta's Growth Through Key Auth0 Acquisition......................................................3

    C.   Critical Logistics for Facilitating Okta's Auth0 Acquisition...................................4

    D.   Okta's Integration Plan Unravels and Significant Problems Persist.......................5

    E.   In August 2022, the Truth of Okta's Months-Long Sales Slowdown was Revealed.................................................................................................................6

    F.   The Proposed Class Representative .........................................................................6

III. ARGUMENT ...................................................................................................................7

    A.   Legal Standard ........................................................................................................7

    B.   This Action Satisfies the Requirements of Rule 23(a)............................................7

        1.   The Class Is So Numerous That Joinder Is Impracticable ..............................7

        2.   This Action Presents Common Questions of Law and Fact ............................9

        3.   Plaintiffs' Claims Are Typical of the Class...................................................10

        4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Class .......11

    C.   This Action Satisfies the Requirements of Rule 23(b)(3).......................................13

        1.   Common Questions of Law and Fact Predominate ......................................14

            a.   Plaintiffs Are Entitled to the Fraud-on-the-Market Presumption of Reliance .....................................................................14

            b.   Damages Can be Calculated on a Class-wide Basis .........................19

        2.   This Proposed Class is Superior to Alternative Methods for Resolving this Dispute ..................................................................................................20

    D.   The Court Should Appoint Lead Counsel as Class Counsel Under Rule 23(g).........21

IV.  CONCLUSION..............................................................................................................21

iii

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972) ................................................................................................ 18

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................ 13, 14

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ................................................................................................ 14

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) .................................................................................. 10

*In re Banc of Cal. Sec. Litig.*,
326 F.R.D. 640 (C.D. Cal. 2018) ................................................................. 8, 11, 19

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ..................................................................................... 2-3, 11, 14

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ................................................................................ 21

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) ........................................................... 15, 16, 17, 18

*In re Celera Corp. Sec. Litig.*,
2014 WL 722408 (N.D. Cal. Feb. 25, 2014) .......................................................... 10

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
2013 WL 5789237 (C.D. Cal. Oct. 25, 2013) .............................................. 8, 10, 12

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
2018 WL 4931543 (N.D. Cal. Oct. 11, 2018) ........................................................ 19

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................... 13

*In re Comput. Memories Sec. Litig.*,
111 F.R.D. 675 (N.D. Cal. 1986) ............................................................................. 7

*Di Donato v. INSYS Therapeutics, Inc.*,
333 F.R.D. 427 (D. Ariz. 2019) .............................................................................. 18

*In re Diamond Foods, Inc. Sec. Litig.*,
295 F.R.D. 240 (N.D. Cal. 2013) ..................................................................... 16, 17

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .................................................................................. 12

iv

*Erica P. John Fund, Inc. v. Halliburton Co. (Halliburton I)*,
   563 U.S. 804 (2011) ................................................................................................ 11, 19

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019) ......................................................... 13

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   288 F.R.D. 26 (S.D.N.Y. 2012) ............................................................................... 13

*Halliburton Co. v. Erica P. John Fund, Inc. (Halliburton II)*,
   573 U.S. 258 (2014) ...................................................................................... 14, 15, 19

*Hanlon v. Chrysler Corp*,
   150 F.3d 1011 (9th Cir. 1988) .................................................................................. 20

*Harris v. Palm Springs Alpine Ests., Inc.*,
   329 F.2d 909 (9th Cir. 1964) ...................................................................................... 7

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ................................................. 8, 9, 19

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ....................................................................... 15, 20

*In re Juniper Networks, Inc. Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009) ............................................................................. 17

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) ............................................................................. 18

*In re LDK Solar Sec. Litig.*,
   255 F.R.D. 519 (N.D. Cal. 2009) ............................................................................. 10

*In re Lendingclub Sec. Litig.*,
   282 F. Supp. 3d 1171 (N.D. Cal. 2017) ......................................................... 8, 10, 19

*Luna v. Marvell Tech. Grp., Ltd.*,
   2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) ....................................................... 8, 17

*In re Lyft Inc. Sec. Litig.*,
   2021 WL 3711470 (N.D. Cal. Aug. 20, 2021) ......................................................... 8, 9

*Maliarov v. Eros Int'l PLC*,
   2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) ............................................................ 13

*In re NetSol Techs., Inc. Sec. Litig.*,
   2016 WL 7496724 (C.D. Cal. July 1, 2016) .............................................................. 7

*Nguyen v. Radient Pharm. Corp.*,
   287 F.R.D. 563 (C.D. Cal. 2012) ............................................................................. 16

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) .................................................................................. 7

v

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ............................................................................. 9, 10

*In re Petrobras Sec. Litig.*,
  312 F.R.D. 354 (S.D.N.Y. 2016),
  *vacated in part on other grounds*,
  862 F.3d 250 (2d Cir. 2017) ..................................................................................... 13

*In re Scorpion Techs., Inc. Sec. Litig.*,
  1994 WL 774029 (N.D. Cal. Aug. 10, 1994) ............................................................. 7

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
  335 F.R.D. 276 (N.D. Cal. 2020) ................................................................... 11, 19

*Stockwell v. City & Cnty. of S.F.*,
  749 F.3d 1107 (9th Cir. 2014) ................................................................................. 9

*In re Twitter Inc. Sec. Litig.*,
  326 F.R.D. 619 (N.D. Cal. 2018) ...................................................................... 8, 20

*In re UTStarcom*,
  2010 WL 1945737 (N.D. Cal. May 12, 2010) ......................................................... 20

*In re VeriSign, Inc. Sec. Litig.*,
  2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ......................................................... 20

*Wong v. Arlo Techs., Inc.*,
  2021 WL 1146042 (N.D. Cal. Mar. 25, 2021),
  *amended and superseded on other grounds*,
  2021 WL 1531171 (N.D. Cal., Apr. 19, 2021) ....................................................... 11

*Zinser v. Accufix Rsch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ................................................................................. 20

**Statutes**

15 U.S.C. §78j(b) ......................................................................................................... 1

15 U.S.C. §78t(a) ......................................................................................................... 1

**Rules and Regulations**

17 C.F.R. §240.10b-5 ................................................................................................... 1

Fed. R. Civ. P. 23 .................................................................................................. 1, 2, 7
    23(a) ....................................................................................................... 1, 2, 7, 13, 21
    23(a)(1) ............................................................................................................................. 7
    23(a)(2) ............................................................................................................................. 9
    23(a)(3) ........................................................................................................................... 10
    23(a)(4) ........................................................................................................................... 11
    23(b) ................................................................................................................................ 13
    23(b)(3) .................................................................................................................... *passim*
    23(b)(3)(A)-(D) .............................................................................................................. 20
    23(g) ....................................................................................................................... 1, 12, 21
    23(g)(1) ........................................................................................................................... 21
    23(g)(1)(A)(i)-(iv) .......................................................................................................... 21

### MEMORANDUM OF POINTS AND AUTHORITIES

Court-appointed Lead Plaintiff Nebraska Investment Council on behalf of Omaha School Public Employees' Retirement System ("NIC" or "Lead Plaintiff") and Additional Plaintiff North Carolina Retirement Systems ("NCRS" and together with NIC, "Plaintiffs") respectfully submit this Memorandum of Law in Support of their Renewed Motion for Class Certification ("Motion").

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether to certify the proposed Class when it satisfies all of the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3).

2.    Whether to appoint Plaintiffs as Class Representatives.

3.    Whether to appoint Lead Counsel Labaton Sucharow LLP as Class Counsel.

**I.    PRELIMINARY STATEMENT**

Pursuant to Federal Rules of Civil Procedure ("Rule") 23(a) and (b)(3), Plaintiffs respectfully move the Court for certification of a class of purchasers of Okta, Inc., securities to pursue claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, against Defendants.[1]   The Class is defined as:

> All persons and entities who or which, during the period from March 3, 2022 through August 31, 2022, inclusive (the "Class Period"), purchased or otherwise acquired the publicly traded Class A common stock of Okta, Inc. and were damaged thereby.[2]

Plaintiffs also respectfully move this Court for an order of appointment as Class Representatives and, pursuant to Fed. R. Civ. P. 23(g), appointing Lead Counsel Labaton Sucharow LLP ("Labaton Sucharow") as Class Counsel.

Under Rule 23, an action may be certified for class treatment where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common

---

[1] "Defendants" are Okta, Inc. ("Okta" or the "Company") and "Individual Defendants" are Chief Executive Officer Todd McKinnon ("McKinnon"), Chief Financial Officer Brett Tighe ("Tighe"), and Executive Vice Chairman, Chief Operating Officer, and Co-Founder Frederic Kerrest ("Kerrest").

[2] Excluded from the Class are: (i) Defendants; (ii) members of the families of each Defendant; (iii) officers and directors of Okta; and (vi) the legal representatives, heirs, successors or assigns of any such excluded party.

1  to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

2  of the class; and (4) the representative parties will fairly and adequately protect the interests of the

3  class." Fed. R. Civ. P. 23(a).  Where an action additionally presents "common" issues of law or fact

4  that "predominate over any questions affecting only individual members," a class action is "superior"

5  to other methods of adjudication and class certification is appropriate.  Fed. R. Civ. P. 23(b)(3).

6       This Action is ideally suited for class treatment under Rule 23.  ***First***, this Class is sufficiently

7  numerous – far exceeding the minimum presumptive threshold of forty geographically dispersed

8  investors, with over 153,050,000 shares of common stock outstanding.  *See infra* III(B)(1).  ***Second***,

9  this Action involves countless common questions of law and fact, including: (i) whether the federal

10 securities laws were violated by Defendants' acts; (ii) whether statements made by Defendants to the

11 investing public during the Class Period misrepresented material facts about the business and

12 operations of Okta; (iii) whether the prices of Okta's securities during the Class Period were

13 artificially inflated because of Defendants' misconduct; and (iv) whether the members of the Class

14 have sustained damages.  These questions are subject to common evidence and proof.  *See infra*

15 III(B)(2).  ***Third***, Plaintiffs' claims are "typical" of the claims of the Class because, like all other

16 Class members, Plaintiffs purchased or otherwise acquired Okta common stock at market prices

17 artificially inflated by Defendants' false and misleading statements and omissions.  Additionally,

18 Plaintiffs and all other Class members suffered the same injuries arising from the same misconduct –

19 the losses incurred as a result of the revelation of Defendants' fraud and the resulting decline in Okta's

20 stock price.  *See infra* III(B)(3).  ***Fourth***, Plaintiffs will "fairly and adequately" protect the interests

21 of the Class.  Plaintiffs have retained experienced counsel to represent their interests and those of the

22 proposed Class.  *See infra* III(B)(4).

23      This Action also satisfies the elements of Rule 23(b)(3).  Pursuant to Rule 23(b)(3),

24 predominance is satisfied in this action because common questions of law and fact predominate over

25 Class members' potential individual issues.  *See infra* III(C)(1).  The elements of the claims in this

26 Action – falsity, materiality, scienter, reliance, causation, and damages – stem from common

27 questions of law and fact.  Reliance, the only possible individualized issue, is uniformly addressed

28 through the fraud-on-the-market presumption.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 240-42

1   (1988).  Finally, maintaining this Action as a class action is superior to any alternate means of dispute

2   resolution because: (1) thousands of investors suffered damages as a result of Defendants'

3   misconduct; (2) it is unlikely that investors would file individual actions due to litigation costs; (3) it

4   is efficient to hear all such claims in one court; and (4) there is no difficulty in maintaining this case

5   as a class action.

6          For these reasons, Plaintiffs respectfully request that the Court grant this Motion, appoint

7   Plaintiffs as Class Representatives, and appoint Lead Counsel, Labaton Sucharow, as Class Counsel.

8   **II.    STATEMENT OF FACTS**

9          **A.    Okta: A Data Security Company**

10          Okta is a data security company that provides identity and access management ("IAM")

11   software aimed at helping companies secure user authentication for applications and allowing

12   developers to build identity controls into applications and devices.  Amended Class Action

13   Complaint, ECF No. 48 (cited herein as "¶_") ¶¶2, 47.  The Company's flagship product, the Okta

14   Identity Cloud, is marketed as a one-stop solution that provides identity solutions for an

15   organization's workforce and its customers.  *Id.*

16          **B.    Okta's Growth Through Key Auth0 Acquisition**

17          Investors were particularly interested in Okta due to its impressive revenue and year-over-

18   year growth.  ¶51.  To further this growth, Okta acquired Auth0, Inc. ("Auth0"), in March 2021.  ¶58.

19   The acquisition target, Auth0, provided customer identity and access management ("CIAM")

20   software, an expanded offering allowing companies to "give their end users access to their digital

21   properties as well as how they govern, collect, analyze, and securely store data for those users," for

22   example, through multi-factor authentication.  ¶¶5, 41, 58.  Acquiring Auth0 and its CIAM

23   technology provided Okta the opportunity to differentiate its product offerings and enter a highly

24   lucrative software market.  *Id.*  Defendants confirmed this growth opportunity acknowledging that

25   the Auth0 acquisition would "accelerate Okta's growth in the $55 billion identity market."  ¶¶5, 58-

26   59.  Okta's continued growth and success in the identity market were dependent on the successful

27   integration of Auth0's business and software.  The importance of this acquisition was repeatedly

28

confirmed by Defendant McKinnon who explained to investors that the success of the integrations was "very critical for the success of the company." ¶¶211-212.

### C.    Critical Logistics for Facilitating Okta's Auth0 Acquisition

Because Auth0 presented a new software technology, different from that already offered by Okta, Okta's ability to successfully integrate and profit from Auth0's software depended upon the retention of Auth0 employees, knowledgeable about CIAM, who could help sell the software. ¶62. For example, a JMP analyst noted that Okta "must show that it can integrate these businesses, retain the Auth0 team and know-how, and, most importantly, successfully execute two different go-to-market strategies with two different product platforms." *Id.*

However, unbeknownst to investors, Okta began losing senior Auth0 employees immediately after the acquisition. ¶63. According to CW1, who was part of the Okta M&A team, many senior Auth0 employees departed after the acquisition while others were put into roles they did not want or were below the level of seniority they held at Auth0. *Id.* CW1 added that Eugenio Pace—Auth0's CEO and Co-Founder who remained as Okta's President of Customer Identity after the acquisition— explained in an internal letter that senior leadership was leaving the Company around August 2021, including Auth0's Chief Legal Officer ("CLO"), Chief Human Resources Officer ("CHRO"), and Chief Financial Officer ("CFO"). ¶65. Similarly, CW5 noted that 75-80% of Okta's VPs and SVPs were "pushed out" of the Company, and CW6 recalled there was a "mass exodus" of salespeople— both Okta and Auth0 employees—around fall 2021. ¶¶67-68. CWs 1, 2, 4, and 5 confirmed that there was a mass exodus of employees from the Company. ¶¶89-92. Specifically, CWs 1 and 2 confirmed that there were very few Auth0 employees left at the Company. ¶¶89, 92. Indeed, CW4 explained that so many employees had left since the acquisition closed that Okta began offering a retention bonus to employees that stay at Okta. ¶91. The loss of senior Auth0 employees, along with key Okta employees, jeopardized the plan for a successful integration from the outset of the acquisition. ¶69. Nevertheless, Defendants concealed the loss of these senior Auth0 employees from investors, while touting the progress of the integration. ¶9.

### D.   Okta's Integration Plan Unravels and Significant Problems Persist

Okta's integration of Auth0 and its employees continued to pose insurmountable obstacles. As the problems with the Auth0 integration worsened, Okta made the rash decision to scrap its original, extensive integration plan.  ¶77.  According to CW2, a former Okta employee who was deeply involved with the integration of Auth0, the original integration plan involved keeping the Auth0 employees on as "specialists" who would exclusively sell Auth0 products and help train Okta employees on Auth0's product for approximately one year.  ¶79.  During this time, Okta employees would continue selling Okta products with additional sales staff brought on to help meet goals.  *Id.* When the original integration plan was scrapped, former employees explained that the decision was "ripped out" at the "eleventh hour" by Okta's finance team in late 2021 because there was "no way" that the integration plan was "humanly possible" for FY2024.  ¶81.  CW2 explained that instead of hiring additional sales staff and keeping 200 to 300 Auth0 employees on as "specialists," the Auth0 employees would be "generalists" that were expected to sell Okta products and Auth0 products (and the Okta employees were expected to sell both products).  *Id.*  CW2 added that Okta and Auth0 employees did not have knowledge of, nor did they receive training or education on, each other's products.  ¶82.  CW2 recalled being informed of the decision to scrap the integration plan around December 2021, but employees were not informed until several weeks later, in approximately mid-January 2022, just two weeks before the integration was supposed to go into effect.  ¶83.

Defendants made no mention of any of these enormous problems to investors, who were concerned about Okta's growth and its ability to successfully integrate with Auth0.  Instead, Defendants repeatedly reassured investors about their integration process.  In a March 2, 2022, earnings call, Defendant Tighe touted the success of the Auth0 integration and the now unified sales form, stating, "[n]ow that the back office and go-to-market teams have been fully integrated . . . *[w]e are off to a great start and recognize there is still a lot of work to do.*"  ¶155.  Defendant McKinnon doubled down on this misleading narrative, stating, "*[w]hat we're getting is we're getting synergy on the -- really on the sales side.*"  ¶157.  Defendants continued making similarly misleading statements as late as June 2, 2022 – reiterating that the integration was making "great progress" when in reality, the integration was suffering from significant issues.  *See* ¶¶162-163.

**E.      In August 2022, the Truth of Okta's Months-Long Sales Slowdown was Revealed**

The combination of the loss of Auth0 employees and Okta's last second decision to create one unified sales team, which forced Okta and Auth0 employees to sell each other's products without proper training, led to significant sales challenges.  ¶87.  For example, CW3 stated that nobody was selling Auth0 products.  ¶88.  CW3 noted that she received her "module" of accounts in February 2022 at the start of the fiscal year and following the integration of Auth0 sales staff.  *Id*.  CW3 explained that everyone in sales was "struggling," and she only managed to achieve 20% of her quota during Okta's first quarter for fiscal year 2023, and only one or two team members did better.  *Id*. These obstacles persisted through August 2022, when the truth about Okta's integration failures was revealed.

On August 31, 2022, after the close of the trading day, Okta held its earnings call for the Company's second quarter financial results for fiscal year 2023, during which Defendants finally disclosed issues related to the integration of Auth0.  ¶126.  Defendant McKinnon revealed the existence of sales team attrition and difficulty in selling Okta and Auth0 products.  ¶127.  It was a startling admission that Okta had experienced significant attrition issues that started over twelve months earlier and directly affected Okta's growth.  ¶132.  On this news, the price of Okta's stock fell dramatically overnight to $22.25 per share, or over 24.3%, to open at $69.15 on September 1, 2022. ¶130.  As investors and analysts continued to digest this news, the price of Okta's stock fell an additional $8.55 per share, or over 12.3%, to close at $60.60 by the close of trading on September 1, 2022.

**F.      The Proposed Class Representatives**

Lead Plaintiff is a public pension fund that manages the funds entrusted to them by the state of Nebraska.  ¶30.  NIC manages approximately $40 billion across thirty-two investment programs, including various pension and retirement plans for the State's employees and retirees.  Declaration of Michael P. Canty ("Canty Decl."), Ex. B, Declaration of Michael Walden-Newman ("Walden-Newman Decl.") at ¶2.  NIC acquired shares of Okta's Class A common stock during the Class Period at artificially inflated prices and suffered substantial losses when the truth about Okta's concealed integration risk was revealed to the market through a series of corrective disclosures to the public.  *Id.*

6

at ¶3.  Lead Plaintiff has and will continue to actively monitor and participate in the ongoing prosecution of the action.  *Id.* at ¶¶5-8.

Additional Plaintiff NCRS is administered by the North Carolina Department of State Treasurer, with the Treasurer serving as the sole trustee of NCRS's assets. NCRS provides pension benefits for state and local public employees in North Carolina and their beneficiaries. Canty Decl. Ex. C, Declaration of Benjamin Garner ("Garner Decl.") at ¶2.  NCRS purchased shares of Okta's Class A common stock during the Class Period at artificially inflated prices and suffered substantial losses when the truth about Okta's concealed integration risk was revealed through a series of corrective disclosures to the public. *Id.* at ¶3. NCRS will actively monitor and participate in the ongoing prosecution of this action. *Id.* at ¶¶5-8.

## III.   ARGUMENT

### A.   Legal Standard

The Ninth Circuit has "established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *In re NetSol Techs., Inc. Sec. Litig.*, 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016); *see also In re Scorpion Techs., Inc. Sec. Litig.,* 1994 WL 774029, at *3 (N.D. Cal. Aug. 10, 1994) ("[T]he Ninth Circuit favors a liberal use of class actions to enforce federal securities laws"); *In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) ("The Ninth Circuit and this District in particular have taken a liberal view of class certification motions brought in securities cases.").  This is because securities class actions are best suited for class treatment.  *See In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009) ("[c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws"); *Comput. Memories*, 111 F.R.D. at 679 ("securities litigation is particularly well-suited for class action treatment").  Thus, class certification in securities actions is inherently favorable.

### B.   This Action Satisfies the Requirements of Rule 23(a)

#### 1.   The Class Is So Numerous That Joinder Is Impracticable

Rule 23(a)(1) weighs in favor of class certification where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Here, "'impracticability' does not mean

1    'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris*

2    *v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). "While no specific minimum

3    number of potential class members exists, a proposed class of at least forty members presumptively

4    satisfies the numerosity requirement." *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL

5    1042502, at *4 (N.D. Cal. Mar. 16, 2016).

6         Courts in this Circuit agree that, for the purposes of class certification in securities actions,

7    numerosity is presumed "when a corporation has millions of shares trading on a national exchange,

8    [and] more than 40 individuals purchased stock over the course of more than a year.'" *Hatamian*,

9    2016 WL 1042502, at *4; *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 626 (N.D. Cal. 2018) (average

10   of 659.2 million shares outstanding); *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1178 (N.D.

11   Cal. 2017) (over 394 million shares outstanding); *Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL

12   4865559, at *2 (N.D. Cal. Oct. 27, 2017) (over 511 million shares traded during class period); *In re

13   Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018) (between 43.9 and 49.6 million shares

14   outstanding).

15        Here, according to Plaintiffs' expert, Chad Coffman, during the Class Period, shares of Okta

16   common stock were actively traded on the Nasdaq.  *See* Canty Decl. Ex. A, Expert Report of Chad

17   Coffman, ("Coffman Report"), ¶25. Throughout the Class Period, Okta had between 149.7 million

18   and 151.9 million shares of common stock outstanding.  *Id.* ¶66.

19        The proposed Class is therefore likely to contain at least hundreds (and likely thousands) of

20   investors making joinder impracticable.  *See In re Lyft Inc. Sec. Litig.*, 2021 WL 3711470, at *3 (N.D.

21   Cal. Aug. 20, 2021) ("Given the number of shares traded . . . the putative class members are

22   sufficiently numerous to make joinder impracticable").  Moreover, "because this is a securities action

23   involving publicly traded stock, it is highly likely that the members of the Class are geographically

24   diverse, making joinder impractical." *See In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,

25   2013 WL 5789237, at *4 (C.D. Cal. Oct. 25, 2013).

26        While the exact number of Class members is currently unknown, Plaintiffs believe that there

27   are at least thousands of members in the proposed Class.  Members of the Class may be identified

28   from Okta's records or by the records of its transfer agent.  Such absent Class members can be notified

8

of the pendency of this action by mail and publication using forms of notice similar to those customarily used in securities class actions.  Accordingly, the numerosity prerequisite for class certification is satisfied here.

## 2.     This Action Presents Common Questions of Law and Fact

Rule 23(a)(2) requires a showing that "questions of law or fact" are common to the class.  Fed. R. Civ. P. 23(a)(2).  "Plaintiffs need not show, however, that every question in the case, or even a preponderance of questions, is capable of class wide resolution.  So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014); *see also Stockwell v. City & Cnty. of S.F.*, 749 F.3d 1107, 1112 (9th Cir. 2014) ("[A] common contention need not be one that 'will be answered, on the merits, in favor of the class.'  Instead, it only 'must be of such a nature that it is capable of classwide *resolution* – which means that determination of its *truth or falsity* will resolve an issue that is central to the validity of each one of the claims in one stroke.'") (emphasis in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  In securities actions, courts have recognized that "public disclosures alleged to contain material misrepresentations and omissions . . . present common questions of law and fact." *Hatamian*, 2016 WL 1042502, at *4 ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the commonsense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable." (quoting *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)).

This Action raises several common questions of law and fact, including but not limited to: (i) whether the federal securities laws were violated by Defendants' acts as alleged in the Amended Complaint; (ii) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Okta; (iii) whether the prices of Okta's securities during the Class Period were artificially inflated because of Defendants' conduct complained of in the Amended Complaint; and; (iv) whether the members of the Class have sustained damages and, if so, what the proper measure of damages is.  These common questions establish commonality.  *See Lyft*, 2021 WL 3711470, at *3 (whether the registration statement

9

"contained untrue statements of material fact or omitted to disclose material facts, whether public sources of information could have revealed the purportedly untrue statements or omissions, and whether Defendants violated the Securities Act . . . are sufficient [questions] to satisfy" commonality); *China Intelligent*, 2013 WL 5789237, at *4 (where "members of the Class were all allegedly injured by the same misstatements and omissions in the Offering Documents . . . there are numerous common questions of law or fact that can be resolved on a classwide basis"); *LendingClub*, 282 F. Supp. 3d at 1179 (commonality satisfied where investors "suffered similar losses as a result" of "the same misleading registration statement").

### 3.      Plaintiffs' Claims Are Typical of the Class

Rule 23(a)(3) requires that the class representative's claims or defenses be "typical" of the claims or defenses of the prospective class.  To determine whether the claims are "typical," Courts consider "whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons*, 754 F.3d at 685.  Under Rule 23(a)(3)'s "permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.*  "[T]he typicality requirement is met" where all "claims are based upon the same course of events as the claims of all class members, and all claims are based on the same theories and will be proven by the same evidence." *In re Celera Corp. Sec. Litig.*, 2014 WL 722408, at *3 (N.D. Cal. Feb. 25, 2014).  Additionally, class members' injuries need not be identical to satisfy the typicality requirement.  Courts "do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 532 (N.D. Cal. 2009) (even "potentially conflicting incentives regarding the calculation of damages do not preclude certification of the proposed class").

Plaintiffs' claims are "typical" of, if not identical to, the claims of all other absent Class members.  "Here, all putative class members allegedly suffered injuries based on Defendants' misrepresentations . . . . There's nothing to suggest that the [Plaintiffs'] injury is unique in any way,

10

or that Defendants may have affirmative defenses against the [Plaintiffs] that wouldn't apply to the rest of the class. That's enough for typicality." *Banc of Cal.*, 326 F.R.D. at 647. Indeed, Plaintiff allege that Defendants misrepresented or omitted material facts concerning Okta's Auth0 integration. Specifically, that Okta was facing a mass exodus of highly specialized Auth0 employees, critical to Okta's ability to sell Auth0 products, and that the remaining Okta and Auth0 employees had insufficient knowledge of or training on the others' products, impeding their ability to sell the full suite of products. *See, e.g.*, ¶¶63, 65, 67-68. As a result, employees struggled to meet sales goals and Okta's integration plan deteriorated. Plaintiffs purchased or acquired Okta securities at artificially inflated prices during the Class Period, as did the absent Class members. ¶233. Both Plaintiffs and the absent Class members are presumed to have relied on Defendants' misrepresentations and omissions. *See Basic*, 485 U.S. at 240; *Erica P. John Fund, Inc. v. Halliburton Co. (Halliburton I)*, 563 U.S. 804, 811 (2011). Finally, Plaintiffs and the absent Class members were uniformly injured when the true facts concerning Okta's misrepresentations and omissions were revealed, resulting in a significant decline in Okta's stock price. *Wong v. Arlo Techs., Inc.,* 2021 WL 1146042, at *4 (N.D. Cal. Mar. 25, 2021), *amended and superseded on other grounds,* 2021 WL 1531171 (N.D. Cal., Apr. 19, 2021) ("Lead Plaintiff's claims are typical, if not identical, to those of the class because he purchased or acquired Arlo stocks at (allegedly) artificially inflated prices during the relevant time period and suffered accompanying losses.").[3]

### 4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether a plaintiff will adequately serve the class, courts consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335

---

[3] Moreover, the fact that NIC acquired its Okta shares as part of a distribution does not render it atypical. Indeed, investors other than NIC likely acquired Okta shares in the same or similar circumstances and equally suffered losses when the truth was revealed.

F.R.D. 276, 284-85 (N.D. Cal. 2020) (citing *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1988).

The adequacy requirement is satisfied here. Lead Plaintiff is a large public pension fund that manages the funds entrusted to them by the State of Nebraska. Walden-Newman Decl. ¶2. This entails managing the investments for 30 state entities and groups, including the State of Nebraska's employees and retirees and in particular in this case, NIC, which is the relevant entity that acquired Okta shares and sustained losses as a result. *Id*. Similarly, NCRS is a large public pension fund that provides pension benefits for state and local public employees in North Carolina and their beneficiaries. Garner Decl. at ¶2. NCRS purchased Okta Class A common stock during the Class Period and sustained losses as a result. *Id.* at ¶3.

Plaintiffs are committed to safeguarding the best interests of the Class and do not have interests that conflict with those of the Class. *China Intelligent*, 2013 WL 5789237, at *5 (crediting plaintiffs' "assert[ion] that there are no conflicts of interest between them and the absent members of the Class . . . because the claims of the Class members are based almost entirely on common issues of law and fact, and because … [p]laintiffs' interests appear to be closely bound to those of the absent Class members"); *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 985 (9th Cir. 2011) ("Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees").

Plaintiffs are well-suited to monitor and oversee the litigation to ensure that the best-interests of the Class are protected. To date, Plaintiffs have taken numerous steps to oversee the litigation, including: (i) investigating the claims, including by interviewing former employees; (ii) preparing and filing the Amended Complaint; (iii) briefing and defeating Defendants' motion to dismiss; and (iv) preparing this renewed motion for class certification. Plaintiffs have also begun an extensive document search to produce documents in response to Defendants' requests for production of documents. Plaintiffs will also provide testimony during their depositions.

Plaintiffs are also adequate because they have retained attorneys with considerable experience in securities class actions and complex litigation. *See* Rule 23(g) (requiring courts to assess adequacy of proposed class counsel). Lead Counsel is competent and qualified to lead this Action on behalf of

12

the Class.  *See* Labaton Sucharow LLP Firm Resume, Canty Decl. Ex. D.  Labaton Sucharow has served or is serving as lead counsel in many of the largest and most significant securities class actions,[4] and by appointing Labaton Sucharow as Lead Counsel, this Court has already made a preliminary (and proper) determination that Labaton Sucharow will fairly and adequately protect the interests of the Class.  *See* ECF No. 39.  Lead Counsel has committed substantial time and resources to representing the Class, has worked vigorously to prosecute this Action, and has and will continue to zealously and competently represent the interests of all Class members.

### C.    This Action Satisfies the Requirements of Rule 23(b)(3)

In addition to satisfying the Rule 23(a) requirements, Plaintiffs and the proposed Class must also satisfy at least one of the conditions imposed by Rule 23(b).  Rule 23(b)(3) requires: (i) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Here, Rule 23(b)(3) is satisfied because "the interests of the class members are aligned and the same alleged misconduct underlies their claims" and the numerous Class members "have a minimal interest in controlling the course of the litigation; there are significant efficiency gains to be reaped from concentrating the litigation in a single forum; and the likely difficulties in managing the class action are readily surmountable."  *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 363 (S.D.N.Y. 2016), *vacated in part on other grounds*, 862 F.3d 250 (2d Cir. 2017).

---

[4] *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *5 (N.D. Cal. July 22, 2019) ("The Court has no reservations regarding [Labaton Sucharow's] abilities . . .  or their zeal in representing the class"); *Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *7 (S.D.N.Y. Apr. 5, 2016) ("Labaton Sucharow's extensive involvement in complex securities class action litigation demonstrates that the firm is qualified, experienced, and generally able to conduct the litigation"); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014) ("This favorable Settlement is attributable to the diligence, determination, hard work, and reputation of [Labaton Sucharow], who developed, litigated, and successfully negotiated the settlement of this Action, an immediate cash recovery in a very challenging case"); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 41 (S.D.N.Y. 2012) (Labaton Sucharow has "substantial experience in the prosecution of securities class actions" and "has served as lead counsel in numerous securities actions ... in which it recently achieved settlements totaling" $1 billion).

13

### 1.    Common Questions of Law and Fact Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).   To satisfy this inquiry, "***questions*** of law or fact common to the class [must] 'predominate over any questions affecting only individual members' as the litigation progresses." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) (emphasis in original). Securities class actions routinely satisfy Rule 23(b)(3)'s predominance requirement. *See Amchem*, 521 U.S. at 625; *see also Basic*, 485 U.S. 224.   Finally, Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof[,]'" but rather just "that common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen*, 568 U.S. at 469 (emphasis and alternations in the original) (quoting Fed. R. Civ. P. 23(b)(3)).

This Action presents clear questions of law and fact common to every Class member, including: (i) whether Defendants issued false and misleading statements and omissions; (ii) whether Defendants acted with scienter; (iii) whether Okta securities traded at artificially inflated prices; and (iv) whether investors suffered damages as the truth was revealed.   Each one of these questions is susceptible to common proof on a Class-wide basis. *See Amgen*, 568 U.S. at 467-468.   Moreover, the Supreme Court has clearly found that materiality and loss causation are "'common questio[ns]' for purposes of Rule 23(b)(3)." *Id.* at 459-60, 467 (explaining these elements can be proven on a class-wide basis and will face the same outcome based on uniform evidence).

### a.    Plaintiffs Are Entitled to the Fraud-on-the-Market Presumption of Reliance

Plaintiffs may invoke the fraud-on-the-market presumption based on the facts that Okta securities traded in an efficient market and, in that market, the price of Okta securities reflected all publicly available information about the company.   For these reasons, all purchasers and acquirers of Okta securities are uniformly presumed to have relied on all available public information. *Amgen*, 568 U.S. at 458; *see Halliburton Co. v. Erica P. John Fund, Inc., (Halliburton II)*, 573 U.S. 258, 272 (2014) ("Even the foremost critics of the efficient-capital-markets hypothesis acknowledge that public

1    information generally affects stock prices.").  Because all Class members invoke the fraud-on-the-

2    market presumption, there are no individual reliance issues to be considered here.  *See Basic,* 485

3    U.S. at 241-242.

4           Four factors must be satisfied to invoke the *Basic* presumption of reliance: "(1) that the alleged

5    misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an

6    efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations

7    were made and when the truth was revealed." *Halliburton II*, 573 U.S. at 268.  Plaintiffs establish

8    these four factors allowing the presumption to apply.  Plaintiffs allege that Defendants'

9    misrepresentations were made publicly on March 2, 2022 (¶¶155-158), and June 2, 2022 (¶¶162-166),

10   and that these misrepresentations were material.  All Class members "traded [Okta] stock between

11   the time the misrepresentations were made and when the truth was revealed." *Id.*  For the reasons

12   stated below, Okta stock traded in an efficient market.

13          Mr. Coffman's report demonstrates that Okta securities satisfy *Basic's* factors and, thus,

14   traded in an efficient market.  Coffman Report ¶¶14-77.  Moreover, where a company's stock trades

15   on an open and developed exchange, courts need not conduct any further analysis to determine

16   whether market efficiency exists.  *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989).

17   Here, Okta was widely traded on the Nasdaq—a developed exchange—which alone establishes

18   market efficiency.  *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 269 (N.D. Cal. 2011) ("[p]laintiffs

19   made a *prima facie* showing that the fraud-on-the-market presumption of reliance applied because

20   [p]laintiffs sufficiently established that [defendant]'s stock was actively traded on an efficient market

21   – the NASDAQ").

22          Where plaintiffs cannot make this showing, courts apply the five-factor analysis set forth in

23   *Cammer,* 711 F. Supp. at 1286-87, to determine whether stock is traded in an efficient market.  The

24   factors are: (1) whether the stock trades at a high weekly volume; (2) whether securities analysts

25   follow and report on the stock; (3) whether the stock has market makers and arbitrageurs; (4) whether

26   the company is eligible to file United States Securities and Exchange Commission ("SEC")

27   Registration Statement Forms S-3; and (5) whether there are "empirical facts showing a cause and effect

28

LEAD PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO.: 3:22-CV-02990-SI

1  relationship between unexpected corporate events or financial releases and an immediate response in

2  the stock price." *Id.* at 1287.

3        For the reasons stated above, a *Cammer* analysis is not necessary.  However, even if the Court

4  conducted a *Cammer* analysis, Plaintiffs demonstrate that Okta securities satisfy all five factors

5  rendering the market for Okta securities efficient.

6        ***First***, Okta's trading volume supports a showing of market efficiency.  Coffman Report ¶¶26-

7  30.  "Turnover measured by average weekly trading of two percent or more of the outstanding shares

8  would justify a strong presumption that the market for the security is an efficient one; one percent

9  would justify a substantial presumption." *Cammer*, 711 F. Supp. at 1286.   During the Class Period,

10  the average weekly trading volume of Okta common stock was approximately 9.32% of shares

11  outstanding, compared to 2.58% for the average weekly trading volume on both the NYSE and

12  NASDAQ exchanges (Coffman Report ¶28) – which is greater than the threshold that courts

13  commonly apply.  *Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 571 (C.D. Cal. 2012) (quoting

14  *Cammer*, 711 F. Supp. at 1286) ("'average weekly trading of 2% or more of the outstanding shares

15  would justify a strong presumption that the market for the security is an efficient one; 1% would

16  justify a substantial presumption.'").

17        ***Second***, analyst coverage of Okta provides strong support for finding market efficiency here.

18  Coffman Report at ¶¶31-36.  "The existence of securities analysts following [a company's] stock

19  during the class period would imply that the market would rapidly and fully incorporate information

20  into the stock price because analyst reports would likely be 'closely reviewed by investment

21  professionals, who would in turn make buy/sell recommendations to client investors.'" *In re*

22  *Diamond Foods, Inc. Sec. Litig.*, 295 F.R.D. 240, 248 (N.D. Cal. 2013) (quoting *Cammer*, 711 F.

23  Supp. at 1286).  Here, "there were at least 82 reports issued during the Class Period and lists 18

24  separate firms that had equity analysts issue reports on Okta, including major firms such as RBC

25  Capital Markets, Morgan Stanley, and Wells Fargo."  Coffman Report at ¶33.

26        ***Third***, the existence of over one hundred market makers for Okta's common stock easily

27  supports a finding that the market was efficient.  *Id*. at ¶41.  Under *Cammer*, the existence of "ten

28  market makers for a security" is sufficient to invoke the "presumption that the market for the security

is an efficient one." *Cammer*, 711 F. Supp. at 1293.   Thus, the existence of one hundred and one market makers far exceeds *Cammer's* requirement.   Coffman Report at ¶41.   Okta's listing on the Nasdaq is strong evidence of market efficiency.   *Id*. at ¶¶37-41.   Throughout the Class Period, Okta's common stock was listed and traded on the Nasdaq, the second largest securities exchange by total market capitalization in the world.   ¶¶39-40.   As stated above, the fact that Okta's stock traded on the Nasdaq is itself a strong indicator of market efficiency.   *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 591 (N.D. Cal. 2009) ("Plaintiffs made a *prima facie* showing that the fraud-on-the-market presumption of reliance applied because [the p]laintiffs sufficiently established that [the defendant]'s stock was actively traded on an efficient market – the NASDAQ.").

**Fourth**, Okta's eligibility to file form S-3 Registration Statements is a strong indicator of market efficiency because the SEC only allows certain issuers to use these forms.   Coffman Report at ¶¶42-44.   Specifically, Form S-3 Registration Statements are reserved for issuers of securities that are generally deemed widely followed.   *Id*. at ¶43.   According to the Coffman Report, Okta filed an S-3 registration statement in March 2019 and there was no evidence found to suggest that Okta was deemed ineligible to file form S-3 Registration Statements thereafter.   *Id.* at ¶44.   Thus, Okta common stock satisfies this *Cammer* factor.

**Fifth**, Okta's price reaction to new material information demonstrates market efficiency.   *Id*. at ¶¶45-64.   The fluctuation of a stock price in reaction to corporate news is an indicator of market efficiency.   *See Cammer*, 711 F. Supp. at 1287.   This factor is routinely demonstrated through an "event study."   *Diamond Foods*, 295 F.R.D. at 247; *Luna*, 2017 WL 4865559, at *6 (an event study "is a feature of virtually every securities action").   Plaintiffs' expert, Chad Coffman, conducted an event study to demonstrate the causal connection between new company-specific events and movements in the market price as evidence of market efficiency.   Coffman Report at ¶46.   In conducting this event study, Mr. Coffman used statistical analysis to isolate the impact of such information on market prices – *i.e.*, "whether Okta Common Stock reacted to earnings announcements in a manner significantly different from how the stock moved on days with no Okta-related news."   *Id*. at ¶¶46-48.   For the reasons stated in Mr. Coffman's report, there is "a clear cause-and-effect

1   relationship between new material news and changes in the market price of Okta Common Stock
2   during the . . . Class Period." *Id*. at ¶¶45-64.

3         In addition to the *Cammer* factors, which demonstrate an efficient market for Okta stock,
4   courts also consider the three *Krogman* factors.  *See Di Donato v. INSYS Therapeutics, Inc.*, 333
5   F.R.D. 427, 438 (D. Ariz. 2019) (citing *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001)).
6   The three factors examine the company's market capitalization, the bid-ask spread, and the percentage
7   of stock not held by insiders (the float).  *Id*.  Each of these factors further supports a finding that the
8   market for Okta's stock was efficient.  During the Class Period, Okta had an average market
9   capitalization of $17.02 billion (Coffman Report at ¶67), approximately 99% of which were held by
10  non-insiders.  *Id*. at ¶71.  Okta's average bid-ask spread was narrow – estimated to be between only
11  0.046% and 0.057% per month during the Class Period.  *Id*. at ¶70.  Together, these facts satisfy the
12  three additional *Krogman* factors and support a finding of market efficiency.

13        Plaintiffs' expert considers two additional factors which support a finding of market efficiency
14  for Okta's stock.  *Id*. at ¶¶72-73.  First, Coffman analyzes institutional ownership stating that "966
15  institutions reported owning Okta Common Stock during the Class Period, holding the majority of
16  the public float.  This substantial level of institutional ownership of Okta Common Stock during the
17  Class Period coupled with the high trading volume further supports a conclusion of market
18  efficiency."  *Id*. at ¶72.  Second, Coffman includes an autocorrelation analysis which determines
19  whether "price movements of a security have the ability to predict future price movements."  *Id*. at
20  ¶73.  After running a regression analysis (a well-accepted methodology to test for autocorrelation),
21  Coffman determined that there was no evidence of autocorrelation, which further supports the
22  existence of market efficiency here.  *Id*. at ¶¶73-76.  Finally, Plaintiffs' expert includes an additional
23  factor – options – which further demonstrates that Okta stock traded in an efficient market.  *Id*. at ¶77.

24        Moreover, because the Complaint alleges material omissions, Plaintiffs and the proposed
25  Class are also entitled to the presumption of reliance established by *Affiliated Ute Citizens v. United*
26  *States*, 406 U.S. 128, 153-54 (1972) (For claims "involving primarily a failure to disclose, [by persons
27  with a duty to disclose,] positive proof of reliance is not a prerequisite to recovery.  All that is
28  necessary is that the facts withheld be material.").  *See* ¶¶155-158, ¶¶162-166.

(1)      Okta Cannot Maintain a Price Impact Argument to Rebut the Presumption of Reliance

The Supreme Court has recognized that defendants may attempt to rebut the fraud-on-the-market presumption of reliance at the class certification stage.  *Halliburton II*, 573 U.S. at 280-83. However, to rebut the presumption, Defendants must demonstrate a lack of "price impact" or that there is "no link between plaintiffs' decision to trade at the market price and the alleged misrepresentations or omissions."  *Symantec*, 335 F.R.D. at 283.    To make this showing, "[d]efendants must introduce evidence showing the alleged 'misrepresentation[s] in fact did not lead to a distortion of price or that an individual plaintiff traded or would have traded despite his knowing the statement was false.'"  *Hatamian*, 2016 WL 1042502, at *7 (citing *Basic*, 485 U.S. at 248) Importantly, Plaintiffs are not required to affirmatively prove price impact at this stage.  *Halliburton I*, 563 U.S. at 813; *Halliburton II*, 573 U.S. at 275-76, 281-85.    Because Okta's stock price reacted to company news (¶¶130-132), Defendants cannot rebut the reliance presumption at this early stage.

**b.      Damages Can be Calculated on a Class-wide Basis**

Proof of damages is not a prerequisite to class certification.  *See LendingClub*, 282 F. Supp. 3d at 1184.  Moreover, the damages calculation does not present individual issues that predominate over Class-wide considerations.    *Banc of Cal.*, 326 F.R.D. at 651.  Plaintiffs intend to prove damages and economic loss through the "out-of-pocket" method of damages (*i.e.*, "that damages are equal to the artificial inflation in the share price at the time of purchase minus the artificial inflation per share at the time of sale").  Coffman Report at ¶¶78-83.    The out-of-pocket method is a widely accepted method of measuring damages in Exchange Act cases.  *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018) ("Courts regularly reaffirm that the out-of-pocket, or event study, method matches plaintiffs' theory of liability under Section 10(b) of the Securities Exchange Act, making it the standard method for calculating damages in virtually every Section 10(b), class action.") (citing *In re SanDisk LLC Sec. Litig.*, 2018 WL 4293336, at *2 (N.D. Cal. Sept. 4, 2018)).  For the reasons set forth in the Coffman Report, Plaintiffs clearly demonstrate that damages can be calculated on a class-wide basis.  Coffman Report at ¶¶78-83.

2.      **This Proposed Class is Superior to Alternative Methods for Resolving this Dispute**

To be certified, a class must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The test for superiority turns on four factors: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

Securities class actions, like this Action, are routinely found to meet these superiority factors. *See  Twitter Inc.* 326 F.R.D. at 630-31 (N.D. Cal. 2018); *In re UTStarcom*, 2010 WL 1945737, at *10 (N.D. Cal. May 12, 2010) (stating that "the court has previously found class treatment superior to individual actions in the context of securities litigation."); *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants").

Here, all four of Rule 23(b)(3)'s factors weigh in favor of class certification.  ***First***, there is no indication that any member of the Class would control the prosecution of these claims individually especially because recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.  *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1023 (finding that "[i]n most cases, litigation costs would dwarf potential recovery.").  Indeed, the proposed class consists of countless geographically dispersed shareholders making the costs and logistics of individually pursuing these claims impracticable.  *See VeriSign,* 2005 WL 7877645 at *9.  In the unlikely event that some individuals seek to litigate on an individual basis, they will have the option to opt out of the Class.  ***Second***, counsel is unaware of any other litigation against these Defendants asserting these claims.   ***Third***, concentration of this litigation in one forum is desirable to promote efficiency – a key consideration of Rule 23(b)(3) – and to avoid inconsistent adjudication.  *See Hodges,* 274 F.R.D.  at 271 (reasoning "where thousands of identical complaints

20

1  would have to be filed, it is superior to concentrate claims through a class action in a single forum.").

2  *Fourth*, there are no anticipated difficulties in maintaining this action as a class action.[5]  All members

3  of the proposed class are those who purchased or acquired the publicly traded Class A common stock

4  of Okta, Inc. and were damaged due to Okta's actions.

5         For these reasons, a class action is superior to any other method of resolving the claims at

6  issue.

7         **D.      The Court Should Appoint Lead Counsel as Class Counsel Under Rule 23(g)**

8         Labaton Sucharow should be appointed as class counsel pursuant to Rule 23(g).  Fed. R. Civ.

9  P. 23(g)(1) ("a court that certifies a class must appoint class counsel").   When appointing class

10  counsel, a court "must consider" the following factors: (i) the work counsel has done in identifying

11  or investigating potential claims in the action; (ii) counsel's experience in handling class actions,

12  other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of

13  the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R.

14  Civ. P. 23(g)(1)(A)(i)-(iv).

15         Labaton Sucharow, in its capacity as Lead Counsel, has performed substantial work

16  identifying and investigating the claims asserted in this Action, has substantial experience handling

17  class actions asserting claims of this type, has committed and will continue to commit substantial

18  resources to representing the Class, and has worked vigorously to prosecute this Action. *See supra*

19  Section III(B)(4); Canty Decl. Ex. D.   In appointing Lead Counsel, this Court already made a

20  preliminary (and proper) determination that Labaton Sucharow will fairly and adequately protect the

21  interests of the putative Class. *See* ECF No. 39.  For these reasons, Labaton Sucharow will fairly and

22  adequately represent the Class and should be appointed Class Counsel pursuant to Rule 23(g).

23  **IV.    CONCLUSION**

24         For the reasons addressed above, Plaintiffs request that the Court: (i) certify the Class pursuant

25  to Rule 23(a) and 23(b)(3); (ii) appoint Plaintiffs as Class Representatives; and (iii) appoint Labaton

---

[5] Regardless, the Ninth Circuit has recognized that "courts should not refuse to certify a class merely on the basis of manageability concerns."  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)).

21

Sucharow as Class Counsel pursuant to Rule 23(g); and (iv) grant Plaintiffs any such further relief as the Court deems just and proper.

DATED: November 1, 2023                    Respectfully submitted,


                                           **LABATON SUCHAROW LLP**

                                           */s/ Michael P. Canty*
                                           Michael P. Canty (*pro hac vice*)
                                           James T. Christie (*pro hac vice*)
                                           Nicholas Manningham (*pro hac vice*)
                                           140 Broadway
                                           New York, New York 10005
                                           Telephone: (212) 907-0700
                                           Facsimile: (212) 818-0477
                                           Email: mcanty@labaton.com
                                                      jchristie@labaton.com
                                                      nmanningham@labaton.com

                                           *Attorneys for Plaintiffs and the Class*

                                           **WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
                                           James M. Wagstaffe (#95535)
                                           Frank Busch (#258288)
                                           100 Pine Street, Suite 2250
                                           San Francisco, California 94111
                                           Telephone: (415) 357-8900
                                           Facsimile: (415) 371-0500
                                           Email: wagstaffe@wvbrlaw.com
                                                      busch@wvbrlaw.com

                                           *Liaison Counsel for the Class*