**LABATON KELLER SUCHAROW LLP**
MICHAEL P. CANTY (*pro hac vice*)
  mcanty@labaton.com
JAMES T. CHRISTIE (*pro hac vice*)
  jchristie@labaton.com
NICHOLAS MANNINGHAM (*pro hac vice*)
  nmanningham@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700

**ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP**
JAMES M. WAGSTAFFE, SBN 95535
  wagstaffe@wvbrlaw.com
Mailing Address:  Post Office Box 3835
San Luis Obispo, CA 93403-3835
Physical Address:  6633 Bay Laurel Place
Avila Beach, CA 93424
Telephone: (805) 543-0990

*Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE OKTA, INC. SECURITIES LITIGATION | CASE NO. 3:22-cv-02990-SI<br><br>**CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date**: July 19, 2024<br>**Time**: 10:00 a.m.<br>**Judge**: Hon. Susan Illston<br>**Courtroom**: 1, 17th Floor |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 2

PRELIMINARY STATEMENT .................................................................................................. 2

    A.    Overview of the Litigation ............................................................................... 3

    B.    Settlement Discussions ..................................................................................... 5

    C.    Terms of the Proposed Settlement .................................................................. 6

    D.    Proposed Schedule of Events .......................................................................... 8

ARGUMENT .............................................................................................................................. 9

I.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL .................................. 9

    A.    Class Representatives and Class Counsel Have Adequately Represented the Class ..................................................................................... 11

    B.    The Settlement Resulted from Good Faith, Arm's-Length Negotiations ........... 12

    C.    The Relief Provided by the Settlement Is Adequate in Satisfaction of Rule 23(e)(2)(C) ............................................................................................ 13

        1.    Many Challenges to Obtaining a Recovery Remained ........................... 13

        2.    Proposed Plan of Allocation for Distributing Relief Treats Class Members Equitably .......................................................................... 17

        3.    Anticipated Legal Fees and Expenses ..................................................... 19

    D.    Class Members Are Treated Equitably Relative to One Another ....................... 21

II.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, PSLRA REQUIREMENTS, AND THE COURT'S GUIDANCE ............. 21

    A.    Notice Procedures ........................................................................................... 21

    B.    Form and Substance of Proposed Notice ...................................................... 23

    C.    Claims Administration .................................................................................... 24

CONCLUSION ......................................................................................................................... 25

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allagas v. BP Solar Int'l, Inc.*,
No. 14-cv-00560, 2016 WL 9114162 (N.D. Cal. Dec. 22, 2016)........................................ 20

*In re Banc of Calif. Sec. Litig.*,
No. 17-00118, 2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ........................................ 12

*Chavez v. Converse, Inc.*,
No. 15-3746, 2020 WL 4047863 (N.D. Cal. July 8, 2020) ........................................ 13

*In re Hewlett-Packard Co. Sec. Litig.*,
No. 8:11-cv-01404-AG-RNB, slip op. (C.D. Cal. Sept. 15, 2014) ........................................ 20

*In re HP Inc. Sec. Litig.*,
No. 3:20-cv-01260-SI, slip op. (N.D. Cal. Sept. 6, 2023) ........................................ 7

*In re HP Sec. Litig.*,
No. 12-cv-05980-CRB, 2015 WL 4477936 (N.D. Cal. July 20, 2015) ........................................ 22

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................ 15

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ........................................ 22

*In re LendingClub Sec. Litig.*,
No. 16-cv-2627, 2018 WL 1367336 (N.D. Cal. Mar. 16, 2018) ........................................ 7

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ........................................ 17

*Luz Bautista-Perez v. Juul Labs, Inc.*,
No. 20-cv-1613, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ........................................ 10

*McPhail v. First Command Fin. Planning, Inc.*,
No. 05-cv-179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ........................................ 16

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ........................................ 9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................ 22

*In re Netflix Privacy Litig.*,
No. 11-cv-00379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................ 12

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

ii

*In re NVIDIA Corp. Derivative Litig.*,
    No. 06-cv-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ..................... 12

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... 15, 16

*In re Portal Software, Inc. Sec. Litig.*,
    No. 03-cv-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ............................... 12

*Rabkin v. Lion Biotechs, Inc.*,
    No. 3:17-cv-02086-SI, slip op. (N.D. Cal. Apr. 17, 2019) ....................................... 7

*In re SanDisk LLC Sec. Litig.*,
    No. 3:15-cv-01455-VC, slip op. (N.D. Cal. Oct. 23, 2019).................................... 20

*Satchell v. Fed. Express Corp.*,
    No. 03-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)...................................... 13

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .................................................................. 9

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................. 20

*In re Zynga Inc., Sec. Litig.*
    No. 12 cv 04007, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)......................... 10

**Statutes**

15 U.S.C. § 78u-4(a)(4) ................................................................. 19, 21

15 U.S.C. § 78u-4(a)(7) ..................................................................... 23

15 U.S.C. § 78u-4(a)(7)(A)-(F)............................................................... 23

15 U.S.C. § 78u-4(e) ........................................................................ 18

28 U.S.C. § 1715 (2005) *et seq.* .......................................................... 23

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................... 4

Fed. R. Civ. P. 23 ................................................................... 9, 10, 22

Fed. R. Civ. P. 23(c)(2)(B) ............................................................... 22

Fed. R. Civ. P. 23(e) .................................................................. 2, 10

Fed. R. Civ. P. 23(e)(1)......................................................... 1, 9, 10, 23

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

iii

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................................. 10

Fed. R. Civ. P. 23(e)(2) ............................................................................................... 2, 9, 10

Fed. R. Civ. P. 23(e)(2)(B) .................................................................................................. 12

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................. 13

Fed. R. Civ. P. 23(e)(2)(D) .................................................................................................. 17

Fed. R. Civ. P. 23(e)(3) ................................................................................................... 7, 10

**Other Authority**

*N.D. Cal. Procedural Guidance for Class Action Settlements* ............................................ *passim*

## NOTICE OF MOTION

PLEASE TAKE NOTICE that Nebraska Investment Council ("NIC" or "Lead Plaintiff") and North Carolina Retirement Systems ("NCRS" and together with NIC, "Plaintiffs" or "Class Representatives") hereby move this Court for an order, pursuant to Federal Rule of Civil Procedure 23(e)(1): (1) preliminarily approving the proposed Settlement of the above-captioned certified class action (the "Action"); (2) approving the form and manner of notice of the proposed Settlement and related relief to the Class; and (3) scheduling a final settlement hearing before the Court to determine whether the proposed Settlement, proposed Plan of Allocation for the proceeds of the Settlement, and Class Counsel's motion for attorneys' fees and Litigation Expenses should be approved.

The Motion is supported by the following memorandum of points and authorities, and the accompanying Declaration of Michael P. Canty in Support of Class Representatives' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement, dated June 11, 2024, ("Canty Decl.") with annexed exhibits, including the Stipulation and Agreement of Settlement, dated May 28, 2024 ("Stipulation"), which is annexed as Exhibit 1.[1]

Pursuant to Civil Local Rule 7-2 and the Court's Standing Order, the Motion is noticed for a hearing on July 19, 2024, at 10:00 a.m.  However, Defendants do not oppose the Motion and the Parties agree that it may be decided on the papers, should the Court concur that a hearing is not required.

A proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), with annexed exhibits, which was negotiated by the Parties, is also submitted herewith.

---

[1] All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein.  All references to "Ex." herein are references to exhibits attached to the Canty Declaration.  Unless otherwise noted, citations and internal quotations have been omitted.

<u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

1.      Whether the Court will likely be able to approve the proposed $60 million cash Settlement of the Action pursuant to Rule 23(e)(2), such that notice of the Settlement should be provided to members of the certified Class.

2.      Whether the Court should approve the form and substance of the proposed Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release form ("Claim Form"), and the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice"), attached as Exhibits A-1 through A-3 to the Preliminary Approval Order, as well as the manner of notifying the Class of the Settlement and related relief.

3.      Whether the Court should set a date for a hearing on final approval of the proposed Settlement, the proposed Plan of Allocation, and Class Counsel's motion for attorneys' fees and Litigation Expenses (the "Settlement Hearing").

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**PRELIMINARY STATEMENT**

Class Representatives Nebraska Investment Council and North Carolina Retirement Systems, through their counsel Labaton Keller Sucharow LLP ("Labaton" or "Class Counsel"), respectfully submit this memorandum of points and authorities in support of their unopposed Motion, on behalf of themselves and the certified Class, pursuant to Federal Rule of Civil Procedure 23 (e), for preliminary approval of the proposed Settlement of this certified class action in the amount of $60,000,000, in cash, pursuant to the terms set forth in the Stipulation and Agreement of Settlement, dated May 28, 2024.[2]  The Settlement is with all defendants: Okta, Inc. ("Okta" or the "Company), and Todd McKinnon, Brett Tighe, and Frederic Kerrest (collectively, the "Individual Defendants" and, with Okta, the "Defendants"), and will resolve the Action.

Class Representatives respectfully submit that the Settlement is a very favorable result for the Class and should be preliminarily approved by the Court.  The decision to settle was informed

---

[2] The Stipulation is attached as Exhibit 1 to the Canty Declaration, submitted herewith.

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF CASE NO. 3:22-CV-02990-SI

2

by a comprehensive investigation into the claims and defenses in the Action, intensive motion practice, certification of the Class, and extensive arm's-length negotiations overseen by a highly respected mediator.  For the reasons stated herein, Class Representatives respectfully request that the Court grant this Motion.

### A.    Overview of the Litigation

On May 20, 2022, an initial class action complaint, captioned *City of Miami Fire Fighters' and Police Officers' Retirement Trust v. Okta, Inc., et al.*, Case No. 3:22-cv-02990, was filed in U.S. District Court, Northern District of California (the "Court") alleging violations of the federal securities laws against Defendants.  ECF No. 1.

On July 19, 2022, motions to appoint a lead plaintiff and to approve lead plaintiff's selection of counsel were filed by three movants pursuant to the procedure set forth by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  ECF Nos. 14, 22, 28.  On August 26, 2022, the Court entered an Order appointing NIC as Lead Plaintiff and Labaton Sucharow LLP (n/k/a Labaton Keller Sucharow LLP) as Lead Counsel for the class pursuant to the PSLRA. ECF No. 39.

On October 13, 2022, Lead Plaintiff filed the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), alleging violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"). ECF No. 48.  Among other things, the Complaint alleged that Defendants made materially false and misleading statements and omissions about Okta's integration of Auth0, a highly touted acquisition that Defendants claimed would accelerate Okta's growth in the customer identity and access management market and sustain the Company's high growth rate, and a data security incident in January 2022.  The Complaint further alleged that the price of Okta's publicly traded Class A common stock was artificially inflated as a result of the allegedly false and misleading statements and omissions and that the Company's stock price declined when the alleged truth about Okta's business was allegedly revealed to the market.  *Id.*

The Complaint was based on Lead Counsel's extensive factual investigation, which

Class Representatives' Unopposed Motion for Preliminary Approval of Proposed Class Action
Settlement and Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-CV-02990-SI                                                                                      3

included, among other things, the review and analysis of: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses.  Lead Counsel also identified and contacted approximately 173 former Okta employees and other persons with relevant knowledge, and interviewed approximately 19 of them (nine of whom provided information for use in the Complaint as confidential witnesses "CWs"), and consulted with experts on loss causation and damages issues.

On December 1, 2022, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 56.  Lead Plaintiff opposed the motion to dismiss on January 12, 2023.  ECF No. 61.  On February 17, 2023, Defendants filed their reply in support of their motion to dismiss.  ECF No. 68.

The Court held a hearing on Defendants' motion to dismiss the Complaint on March 17, 2023. ECF No. 70.  On March 31, 2023, the Court entered its Opinion and Order granting in part and denying in part Defendants' motion ("MTD Order").  ECF No. 72.  As a result of MTD Order, among other things, claims based on alleged misstatements from September 1, 2021 through March 1, 2022, as well as all of the alleged misstatements regarding the data security incident, were dismissed and the case proceeded to discovery with a class period of March 3, 2022 through August 31, 2022.  *Id*.

On May 30, 2023, formal discovery commenced when Lead Plaintiff served its first set of requests for the production of documents ("RFPs").  On May 31, 2023, Defendants served their first set of RFPs and Interrogatories. Thereafter, the Parties engaged in extensive negotiations over the scope of the discovery requests.

On August 18, 2023, Lead Plaintiff filed its Motion for Class Certification and Appointment of Class Representative and Class Counsel.  ECF No. 91.  In September and October

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

4

1    2023, the Parties engaged in discovery related to Lead Plaintiff's motion for class certification.

2        On October 25, 2023, before Defendants filed an opposition to the class certification

3    motion, the Parties filed a joint stipulation withdrawing Lead Plaintiff's motion for class

4    certification without prejudice and proposing new deadlines for the briefing of a renewed motion

5    for class certification. ECF No. 94. On November 1, 2023, Plaintiffs filed a renewed motion for

6    class certification, which added NCRS as an additional named plaintiff and proposed class

7    representative. ECF No. 97. On January 17, 2024, Defendants filed a notice of non-opposition to

8    Plaintiffs' renewed motion for class certification. ECF. No. 102. On February 5, 2024, the Court

9    granted Plaintiffs' renewed motion and appointed Plaintiffs as Class Representatives, certified a

10   class of investors who purchased or otherwise acquired the publicly traded Class A common stock

11   of Okta during the period from March 3, 2022 through August 31, 2022, inclusive, and appointed

12   Labaton as Class Counsel. ECF No. 105.[3]

13       **B.    Settlement Discussions**

14       After Plaintiffs filed their renewed motion for class certification, the Parties, through their

15   counsel, conferred on the possibility of reaching a negotiated resolution of the Action and agreed

16   to participate in a mediation under the auspices of David M. Murphy of Phillips ADR (the

17   "Mediator").

18       On March 25, 2024, the Parties participated in a full-day mediation session before the

19   Mediator. In advance of the mediation, Defendants produced nearly 4,000 documents to Class

20   Representatives. The Parties also submitted detailed mediation statements and exhibits to the

21   Mediator, which addressed issues of both liability and damages. The Parties did not reach a

22   settlement by the conclusion of the full-day mediation session. However, the Parties continued

23   negotiations with the assistance of the Mediator. On April 10, 2024, the Mediator issued a

24   mediator's recommendation, which the Parties accepted on April 16, 2024, subject to the

25

26       [3] The class that was certified by the Court (*see* ECF Nos. 97, 105) is the same as the "Class"
     as it is defined in the Stipulation, except that the Class as defined in the Stipulation contains
27   additional individuals or entities that are excluded from the Class, including control persons of
     Okta and any firm, trust, corporation, or other entity in which any Defendant has or had a
28   controlling interest. *See* Guidance ¶ 1(a) (requiring disclosure of any differences between
     settlement class and the certified class).

negotiation of a mutually acceptable long form stipulation of settlement.  A Term Sheet was executed by the Parties on April 29, 2024, and the Stipulation was executed on May 28, 2024.

### C.    Terms of the Proposed Settlement

The Settlement provides that Defendants will pay, or cause to be paid, $60 million in cash into an interest-bearing escrow account. *See* Stipulation at ¶ 5.  The Settlement Amount, plus accrued interest, after the deduction of Court-awarded attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed to Class Members who submit timely and valid Claims, in accordance with a plan of allocation approved by the Court.  The Settlement is not a claims-made settlement and there is no reversion. *See* Stipulation at ¶ 11.  If approved, Defendants and/or any other Person(s) funding the Settlement Amount on a Defendants' behalf will have no right to the return of the Settlement Fund, or any portion thereof, for any reason.  *Id.*; *see also N.D. Cal. Procedural Guidance for Class Action Settlements* ("Guidance") ¶ 1(g) (requiring disclosure of any reversions).[4]

In exchange for the payment of the Settlement Amount, upon the Effective Date of the Settlement, Class Representatives and each Class Member shall release and dismiss the "Released Plaintiffs' Claims" against the Released Defendant Parties. *See* Stipulation at ¶ 3.[5] The definition of Released Plaintiffs' Claims has been tailored to provide Defendants and the other Released Defendant Parties with "complete peace" but to release only claims that Class Representatives and any other members of the Class: (i) asserted in the Action or could have asserted in the Action, or any forum, that arise out of or are based upon both: (1) the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the complaints filed in the Action and (2) the purchase or acquisition of Okta Class A common stock

---

[4] For the Court's convenience, a table outlining relevant Guidance requirements, along with where responsive information can be found in Class Representatives' Motion papers, is attached as Appendix A.

[5] Defendants are also releasing any claims "that they could have asserted against any of the Released Plaintiff Parties that arise out of or are connected to the institution, prosecution, or settlement of the claims against Defendants in the Action, except for claims relating to the enforcement of the Settlement or any claim against any Person who submits a timely and valid request for exclusion that is accepted by the Court." *See* Stipulation at ¶ 1(gg).

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

6

during the Class Period. *See* Stipulation at ¶ 1(ii); *see also* Guidance ¶ 1(b) (requiring disclosure of differences between released claims and claims of the operative complaint).

The proposed release is, therefore, tailored to the conduct at issue in the Action and is consistent with release provisions approved by this Court and other courts in this District. *See, e.g.*, *In re HP Inc. Sec. Litig.*, No. 3:20-cv-01260-SI, slip op. (N.D. Cal. Sept. 6, 2023), ECF No. 143 (approving similar release of claims that the class asserted or could have asserted "that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations, or omissions set forth in the Action and that relate to the purchase or other acquisition of HP common stock during the Class Period."); *Rabkin v. Lion Biotechs, Inc.*, No. 3:17-cv-02086-SI, slip op. (N.D. Cal. Apr. 17, 2019), ECF Nos. 132-3 & 139 (approving similar release of claims that "could have [been] asserted in any court or forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations, or omissions set forth in the Amended Complaint and that relate to the purchase or acquisition of shares of Lion common stock during the Class Period"); *In re LendingClub Sec. Litig.*, No. 16-cv-2627, 2018 WL 1367336, at *3 (N.D. Cal. Mar. 16, 2018) (approving similar release because it was "anchored to 'the purchase, acquisition, holding, sale, or disposition of LendingClub common stock by Class Members during the [class] period'").

In addition, the Settlement does not release claims asserted in related shareholder derivative actions brought purportedly on behalf of Okta against certain Okta officers and directors, *In re Okta, Inc. Stockholder Derivative Litigation*, Case No. 3:22-cv-07480-SI (N.D. Cal.) (consolidated with Case No. 3:22-cv-08627-SI) (filed November 28, 2022; *Austin Buono v. McKinnon, et al.*, Case No. 23-cv-00413-CFC (D. Del.) (filed April 14, 2024; and *Tony F. Nasr v. McKinnon, et al.*, Case No. 24-cv-00106-CFC (D. Del.) (filed January 25, 2024). *See* Stipulation ¶ 1(ii). The Parties are not aware of any other pending cases that will be affected by the Settlement or the proposed release. *See* Guidance ¶ 1(d) (requiring disclosure of other cases affected by settlement).

Pursuant to Rule 23(e)(3), the only agreements made by the Parties in connection with the

Settlement are the Term Sheet, the Stipulation, and the confidential Supplemental Agreement, dated May 28, 2024, concerning the circumstances under which Defendants may terminate the Settlement based upon the number of exclusion requests. *See* Stipulation at ¶ 40. It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class. The Supplemental Agreement can be provided to the Court *in camera* or under seal.

After approval of the Settlement and approval of the Plan of Allocation for the proceeds of the Settlement, the proposed Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq" or "Claims Administrator"), will process all claims received and will calculate their value according to the plan of allocation approved by the Court. At the completion of the administration, Epiq will distribute the Net Settlement Fund to eligible Claimants, and will continue to do so as long as it is economically feasible to make distributions. *See* Stipulation at ¶ 25. As mentioned above, this is not a claims-made settlement and the entire $60 million Settlement Fund is for the benefit of the Class, regardless of how many claims are submitted. *Id.* at ¶ 11. As discussed further below, when it is no longer feasible to make additional distributions, Class Representatives propose that the unclaimed balance be contributed to Consumer Federation of America ("CFA"), a non-profit, non-sectarian 501(c)(3) organization, or such other *cy pres* recipient approved by the Court. *Id.* at ¶ 25

### D. Proposed Schedule of Events

Class Representatives respectfully propose the following schedule for Settlement-related events, each of which is in the proposed Preliminary Approval Order:

| Deadline for mailing individual Notices and Claim Forms | ***10 business days after entry of the Preliminary Approval Order (the "Notice Date")*** |
|---|---|
| Deadline for publication of Summary Notice in *The Wall Street Journal* and transmission over *PR Newswire* | ***Within 14 calendar days of the Notice Date*** |

Class Representatives' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement and Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-CV-02990-SI

8

| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Class Counsel's request for an award of attorneys' fees and expenses | *No later than 35 calendar days before the Settlement Hearing* |
|---|---|
| Deadline for submission of requests for exclusion or objections | *No later than 21 calendar days before the Settlement Hearing* |
| Deadline for filing reply papers in further support of Class Representatives' and Class Counsel's motions | *No later than seven (7) calendar days before the Settlement Hearing* |
| Deadline for submission of Claim Forms | *Postmarked or received no later than 10 calendar days before the Settlement Hearing* |
| Settlement Hearing | *At the Court's convenience, but no fewer than 100 calendar days after entry of the Preliminary Approval Order* |

This schedule is similar to those used and approved by numerous courts in securities class action settlements and complies with the Ninth Circuit's ruling in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) (fee motion must be made available to the class before the objection deadline). The schedule will also allow Class Members to have more than 35 days after the issuance of the Notice to object or request exclusion from the Class. *See* Guidance ¶ 9 (timeline for objections/opt outs).

**ARGUMENT**

## I.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

As a matter of public policy, settlement is strongly favored for resolving disputes, especially in complex class actions. *See e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.").

Federal Rule of Civil Procedure 23 requires court approval for any settlement of a class action. A district court's review of a proposed class action settlement is a two-step process. First, the court performs a review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice and a hearing, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2). A court may grant preliminary approval of a settlement upon a finding that it

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

9

1  "will likely be able to" approve the settlement as fair, reasonable, and adequate at the final hearing.

2  *See* Fed. R. Civ. P. 23(e)(1)(B).[6]  By this motion, Class Representatives request that the Court take

3  this first step: preliminary approval of the Settlement.

4        Effective December 1, 2018, Rule 23(e) was amended to, among other things, specify that

5  the crux of a court's preliminary approval evaluation is whether notice should be provided to the

6  class given the *likelihood* that the court will be able to finally approve the settlement as fair,

7  adequate, and reasonable[7] considering whether:

    (A)    class representatives and counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    an agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.[8]

14  Fed. R. Civ. P. 23(e)(2).  Applying the standards set forth above, it is respectfully submitted that

15  the Settlement should be preliminarily approved.

_____

[6] Rule 23(e)(1) effectively codifies prior case law, which provided that courts should grant preliminary approval after considering whether the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval." *Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20-cv-1613, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022).

[7] Courts are also asked to consider whether they will be able to certify the settlement class, but here, the Court has already certified the Class. *See* Rule 23(e)(1)(B).

[8] The Court may also consider the Ninth Circuit's long-standing approval factors, many of which overlap with the Rule 23 considerations:  "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."  *In re Zynga Inc., Sec. Litig.* No. 12 cv 04007, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015).

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

10

1

2

### A.  Class Representatives and Class Counsel Have Adequately Represented the Class

As an initial matter, Class Representatives have vigorously investigated the claims in the Action since its inception and the Settlement was achieved only after diligent arm's-length mediated negotiations between counsel with considerable knowledge and expertise in the field of federal securities law, including securities fraud class actions under the Exchange Act.  Class Representatives and Class Counsel developed a deep understanding of the facts of the case and merits of the claims by, *inter alia*: (i) conducting an extensive investigation of the claims at issue, including interviews with approximately 19 former Okta employees (nine of whom provided information for use in the Complaint); (ii) preparing and filing a detailed Complaint, which expanded the scope of the initial complaint by adding particularized allegations supporting claims that Defendants misled investors about the Auth0 integration; (iii) opposing Defendants' extensive motion to dismiss the Complaint through briefing and oral argument; (iv) moving for and obtaining class certification; (v) researching, drafting, and propounding discovery requests on Defendants; (v) reviewing nearly 4,000 documents in connection with the mediation process; (vi) analyzing Defendants' mediation statement and exhibits; and (vi) consulting with experts in the fields of damages and loss causation.

Both Class Representatives are sophisticated institutional investors. NIC is responsible for managing the investments for 30 state entities and groups, including the State of Nebraska's employees and retirees (including Omaha School Public Employees' Retirement System), and has approximately $40 billion across thirty-two investment programs.  *See* ECF No. 97-3. Similarly, Class Representative NCRS provides pension benefits for state and local public employees in the State of North Carolina.  *See* ECF No. 97-4.  NIC and NCRS played active roles in the settlement discussions, with representatives of each attending the mediation in New York City on March 25, 2024.  Moreover, these representatives participated in the ongoing discussions with the Mediator after the mediation failed to achieve a settlement.  With an informed understanding, Class Representatives agreed to the Settlement.

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

11

Further, throughout the Action, Class Representatives had the benefit of the advice of knowledgeable counsel well-versed in securities fraud cases.  Labaton is highly experienced and has a long and successful track record in such cases.  *See* Ex. 2 (firm resume).  Labaton has served as lead counsel in a number of high-profile matters.  *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-8141 (S.D.N.Y.) ($1 billion recovery); *In re Countrywide Sec. Litig.*, No. 07-cv-5295 (C.D. Cal.) ($600 million recovery); and *In re Schering-Plough Corp. / ENHANCE Sec. Litig.*, No. 08-397 (D.N.J.) (settlement of $473 million).

Courts give considerable weight to the opinion of experienced and informed counsel.  *See, e.g.*, *In re NVIDIA Corp. Derivative Litig.*, No. 06-cv-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.").

**B.     The Settlement Resulted from Good Faith, Arm's-Length Negotiations**

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." Courts have long recognized an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations."  *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *In re Netflix Privacy Litig.*, No. 11-cv-00379, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel").  Courts have also reasoned that "one important factor is that the parties reached the settlement after significant arms-length negotiations with a third-party mediator." *In re Banc of Calif. Sec. Litig.*, No. 17-00118, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019).

Here, as noted above, the Settlement was achieved only after a full-day, in person mediation on March 25, 2024 before Mediator David Murphy of Phillips ADR, which included the exchange of robust mediation material and Class Counsel's review of nearly 4,000 documents produced by Defendants.  During the Mediation, several well-regarded law firms with deep expertise in defense of securities class actions and insurance vigorously asserted arguments

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF CASE NO. 3:22-CV-02990-SI

12

against liability and damages. With the Parties still meaningfully apart in their respective settlement positions after the Mediation, the gap was only bridged when Mr. Murphy made a mediator's recommendation on April 10, 2024, which the Parties accepted a few days later.  As courts in this District have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. 03-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Chavez v. Converse, Inc.*, No. 15-3746, 2020 WL 4047863, at *2 (N.D. Cal. July 8, 2020).  The negotiations were at all times adversarial and at arm's-length, and have produced a result that is in the best interests of the Class.

### C.   The Relief Provided by the Settlement Is Adequate in Satisfaction of Rule 23(e)(2)(C)

#### 1.   Many Challenges to Obtaining a Recovery Remained

Although Class Representatives and Class Counsel believe that the claims asserted against Defendants are strong, they recognize the significant challenges and risks they would face moving forward, as well as the expense and length of continued litigation through summary judgment motions, trial and likely appeals.

As an initial matter, the Court granted Defendants' motion to dismiss in part, dismissing all allegations related to the security incident in January 2022 and a majority of the alleged misstatements related to the Auth0 integration.  As the Court stated during the April 28, 2023 initial case management hearing, the Court "cut out 99 percent" of the Complaint in its MTD Order.  As a result, Class Representatives moved into discovery with a significantly shorter Class Period (March 3, 2022 through August 31, 2022) and more limited theory of fraud.  With a substantially trimmed Complaint, Class Representatives understood the risks they faced in establishing one or more of the required elements—falsity, materiality, scienter, and/or loss causation—to sustain the remaining securities fraud claims through summary judgment and trial.

With regard to falsity, Defendants would have likely continued to argue that the evidence does not support the theory of falsity credited by the Court in the MTD Order.  For example, the Court's determination that the March 2, 2022 and June 2, 2022 earnings call statements were actionable relied in large part on the Complaint's allegation that Okta scrapped its initial

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

13

1  integration plan—which involved keeping Auth0 employees as specialists selling Auth0 products
2  exclusively for one year—at the last minute in favor of a new plan where all salespeople would
3  be generalists expected to sell both Okta and Auth0 products. *See* ECF No. 72 at 19-20.
4  Moreover, in finding falsity, the Court also relied on the Complaint's allegation that Okta did not
5  provide training to these salespeople, which harmed the Company's sales since the salespeople
6  did not have knowledge of the products.  However, Defendants would likely seek to proffer
7  evidence that Okta's decision to change its integration plan happened earlier than alleged in the
8  Complaint.  Moreover, Defendants would also likely seek to introduce evidence suggesting that
9  Okta provided training opportunities and resources prior to and after the integration of the sales
10  teams.  Defendants would therefore likely argue that Class Representatives could not prove that
11  Defendants concealed any material negative information in the earnings calls about Okta's
12  integration plan or the training provided to its combined sales force, presenting a real risk to
13  establishing the theory of falsity that the Court credited in upholding the March and June alleged
14  misstatements.

15      As to scienter, Defendants would have likely argued, *inter alia*, that Class Representatives
16  could not establish that the Individual Defendants acted with the requisite fraudulent intent at the
17  beginning of the Class Period because, despite some challenges, the attrition and sales integration
18  issues did not begin to impact the Company's financial performance until after the June 2022
19  statements and that any integration challenges faced by the Company before then were therefore
20  routine.  Defendants would have been able to argue that, at best, Defendants had knowledge that
21  Okta was going through some expected integration challenges that would come along with any
22  major acquisition, and that such challenges did not raise to the level of severity requiring
23  disclosure because, at that time, the integration issues had yet to have any impact on the
24  Company's financial results or projections.  Accordingly, Defendants would likely seek to
25  establish that they did not make the decision to revise Okta's FY23 guidance until late July 2022,
26  nearly two months after the final alleged misstatements on June 2, 2022, and thus, their general
27  statements that the integration was going well—qualified with other statements that there was still
28

Class Representatives' Unopposed Motion for Preliminary Approval of Proposed Class Action
Settlement and Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-CV-02990-SI

14

1    work to do—were not made with any fraudulent intent to mislead investors at the time the

2    statements were made.

3          Moreover, Class Representatives faced difficult issues with respect to establishing loss

4    causation and damages, which are decidedly challenging elements in even the strongest securities

5    fraud case.  For example, at least one analyst downgraded the Company's stock prior to the

6    August 31, 2022 corrective disclosure based on, among other things, "increasing concerns around

7    increased sales turnover & Auth0/Okta sales integration issues."  Accordingly, there was a risk

8    that Defendants could have successfully argued that the August 31, 2022 alleged disclosure (the

9    only allegedly corrective disclosure in the case) was not corrective because the market had already

10   priced in at least some risk about employee attrition and sales integration challenges before then.

11   At minimum, Class Representatives' damages expert could have been required to reliably account

12   for this information, which could have reduced the total amount of recoverable damages.

13         If liability were established with respect to the claims that survived the motion to dismiss,

14   Class Representatives' damages expert has estimated class wide maximum aggregate damages

15   recoverable at trial, based on the entire stock price decline on the alleged disclosure date

16   (September 1, 2022), to be approximately $1.036 billion, after netting out gains on pre-Class

17   Period purchases.  *See* Guidance ¶ 1(c) (motion for preliminary approval shall state the potential

18   class recovery if plaintiffs fully prevailed on all claims).  However, Defendants would have likely

19   sought to establish that even using a plaintiff-style model to calculate damages, their maximum

20   theoretical exposure is roughly $600 million.  Accordingly, the Settlement recovers a range of

21   approximately 5.8% to 10% of these maximum estimated damages.

22         This recovery is a very favorable result for the Class in the face of the Action's significant

23   litigation risks.  Indeed, courts have regularly approved settlements that recover similar

24   percentages of maximum damages.  *See, e.g.*, *Int'l Bhd. of Elec. Workers Local 697 Pension Fund*

25   *v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev.

26   Oct. 19, 2012) (approving $12.5 million settlement recovering approximately 3.5% of the

27   maximum damages estimated by plaintiffs); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,

28

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

15

1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *McPhail v. First Command Fin. Planning, Inc.,* No. 05-cv-179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate).

Moreover, the recovery here is also well above the median recovery percentages in recent securities class actions involving similar damages, as calculated by Cornerstone Research, which conducts annual and semi-annual reviews of securities class action settlements. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research 2024), Ex. 3 at 6. According to Cornerstone Research, for cases with total estimated damages (based on Cornerstone's methodology) ranging from $500 million to $999 million, median settlements in 2023 recovered 4.6% of total estimated damages, and from 2014 to 2022, median settlements recovered 3.3% of damages. *Id.* at 6. These percentages of recovery dropped to 2.0% and 2.6%, respectively, for cases with damages estimated at more than $1 billion. *Id.* Notably, the $60 million recovery is four times the median recovery of $15 million in securities class action cases in 2023. *Id.* at 1. For the period from 2018 through 2022, the median settlement value was $11.7 million, and in 2022 it was $13.5 million. *Id.*

Although the Settlement compares very favorably to median securities class action settlements, it is important to note that Class Representatives' expert's maximum estimate assumes that Class Representatives would be able to prove damages based on the full alleged corrective disclosure and that they would not need to "disaggregate," or parse out, confounding inactionable information on those dates. Had the case proceeded, Defendants would have strenuously argued that Class Representatives could not establish loss causation or, at a minimum, would argue that damages should be reduced to account for the confounding information mentioned above.

Lastly, the Settlement represents a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of completing extensive fact and expert discovery, summary

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

16

judgment, trial, and post-trial litigation. *See, e.g.*, *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").  At each of these stages, there would be significant risks attendant to the continued prosecution of the Action, and there was no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

Accordingly, in light of the substantial risks and expense of continued litigation, and compared to the certain and prompt recovery of $60,000,000, the Settlement is a very favorable result that is well within the range of reasonableness.

### 2.  Proposed Plan of Allocation for Distributing Relief Treats Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement "treats class members equitably relative to each another."  Here, the Settlement does not improperly grant preferential treatment to NIC, NCRS, or any segment of the Class. Rather, all Class Members that submit a timely and valid Claim Form will receive a distribution from the Net Settlement Fund in accordance with the Plan of Allocation to be approved by the Court.

At the final Settlement Hearing, Class Representatives will ask the Court to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement to eligible Claimants. The Plan of Allocation, which is reported in full in the Notice, was drafted with the assistance of Class Representatives' consulting damages expert, based on the measure of damages for claims under the Exchange Act and is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement amongst eligible Claimants. *See* Notice at ¶¶ 51-69.

Specifically, the Plan of Allocation is designed to equitably distribute the Settlement proceeds among members of the Class who were allegedly injured by Defendants' alleged misrepresentations and who submit valid Claim Forms. The Plan provides for the calculation of a "Recognized Loss Amount" for each properly documented purchase or acquisition of Okta Class A common stock during the Class Period.  A Claimant's total Recognized Claim will depend on, among other things, when their shares were purchased and/or sold during the Class

Period in relation to the disclosure date alleged in the Action, whether the shares were held through or sold during the PSLRA's 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of the shares when they were sold or held.  In developing the Plan of Allocation, Class Representatives' consulting damages expert considered the amount of artificial inflation allegedly present in Okta Class A common stock throughout the Class Period that was purportedly caused by the alleged fraud.

The Claims Administrator will calculate Claimants' Recognized Claims using the transactional information provided by Claimants in their Claim Forms, which can be mailed to the Claims Administrator, submitted online using the Settlement website, or, for large investors, with hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team. Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Class Counsel, and Defendants do not have Class Members' transactional data and a claims process is required.  Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all Authorized Claimants.[9]

Once the Claims Administrator has processed all submitted claims, notified Claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distributions will be made to Authorized Claimants in the form of checks and wire transfers. Guidance  After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund, at least six (6) months after the initial distribution

---

[9] Because eligible Claimants will be receiving their *pro rata* share of the Net Settlement Fund and their individual recoveries will depend on the value of all other eligible Claimants' recoveries, which will change on a daily basis as claims are processed and verified, it would not be feasible to have the website provide estimates of claim amounts for each Class Member. *See* Guidance ¶ 3.

of such funds, shall be re-distributed to Class Members who have cashed their initial distributions in an economical manner, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution and Taxes. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of Notice and Administration Expenses, Taxes, and unpaid attorneys' fees and expenses, shall be contributed to the Consumer Federation of America, or such other *cy pres* recipient approved by the Court.[10] *See* Stipulation at ¶ 25. Neither the Parties nor their counsel have a relationship with CFA. *See* Guidance ¶ 8.

### 3. Anticipated Legal Fees and Expenses

As set forth in the Notice, Class Counsel will request attorneys' fees of no more than 22% of the Settlement Fund and Litigation Expenses of no more than $410,000, which may include an application pursuant to the PSLRA for the reasonable costs and expenses (including lost wages) of Class Representatives directly related to their representation of the Class in an aggregate amount not to exceed $60,000. *See* Guidance ¶ 6. The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Class Representatives have been closely involved throughout the litigation and settlement of the Action and their requests will be based on the amount of time they dedicated to the case and their efforts on behalf of the Class, which will be detailed in declarations submitted with Class Counsel's motion for attorneys' fees and expenses, to be filed with the Court thirty-five (35) days before the Settlement Hearing. *See* Guidance ¶ 7.

---

[10] CFA is an association of non-profit consumer organizations that was established in 1968 to advance the consumer interest through research, advocacy, and education. *See generally* www.consumerfed.org. With respect to victims of financial fraud, CFA has an Investor Protection program that works nationwide to promote consumer-oriented policies that safeguard investors against fraud through: (i) the development of educational material for investors; (ii) drafting policies and legislation; (iii) providing testimony and comments on legislation and regulations. *See* www.consumerfed.org/issues/investor-protection. CFA has been approved as a *cy pres* beneficiary in several securities settlements in California, including, *In re Intuitive Surgical Sec. Litig.*, Case No. 5:13-cv-01920-EJD (N.D. Cal.); *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 12-cv-04677-YGR (N.D. Cal.); and *In re Broadcom Corp. Sec. Litig.*, No. 01-CV-00275-MLR (C.D. Cal.).

A fee request of no more than 22% is below the 25% "benchmark" within the Ninth Circuit and is thus reasonable when considering fees awarded in other class action settlements with similar recoveries. *See, e.g., In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455-VC, slip op. at 2 (N.D. Cal. Oct. 23, 2019), ECF No. 284 (awarding 25% of $50 million settlement); *Allagas v. BP Solar Int'l, Inc.*, No. 14-cv-00560, 2016 WL 9114162, at *2 (N.D. Cal. Dec. 22, 2016) (awarding 23.2% of $47.33 million common fund); *In re Hewlett-Packard Co. Sec. Litig.*, No. 8:11-cv-01404-AG-RNB, slip op. at 2-3 (C.D. Cal. Sept. 15, 2014), ECF No. 167 (awarding 25% fee of $57 million settlement). *See* Guidance ¶ 6.

A 22% fee would amount to $13,200,000, which would provide a "multiplier" on Class Counsel's "lodestar" in the case of 4.8. The basis of Class Counsel's fee and expense request will be detailed in its upcoming motion requesting fees and expenses however, to date, Labaton's has spent approximately 4,500 hours litigating the case with a lodestar value of approximately $2.7 million.[11] *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 (9th Cir. 2002) (affirming 28% fee award representing 3.65 multiplier and noting that multipliers commonly range from 1.0 to 4.0). *See* Guidance ¶ 6.

Class Counsel's maximum expense figure of $410,000 is based upon total-to-date expenses of approximately $326,700.00, which includes the amounts below, a $60,000 maximum PSLRA reimbursement request for Class Representatives, plus a "cushion" to cover incurred expenses that have not yet been invoiced or expenses that will be incurred between now and Class Counsel's motion for fees and expenses:

| Category | Amount |
|---|---|
| Experts/Professional Fees | $130,000.00 |
| Mediation Fees | $46,000.00 |
| Transcript Fees | $500.00 |
| Long-Distance Telephone/Conference Calling | $200.00 |

[11] Class Counsel is in the process of reviewing its time and additional time will be spent between now and the filing of the fee and expense motion. Accordingly, the final figure presented in its motion requesting fees may differ.

| | |
|---|---|
| Overnight Delivery | $2,000.00 |
| Electronic Research | $20,000.00 |
| Electronic Discovery | $90,000.00 |
| Work-Related Transportation/ Meals/Hotels | $20,000.00 |
| Filing & Service Fees | $3,000.00 |
| Duplicating | $15,000.00 |
| **TOTAL** | **$326,700.00** |

### D.    Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to either Class Representatives or any segment of the Class. Rather, all members of the Class, including Class Representatives, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[12] All Class Members that were allegedly harmed as a result of the alleged fraud, and that submit an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. *See generally* Notice at ¶¶ 51-68.

## II.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, PSLRA REQUIREMENTS, AND THE COURT'S GUIDANCE

### A.    Notice Procedures

Class Counsel proposes that notice be given to the Class in the form of the mailed long-form Notice and Claim Form ("Notice Packet") and the Summary Notice, which will be published in *The Wall Street Journal* and be disseminated over the internet via *PR Newswire*. *See* Exhibits A-1 to A-3 to the proposed Preliminary Approval Order. Notice to the Class in the form and in the manner set forth in the proposed Preliminary Approval Order will fulfill the requirements of due process, the Federal Rules of Civil Procedure, the PSLRA, and the Northern District's

---

[12] Class Representatives may seek reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action. This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of plaintiffs' costs explicitly contemplated by the PSLRA in addition to receiving their *pro rata* recovery).

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

21

1   Guidance ¶ 3. *See also* Declaration of Cameron R. Azari, Esq. Regarding Notice Plan ("Notice

2   Decl."), submitted herewith as Ex. 4 to the Canty Decl.

3       Rule 23(c)(2)(B) requires notice of the pendency of a class action to be "the best notice

4   practicable under the circumstances." It must be "reasonably calculated, under all the

5   circumstances, to apprise interested parties of the pendency of the action and afford them an

6   opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S.

7   306, 314 (1950).  Notice must describe "the terms of the settlement in sufficient detail to alert

8   those with adverse viewpoints to investigate and to come forward and be heard." *See, e.g.*, *Lane*

9   *v. Facebook, Inc*., 696 F.3d 811, 826 (9th Cir. 2012).

10      Class Counsel proposes to provide Class Members notice by: (i) individual first-class

11  mailing of the Notice Packet to all Class Members who can reasonably be identified and located,

12  using information provided by Okta's transfer agent and information provided by third party

13  banks, brokers, and other nominees about their customers who may have eligible purchases; (ii)

14  emailing of the Notice Packet (to the extent emails are provided to the Claims Administrator);

15  (iii) publication of the Summary Notice in *The Wall Street Journal*; and (iv) dissemination of the

16  Summary Notice on the internet using *PR Newswire*.  The Notice Packet and other Settlement-

17  related documents will also be accessible on the Settlement website and Class Counsel's website.

18  This proposed notice program is the "gold standard" in securities cases.  *See In re HP Sec. Litig*.,

19  No. 12-cv-05980-CRB, 2015 WL 4477936, at *2 (N.D. Cal. July 20, 2015) (finding that similar

20  procedures satisfy Rule 23 and the PSLRA, and constitute the best notice practicable).

21      Through the Preliminary Approval Order, name and address data for potential Class

22  Members will be obtained from third-party banks, brokers, and nominees, and the Claims

23  Administrator will be able to reach potential Class Members by individual notice.  Such third-

24  parties are also required to provide email addresses to the Claims Administrator to the extent they

25  are available. *See* Preliminary Approval Order, ¶ 6.  Given the availability of individual notice,

26  as supplemented by dissemination of the Summary Notice, Class Counsel is not recommending

27  the use of social media outreach.

28

Class Representatives' Unopposed Motion for Preliminary Approval of Proposed Class Action
Settlement and Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-CV-02990-SI

22

1    In addition, the Parties have conferred and while they do not believe a notice under the

2    Class Action Fairness Act of 2005, 28 U.S.C. § 1715 (2005) *et seq.* ("CAFA"), is required in this

3    Action, which is governed by the Exchange Act, no later than ten calendar days following the

4    filing of the Stipulation with the Court, Defendants will serve a CAFA notice. *See* Stipulation ¶

5    20. The Parties are not aware of any other notice requirements applicable to the Action. *See*

6    Guidance ¶ 10.

7         **B.        Form and Substance of Proposed Notice**

8         The form and substance of the notice program are also appropriate and reasonable.  The

9    notices are written in plain language and provide the relevant information and answers to most

10   questions that Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the forms

11   of notice describe, among other things, the nature of the Action; the definition of the Class; the

12   terms of the Settlement; the considerations that caused Class Representatives to conclude that the

13   Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and expenses that may

14   be sought; the procedure for requesting exclusion from the Class; the procedure for objecting; the

15   procedures for submitting claims; the proposed Plan of Allocation; and the date and place of the

16   Settlement Hearing.

17        The long-form Notice also satisfies the PSLRA's separate disclosure requirements (*see* 15

18   U.S.C. § 78u-4(a)(7)) by, *inter alia*, stating:  (i) the amount of the Settlement determined in the

19   aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of

20   damages that would be recoverable in the event Class Representatives prevailed; (iii) that Class

21   Counsel intends to make an application for an award of attorneys' fees and expenses (including

22   the amount of such fees and expenses determined on an average per share basis), and a brief

23   explanation of the fees and expenses sought; (iv) the name, telephone number, and address of a

24   representative of Class Counsel who will be available to answer questions concerning any matter

25   contained in the Notice; and (v) the reasons why the Parties are proposing the Settlement.  *See* 15

26   U.S.C. § 78u-4(a)(7)(A)-(F).

27        The Notice  also  satisfies  the  District's Guidance in that it includes, among other things,

28

(1) "contact information for class counsel to answer questions"; (2) the address for the Settlement website, which will provide deadlines, key information, links to relevant documents, and an online claim portal; (3) "instructions on how to access the case docket;" and (4) information about the Settlement Hearing, including reminders to check the Settlement Website and the Court's websites for any changes to the hearing date/time. Guidance ¶ 3. The Notice also provides the procedures and deadlines for submitting Claim Forms; objections to any aspect of the Settlement, the Plan of Allocation, or the Fee and Expense Application; and for requesting exclusion from the Class.

### C.    Claims Administration

Class Representatives request that the Court appoint Epiq as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. *See* Guidance ¶ 2(a). Epiq is a recognized leader in legal administration services for class action settlements and legal noticing programs and has successfully administered hundreds of complex securities class action settlements. *See* Notice Decl., Ex. 4 at ¶¶ 4, 7; Ex. 5 (Epiq CV). Epiq has over 30 years of experience in class action administration in securities class action cases, as well as antitrust, discrimination, financial services, product liability, and ERISA class action. It has administered the majority of the top 100 securities settlements since the passage of the PSLRA. Notably, its domestic infrastructure includes call centers with over 2,000 seats, and state-of-the-art full-service mail, print and contact centers. *Id.* The Notice Declaration includes a discussion of Epiq's comprehensive data security procedures. *See* Notice Decl., Ex. 4 at ¶¶ 13-20. *See* Guidance ¶ 2(b).

Class Counsel selected Epiq after a competitive bidding process in which three firms submitted cost proposals and Epiq had the most competitive proposal. Canty Decl. at ¶ 3; Guidance ¶ 2(a). All of the cost proposals received involved comparable methods of providing notice and claims processing, including use of first-class mail and identification of potential Class Members through third-party brokers and nominee owners. Class Counsel has engaged Epiq to serve as the administrator in three securities cases other than this Action in the past two years (as

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

24

compared to a total of 24 such new engagements during the same period).  *Id*. at ¶ 4.  Class Counsel has found Epiq to be a very skilled and capable administrator for these types of cases, with competitive pricing compared to similar administration firms.

Epiq estimates that 75,000 to 150,000 Notices will be mailed, and that approximately 30,000 claims will be received, based on an estimated 20% response rate assuming the higher end of the range of notices.  *See* Notice Decl. ¶ 37; *see also* Guidance ¶ 1(f).[13]  Summary information for three recent cases in which Labaton acted as lead counsel or co-lead counsel is attached to the Canty Decl. as Exhibit 6. These cases were selected because they are comparably sized securities class action settlements.  *See* Guidance ¶ 11.

With respect to Notice and Administration Expenses, Epiq currently estimates that its fees and expenses in connection with the Settlement may be in the range of $275,000 to $325,000.[14]  Notice Decl. ¶ 39; Guidance ¶ 2(b).  This estimate assumes, among other things, that less than approximately 150,000 notice packets of 20 pages (consisting of a Notice and Claim Form) will be mailed and that less than 30,000 claims will be received. The estimate does not include the cost reimbursement that Nominees request for providing name/address data, as provided for in the Preliminary Approval Order.  In the event that actual experience differs from these assumptions, the administrative fees and expenses incurred in connection with this Settlement will differ from this estimate.   Notice and Administration Expenses will be paid from the Settlement Fund.  *See* Stipulation ¶ 20; Guidance ¶ 2(b).

## **CONCLUSION**

For the foregoing reasons, Class Representatives respectfully request that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (i) preliminarily

---

[13] The estimated number of notice packets is based on past matters of similar size and average trading volume over the Class Period. Class sizes in cases involving publicly traded securities remain rough estimates until all identified brokers and nominees have responded with completed lists of beneficial shareholder counts.  Notice Decl. ¶ 37.

The conversion of approximately 20% of notices to claim forms is a very standard assumption in securities cases, although this does not mean that 80% of the Class will not recover. In fact, institutional investors may submit only a few hundred claims, however those claims typically represent thousands of transactions and the majority of the damages suffered by a class.

[14] This estimate is less than the costs of other comparable administrations that Class Counsel has overseen.  *See also* Ex. 6.

1   approving the Settlement; (ii) approving the manner and forms of notice to the Class; (iii) setting

2   a date for the Settlement Hearing; (iv) appointing Epiq Class Action and Claims Solutions as

3   Claims Administrator; and (v) granting such other and further relief as may be required.

4

5   Dated: June 11, 2024                          **LABATON KELLER SUCHAROW LLP**

6

                                        By:     /s/ *Michael P. Canty*
7                                               Michael P. Canty (*pro hac vice*)
                                                James T. Christie (*pro hac vice*)
8                                               Nicholas D. Manningham (*pro hac vice*)
                                                140 Broadway
9                                               New York, NY 10005
                                                Telephone: (212) 907-0700
10                                              mcanty@labaton.com
                                                jchristie@labaton.com
11                                              nmanningham@labaton.com
12
                                                *Attorneys for Plaintiffs and the Class*
13
                                                **ADAMSKI MOROSKI MADDEN**
14                                              **CUMBERLAND & GREEN LLP**
                                                James M. Wagstaffe (#95535)
15                                              Mailing Address:  P.O. Box 3835
                                                San Luis Obispo, CA 93403-3835
16                                              Physical Address:  6633 Bay Laurel Place
                                                Avila Beach, CA 93424
17                                              Telephone: (805) 543-0990

18                                              *Liaison Counsel for Plaintiffs and the Class*

19

20

21

22

23

24

25

26

27

28

**APPENDIX A**

**PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS**

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| **1. Information About the Settlement** | |
| (a) Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate. | Motion at 5 n. 3 |
| (b) Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate. | Motion at 6-7 |
| (c) The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims. | Motion at 15 |
| (d) Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state. | NA; Motion at 7:25 |
| (e) The proposed allocation plan for the settlement fund. | Motion at I.C.2.; Proposed Notice ¶¶ 51-68 |
| (f) If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples. | Motion at 25:5 |
| (g) In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate. | NA; Motion at 6:12 |

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

27

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| **2. Settlement Administration** | |
| (a) Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administration over the last two years. | Motion at II.C.; Canty Decl. ¶¶ 3-4 |
| (b) Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs. | Motion at 24-25; Notice Decl. ¶¶ 13-20; 39 |
| **3. Notice** | |
| The parties should ensure that the class notice is easily understandable, in light of the class members' communication patterns, education levels, and language needs. The notice should include the following  information: | *See generally* proposed notices annexed as Exs. A-1 to A-3 of the proposed Preliminary Approval Order |
| (a) Contact information for class counsel to answer questions. | Proposed Notice ¶¶ 7, 50; Proposed Summary Notice p. 2 |
| (b) The address for a website, maintained by the claims administrator or class counsel, that lists key deadlines and has links to the notice, a claim form (if any), preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case. | *See generally* proposed notices |
| (c) Instructions on how to access the case docket via PACER or in person at any of the court's locations. | Proposed Notice ¶¶ 44, 48 |
| (d) The date and time of the final approval hearing, clearly stating that the date may change without further notice to the class. | Proposed Notice p.1 & ¶¶ 43, 44; Proposed Summary Notice p. 1 |
| (e) A note to advise class members to check the settlement website or the Court's PACER site to confirm that the date has not been changed. | Proposed Notice p.1 & ¶ 44 |

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF CASE NO. 3:22-CV-02990-SI

28

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| The parties should explain how the notice distribution plan is effective. Class counsel should consider the following ways to increase notice to class members: identification of potential class members through third-party data sources; use of text messages and social media to provide notice to class members; hiring a marketing specialist; providing a settlement website that estimates claim amounts for each specific class member and updating the website periodically to provide accurate claim amounts based on the number of participating class members; and distributions to class members via direct deposit. | Motion at II.A. & B. |
| The notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2). If U.S. mail is part of notice distribution plan, notice envelope should be designed to enhance the chance that it will be opened. | Motion at II.A. |
| Inclusion of suggested language in class notices:<br><br>"This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the settlement agreement available at www.___.com, by contacting class counsel at _____, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, [insert appropriate Court location here], between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.<br><br> PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS." | Proposed Notice ¶¶ 48-49 |
| **4. Opt-Outs** | |
| The notice should instruct class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. It should require only the information needed to opt out of the settlement and no extraneous information or hurdles. The notice should | Proposed Notice ¶¶ 34-35 |

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

29

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| clearly advise class members of the deadline, methods to opt out, and the consequences of opting out. | |
| **5. Objections** | |
| Objections must comply with Federal Rule of Civil Procedure 23(e)(5). | Proposed Notice ¶¶ 39-41 |
| The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket, and the parties will receive electronic notices of filings. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections. | Proposed Notice ¶¶ 39-41 |
| Below is suggested language for inclusion in class notices: "You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you should object. Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number ( _____v. _____, Case No. _____), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, [insert appropriate Court location here], and (c) be filed or postmarked on or before _____ ." | Proposed Notice ¶¶ 39-40 |
| **6. Attorneys' Fees and Costs** | |
| Class Counsel should include information about the fees and costs (including expert fees) they intend to request, their lodestar calculation (including total hours), and resulting multiplier. | Motion at I.C.3. |
| In a common fund case, the parties should include information about the relationship between the amount of the common fund, the requested fee, and the lodestar. | Motion at I.C.3. |

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

30

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| To the extent counsel base their fee request on having obtained injunctive relief and/or other non-monetary relief for the class, counsel should discuss the benefit conferred on the class. | N/A |
| **7. Service Awards** | |
| The parties should include information about the service awards they intend to request as well as a summary of the evidence supporting the awards in the motion for preliminary approval. The parties should ensure that neither the size nor any conditions placed on the incentive awards undermine the adequacy of the named plaintiffs or class representatives. In general, unused funds allocated to incentive awards should be distributed to the class pro rata or awarded to cy pres recipients. | Motion at 19:17 |
| **8. Cy Pres Awardees** | |
| If the settlement contemplates a cy pres award, the parties should identify their chosen cy pres recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members' claims. | Motion at 19:6; Proposed Notice ¶ 68 |
| The parties should also identify any relationship they or their counsel have with the proposed cy pres recipients. | NA; Motion at 19:7 |
| In general, unused funds allocated to attorneys' fees, service awards, settlement administration costs, and class member payments should be distributed to the class pro rata or awarded to cy pres recipients or to the relevant government authorities. | Motion at 18-19 |
| **9. Timeline** | |
| The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs. | Motion at 8-9 |
| **10. Class Action Fairness Act (CAFA) and Similar Requirements** | |
| The parties should address whether CAFA notice is required and, if so, when it will be given. In addition the parties should address substantive compliance with CAFA. | Motion at 23:1; Stipulation ¶ 20 |
| In addition, the parties should address whether any other required notices to government entities or others have been provided, such as notice to the Labor & Workforce Development Agency (LWDA) pursuant to the Private Attorneys General Act (PAGA). | NA; Motion at 23:5 |

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

31

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| **11. Comparable Outcomes** | |
| Lead class counsel should provide information about comparable cases, including settlements and litigation outcomes. Lead class counsel should provide the following information for as many as feasible (and at least one) comparable class settlement (i.e., settlements involving the same or similar claims, parties, issues): (a) The claims being released, the total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice, the number and percentage of claim forms submitted, the average recovery per class member or claimant, the amounts distributed to cy pres recipients, the administrative costs, the attorneys' fees and costs, the total exposure if the plaintiffs had prevailed on every claim. | Motion at 25:7; Canty Decl. Ex. 6 |
| (b) Where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests. | NA |
| (c) Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class. | NA |
| Counsel should summarize this information in easy-to-read charts that allow for quick comparisons with other cases, supported by analysis in the text of the motion. | Canty Decl. Ex. 6 |
| **12. Electronic Versions** | |
| Electronic versions (Microsoft Word or WordPerfect) of all proposed orders and notices should be submitted to the presiding judge's Proposed Order (PO) email address when filed. Most judges in this district used Microsoft Word, but counsel should check with the individual judge's Courtroom Deputy. | Done |
| **13. Overlapping Cases** | |
| Within one day of filing of the preliminary approval motion, the defendants should serve a copy on counsel for any plaintiffs with pending litigation, whether at the trial court or appellate court level, whether active or stayed, asserting claims on a representative (e.g., class, collective, PAGA, etc.) basis that defendants believe may be released by virtue of the settlement. | N/A |

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on June  11, 2024, I authorized the electronic filing of the foregoing

3  with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

4  to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all

5  registered participants only.

6          I certify under penalty of perjury under the laws of the United States of America that the

7  foregoing is true and correct.

8          Executed on June 11, 2024

9

10                                              /s/ *Michael P. Canty*
                                               Michael P. Canty

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28