**LABATON KELLER SUCHAROW LLP**
MICHAEL P. CANTY (*pro hac vice*)
  mcanty@labaton.com
JAMES T. CHRISTIE (*pro hac vice*)
  jchristie@labaton.com
NICHOLAS MANNINGHAM (*pro hac vice*)
  nmanningham@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700

**ADAMSKI MOROSKI MADDEN**
**CUMBERLAND & GREEN LLP**
JAMES M. WAGSTAFFE, SBN 95535
  wagstaffe@wvbrlaw.com
Mailing Address:  Post Office Box 3835
San Luis Obispo, CA 93403-3835
Physical Address:  6633 Bay Laurel Place
Avila Beach, CA 93424
Telephone: (805) 543-0990

*Counsel for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OKTA, INC. SECURITIES LITIGATION | CASE NO. 3:22-cv-02990-SI<br><br>**CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date**: November 8, 2024<br>**Time**: 10:00 a.m.<br>**Judge**: Hon. Susan Illston<br>**Courtroom**: 1, 17th Floor |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 2

PRELIMINARY STATEMENT ................................................................................ 2

PRELIMINARY APPROVAL AND THE NOTICE PROGRAM ........................... 4

ARGUMENT .............................................................................................................. 5

I.       THE SETTLEMENT WARRANTS FINAL APPROVAL ................................. 5

     A.      Standards Governing Approval of Class Action Settlements ................................ 5

     B.      Rule 23(e)(2)(A): The Class Has Been Adequately Represented ........................ 7

     C.      Rule 23(e)(2)(B): The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel ........................................... 9

     D.      Rule 23(e)(2)(C): The Relief Provided by the Settlement Is Adequate .............. 11

         1.      Rule 23(e)(2)(C)(i): Risks of Continued Litigation ................................. 12

         2.      Rule 23(e)(2)(C)(ii): Effective Process for Distributing Relief to the Class ........................................................................ 16

         3.      Rule 23(2)(C)(iii): Anticipated Legal Fees and Expenses ...................... 17

     E.      Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One Another ........................................................................ 17

II.      THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ......................... 18

III.     THE NOTICE PROGRAM AND REACTION OF THE CLASS TO DATE ............... 19

CONCLUSION ......................................................................................................... 21

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aqua Metals, Inc. Sec. Litig.*,
   2022 WL 612804 (N.D. Cal. Mar. 3, 2022)......................................................... 14

*In re Banc of Cal. Sec. Litig.*,
   2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ....................................................... 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................ 9

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) .............................................................................. 5

*In re Celera Corp. Sec. Litig.*,
   2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) .................................................... 14

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)................................................... 8, 10

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ....................................................................... 7, 11, 20

*Ciuffitelli v. Deloitte & Touche LLP*,
   2019 WL 1441634 (D. Or. Mar. 19, 2019)......................................................... 18

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................................ 18

*Destefano v. Zynga Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................................. 11, 20

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019)................................................... 9, 12

*Garner v. State Farm Mut. Auto Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..................................................... 5

*In re Google Location History Litig.*,
   2024 WL 1975462 (N.D. Cal. May 3, 2024) ...................................................... 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................................... 7, 9, 11

*Hunt v. Bloom Energy Corp.*,
   2024 WL 1995840 (N.D. Cal. May 6, 2024) ...................................................... 19

Class Representatives' Motion for Final Approval of Proposed Class Action Settlement and
Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-cv-02990-SI

ii

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ......................................................................... 15

*In re Lyft Inc. Sec. Litig.*,
   2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ......................................................... 10

*Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................... 9

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ....................................................... 10

*Nguyen v. Radient Pharms. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) .......................................................... 14

*In re NVIDIA Corp. Derivative Litig.*,
   2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................................................ 9

*Officers for Justice v. Civil Serv. Comm'r*,
   688 F.2d 615 (9th Cir. 1982) ................................................................................. 5

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... 14, 15

*In re Portal Software, Inc. Sec. Litig.*,
   2007 WL 1991529 (N.D. Cal. June 30, 2007) ...................................................... 10

*Redwen v. Sino Clean Energy, Inc.*,
   2013 WL 12303367 (C.D. Cal. July 9, 2013) ....................................................... 18

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...................................................... 10

*In re Splunk Inc. Sec. Litig.*,
   2024 WL 923777 (N.D. Cal. Mar. 4, 2024) .......................................................... 12

*In re Stable Road Acquisition Corp.*,
   2014 WL 3643393 (N.D. Cal. Apr. 23, 2024) ........................................................ 7

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................................... 5

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................................. 15

*Vataj v. Johnson*,
   2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .................................................. 15, 18

*In re Zynga Inc. Sec. Litig.*
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................................................ 7

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

iii

**Statutes**

15 U.S.C. §77z-1(a)(7)................................................................................................20

15 U.S.C. § 78u-4(a)(4) ..............................................................................................17

15 U.S.C. § 78u-4(e) ...................................................................................................19

**Rules**

Fed. R. Civ. P.  23 ............................................................................................*passim*

Fed. R. Civ. P. 23(c)(1) ..............................................................................................15

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................................20

Fed. R. Civ. P. 23(e)(1)(B) .........................................................................................19

Fed. R. Civ. P. 23(e)(2) .........................................................................................1, 6, 7

Fed. R. Civ. P. 23(e)(2)(A) ......................................................................................7, 9

Fed. R. Civ. P.  23(e)(2)(B) ..........................................................................................9

Fed. R. Civ. P. 23(e)(2)(C) .........................................................................................11

Fed. R. Civ. P. 23(e)(2)(C)(i) .....................................................................................12

Fed. R. Civ. P. 23(e)(2)(C)(ii) ....................................................................................16

Fed. R. Civ. P.  23(e)(2)(C)(iii) ..................................................................................17

Fed. R. Civ. P.  23(e)(2)(C)(iv) .....................................................................................6

Fed. R. Civ. P.  23(e)(2)(D) ...................................................................................17, 18

Class Representatives' Motion for Final Approval of Proposed Class Action Settlement and
Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-cv-02990-SI

iv

## NOTICE OF MOTION

PLEASE TAKE NOTICE that Nebraska Investment Council ("NIC" or "Lead Plaintiff") and North Carolina Retirement Systems ("NCRS" and together with NIC, "Plaintiffs" or "Class Representatives"), on behalf of themselves and the other members of the certified Class, hereby move this Court for orders, pursuant to Federal Rule of Civil Procedure 23(e)(2): (i) granting final approval of the proposed Settlement of the above-captioned certified class action (the "Action"), as set forth in the Stipulation and Agreement of Settlement, dated June 11, 2024 (the "Stipulation," ECF No. 119-2); and (ii) approving the proposed plan for allocating the proceeds of the Settlement to the Class ("Plan of Allocation").[1]

The Motion is supported by the following memorandum of points and authorities, and the accompanying Declaration of Michael P. Canty in Support of (I) Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses, dated October 3, 2024 ("Canty Declaration" or "Canty Decl."), with annexed exhibits.

Pursuant to the Court's Preliminary Approval Order (ECF No. 124), any objections to the Settlement and/or the Plan of Allocation must be filed by October 18, 2024. A proposed Judgment, negotiated by the Parties, and a proposed order approving the Plan of Allocation, will be submitted with Class Representatives' reply submission on or before November 1, 2024, after the deadline for objecting to the Settlement or seeking exclusion has passed.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should approve the proposed Settlement of the Action as fair, reasonable, and adequate pursuant to Rule 23(e)(2).

2.      Whether the Court should approve the proposed Plan of Allocation as fair and reasonable.

---

[1] The terms of the Settlement are set forth in the Stipulation. All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein. Unless otherwise noted, citations and internal quotations have been omitted.

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

3      Class Representatives respectfully submit this memorandum, on behalf of themselves and

4   the certified Class, in support of final approval of the proposed Settlement in the amount of $60

5   million, in cash, pursuant to the terms set forth in the Stipulation. The Settlement is with all

6   defendants in the Action: Okta, Inc. ("Okta" or the "Company), and Todd McKinnon, Brett Tighe,

7   and Frederic Kerrest (collectively, the "Individual Defendants" and, with Okta, the

8   "Defendants").

9      As described below and in the accompanying Canty Declaration, the Settlement is an

10  excellent result for the Class. The $60 million Settlement is four times greater than the median

11  recovery in securities class actions in 2023, and it represents a prompt and tangible recovery for

12  the Class without the considerable risk, expense, and delay of further litigation.

13     The Settlement was reached after two years of vigorously contested litigation in which all

14  Parties strongly advanced their positions. During the course of the litigation, Class

15  Representatives, among other things: (i) conducted an extensive investigation of the claims at

16  issue, including interviews with approximately 19 former Okta employees (nine of whom

17  provided information for use in the Amended Class Action Complaint for Violations of the

18  Federal Securities Laws (the "Complaint")); (ii) prepared and filed a detailed Complaint, which

19  expanded the scope of the initial complaint by adding particularized allegations supporting claims

20  that Defendants misled investors about the Auth0 integration; (iii) opposed Defendants' wide

21  ranging motion to dismiss the Complaint through briefing and oral argument; (iv) moved for and

22  obtained class certification; (v) researched, drafted, and propounded discovery requests on

23  Defendants; (vi) reviewed nearly 4,000 documents in connection with the mediation process; (vii)

24  prepared for and participated in a formal mediation process, including drafting and analyzing

25  extensive mediation statements; and (viii) consulted with experts in the fields of damages and loss

26

27

28

Class Representatives' Motion for Final Approval of Proposed Class Action Settlement and
Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-cv-02990-SI                                                                          2

causation. *See* Canty Declaration, filed herewith.[2] As a result of these efforts, Class Representatives and Class Counsel had a well-developed understanding of the strengths and weaknesses of the claims at issue in the Action. Class Representatives litigated the Action with the utmost persistence and tenacity and were prepared to litigate their claims to trial.

While Class Representatives believe the Class's claims are meritorious and strong, they recognize there were substantial challenges in connection with continued litigation and trial. As discussed in detail in the Canty Declaration and below, among other things, Defendants would likely argue in future dispositive motions and at trial that Class Representatives could not establish falsity because there was not a last minute change in plans for the Auth0 integration, as alleged in the Complaint, and Okta provided  some training and resources after the integration of the Okta and Auth0 salesforces, undercutting the alleged falsity of the remaining alleged misstatements. Defendants would also likely argue that Class Representatives could not establish scienter because any integration problems did not begin to impact the Company's performance until after the final alleged misstatements in June 2022 and Defendants believed that any integration issues that existed prior to that were nothing more than the expected setbacks that come along with any large merger. Moreover, Class Representatives faced significant challenges and uncertainty with respect to proving loss causation and damages, as at least one market analyst downgraded the stock based on concerns around integration problems before the alleged corrective disclosure.

The Settlement avoids these risks (and others), as well as further delay and expense of continued litigation – while providing a substantial and certain benefit to the Class. Furthermore, Class Representatives were actively involved throughout the litigation, diligently representing the Class, and have approved the Settlement. *See* Declaration of Christopher R. Heinrich on behalf

---

[2] The Canty Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the litigation efforts; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation, among other things. Citations to "¶" in this memorandum refer to paragraphs in the Canty Declaration.

All exhibits herein are annexed to the Canty Declaration.  For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Canty Declaration and the second reference is to the exhibit designation within the exhibit itself.

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

3

1   of Nebraska Investment Council, Ex. 1; and Declaration of Benjamin Garner on Behalf of North

2   Carolina Retirement Systems, Ex. 2. The Class's reaction to date similarly reflects approval of

3   the Settlement. Notice was provided to the Class beginning on August 2, 2024. *See* Declaration

4   of Morgan Kimball Regarding Notice Mailing, dated October 2, 2024 ("Mailing Decl."), Ex. 4.

5   While the October 18, 2024 deadline to object to the Settlement has not yet passed, to date, no

6   objections or requests for exclusion from the Class have been received by the Claims

7   Administrator or Class Counsel or docketed. For all the following reasons, Class Representatives

8   respectfully request that the Court approve the Settlement.

9          In addition, the Plan of Allocation for the distribution of the proceeds of the Settlement,

10  which was developed by Class Counsel with the assistance of Class Representatives' damages

11  expert, is a fair and reasonable method for distributing the Net Settlement Fund to eligible

12  claimants and should also be approved by the Court.

13         Given the foregoing considerations and the factors addressed below, Class

14  Representatives submit that: (i) the Settlement meets the standards for final approval under Rule

15  23 and is a fair, reasonable, and adequate result for the Class; and (ii) the Plan of Allocation is a

16  fair and reasonable method for allocating the Net Settlement Fund to Class Members who submit

17  valid Claim Forms.

18                 **PRELIMINARY APPROVAL AND THE NOTICE PROGRAM**

19         On July 19, 2024, the Court entered an order preliminarily approving the Settlement and

20  approving the proposed forms and methods of providing notice to the Class (the "Preliminary

21  Approval Order", ECF No. 124). Pursuant to and in compliance with the Preliminary Approval

22  Order, beginning on August 2, 2024, the Court-appointed Claims Administrator Epiq Class

23  Action and Claims Solutions ("Epiq") caused, among other things, the Notice and Claim Form

24  (together, the "Notice Packet") to be mailed by first-class mail to potential Class Members who

25  could be identified and to the banks, brokerage firms, institutions, and other third-party nominees

26  ("Nominees") listed in Epiq's proprietary Nominee database. *See* Mailing Decl., Ex. 4 at ¶¶5-13.

27  A total of 61,665 Notice Packets have been mailed as of October 2, 2024. *Id*. at ¶12.

28

Class Representatives' Motion for Final Approval of Proposed Class Action Settlement and
Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-cv-02990-SI                                                                    4

On August 13, 2024, the Summary Notice was published in *The Wall Street Journal* and was disseminated over the internet using *PR Newswire*. *Id*. at ¶14 and Exhibit B attached thereto; ¶¶12, 78, 80. The Notice and Claim Form, as well as other Settlement-related documents, were also posted, for review and easy downloading, on the website established by Epiq for purposes of this Settlement, as well as Labaton's website. Ex. 4 at ¶¶16-17; ¶¶12, 78, 81.

The Notice described, *inter alia*, the claims asserted in the Action, the contentions of the Parties, the course of the litigation, the terms of the Settlement, the maximum amounts that would be sought in attorneys' fees and expenses, the Plan of Allocation, the right to object to the Settlement, and the right to seek to be excluded from the Class. *See generally* Ex. 4-A. The Notice also gave the deadlines for objecting, seeking exclusion from the Class, submitting claims, and advised potential Class Members of the scheduled Settlement Hearing before this Court. *Id*.

To date, the Class's reaction to the proposed Settlement has been positive. While the deadline for requesting exclusion or objecting to the Settlement has not yet passed, to date there have been no objections to the proposed Settlement, no objections to the Plan of Allocation, and no requests for exclusion.[3]

## ARGUMENT

## I.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.   Standards Governing Approval of Class Action Settlements

The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc*., 951 F.3d 1106, 1121 (9th Cir. 2020); *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008). It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'r*, 688 F.2d 615, 625 (9th Cir. 1982). Settlements of complex cases, such as this one, greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims. *See, e.g., Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010)

---

[3] Should any objections be received, Class Representatives will address them in their reply papers, which are due to be filed with the Court on November 1, 2024.

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

5

("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain and substantial recovery for the Plaintiff class.").

Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate" after considering whether:

> (A)    the class representatives and class counsel have adequately represented the class;
> (B)    the proposal was negotiated at arm's length;
> (C)    the relief provided for the class is adequate, taking into account:
>> (i)    the costs, risks, and delay of trial and appeal;
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)    any agreement required to be identified under Rule 23(e)(3)[4]; and
> (D)    the proposal treats class members equitably relative to each other.

Rule 23, as amended in December 2018, has not changed the established overall standard for approving a proposed class settlement, *i.e.*, evaluating whether it is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2).

In considering final approval, the Court may also consider the Ninth Circuit's long-standing approval factors, many of which overlap with the Rule 23 considerations:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of

---

[4] Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the parties in connection with a proposed settlement. Here, in addition to the Stipulation, on April 29, 2024 the Parties executed a settlement term sheet and, on May 28, 2024, they entered into a Confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement"). The Supplemental Agreement sets forth the conditions under which Okta has the option to terminate the Settlement in the event that requests for exclusion from the Class reach a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is kept confidential to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The term sheet, Stipulation, and the Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-cv-02990-SI

6

the class members of the proposed settlement.[5]

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also In re Zynga Inc. Sec. Litig.* 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015). The Advisory Committee Notes to the 2018 amendments to Rule 23 explain that the four Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 Advisory Committee Notes to 2018 Amendments, Subdivision (e)(2).

All of these factors, whether in Rule 23 or Ninth Circuit jurisprudence, favor approval of the Settlement.

## B.      Rule 23(e)(2)(A): The Class Has Been Adequately Represented

In determining whether to approve a class action settlement, courts consider whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon* 150 F.3d at 1027.

Class Representatives claims are based on the same common course of alleged wrongdoing by Defendants, are typical of all other Class Members, and Class Representatives have no interests antagonistic to the Class. *See In re Stable Road Acquisition Corp.*, 2014 WL 3643393, at *6 (N.D. Cal. Apr. 23, 2024) (finding lead plaintiff adequately represented the class where lead plaintiff's claims are typical of and coextensive with the claims of the settlement class with no antagonistic interests). Indeed, in granting class certification and appointing NIC and NCRS as Class Representatives along with their choice of Lead Counsel, the Court recognized NIC and NCRS as adequate to serve as Class Representatives, and Lead Counsel fit to serve as Class Counsel. *See* ECF No. 105.

---

[5] There has been no governmental participant in the Action or in any related litigation.

Since their appointment, Class Representatives and Class Counsel have adequately represented the Class in both their vigorous prosecution of the Action and in their negotiation of the Settlement. Class Representatives and Class Counsel developed a deep understanding of the facts of the case and merits of the claims by, *inter alia*: (i) conducted an extensive investigation of the claims at issue, including interviews with approximately 19 former Okta employees (nine of whom provided information for use in the Complaint); (ii) prepared and filed a detailed Complaint, which expanded the scope of the initial complaint by adding particularized allegations supporting claims that Defendants misled investors about the Auth0 integration; (iii) opposed Defendants' wide ranging motion to dismiss the Complaint through briefing and oral argument; (iv) moved for and obtained class certification; (v) researched, drafted, and propounded discovery requests on Defendants; (vi) reviewed nearly 4,000 documents in connection with the mediation process; (vii) prepared for and participated in a formal mediation process, including drafting and analyzing extensive mediation statements; and (viii) consulted with experts in the fields of damages and loss causation. *See generally* Canty Decl. at §§III.-V.

Class Representatives regularly communicated with Class Counsel and reviewed material filings in the case, such as the Complaint, the briefing on Defendants' motion to dismiss, and the motion for class certification, and responded to discovery requests, including searching for and producing potentially relevant information. *See* Exs. 1 and 2. Furthermore, Class Representatives played active roles in the settlement discussions through counsel and with a representative for NIC and NCRS attending the mediation session on March 25, 2024. With an informed understanding, Class Representatives agreed to the Settlement.

Likewise, Class Counsel, which is highly experienced in prosecuting and trying complex class actions, had a clear view of the strengths and risks of the case and was equipped to make an informed decision regarding the reasonableness of a potential settlement. *See Cheng Jiangchen v. Rentech, Inc.,* 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where counsel "has significant experience in securities class action lawsuits"). Over the course of the litigation, Class Counsel, with the assistance of Plaintiffs' Counsel, developed a thorough

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

8

understanding of the facts of the case and the merits of the claims. *See generally* Canty Decl. at §§III.-V. Class Counsel is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 5-D) and was able to successfully conduct the litigation against skilled opposing counsel from Gibson, Dunn & Crutcher LLP. Accordingly, the Class has been, and remains, well represented.

Through their efforts on behalf of the Class, Class Counsel and Class Representatives have concluded that the proposed Settlement is fair, reasonable, and adequate. As the Ninth Circuit observed in *Rodriguez v. West Publishing Corporation,* Class Counsel's informed opinion supports approval as "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. *Rodriguez*, 563 F.3d 948, 965 (9th Cir. 2009); *see also In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."); *Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'[g]reat weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Accordingly, it is respectfully submitted that this factor supports approval of the Settlement.

## C.     Rule 23(e)(2)(B): The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." This consideration (and Rule 23(e)(2)(A) discussed above) "overlaps with certain *Hanlon* factors, such as the non-collusive nature[6] of negotiations, the extent of discovery completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019).

Courts have long recognized an initial presumption that a proposed settlement is fair and

---

[6] The Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947(9th Cir. 2011), such as a "clear-sailing" fee agreement or a provision that would allow settlement proceeds to revert to Defendants. *See* Stipulation at ¶11 (the Settlement is not a claims-made settlement and there is no reversion), ¶12.

reasonable when it is the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (noting that courts afford "a presumption of fairness and reasonableness" to settlements that were "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"); *cf Jiangchen*, 2019 WL 5173771, at *6 (finding that the settlement was the product of "serious, informed, non-collusive negotiations performed at arms-length" where it involved a mediator and vigorousness litigation).

Courts have also reasoned that "one important factor [to consider] is that the parties reached the settlement . . . with a third-party mediator." *In re Banc of Cal. Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *see also Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (finding "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

As detailed in the Canty Declaration, the Settlement was achieved only through a formal mediation process, under the auspices of David M. Murphy of Phillips ADR (the "Mediator"), which included the exchange of robust mediation materials and additional negotiations with the assistance of the Mediator.[7] During the mediation session, Defendants, represented by a well-regarded law firm with deep expertise in defense of securities class actions, vigorously asserted arguments against liability and damages. With Class Representatives and the Defendants still meaningfully apart in their respective settlement positions after the March 25, 2024 mediation, they agreed to continue negotiations through the Mediator. On April 10, 2024, after several separate one-on-one discussions between the Mediator and counsel for Class Representatives, on the one hand, and counsel for Defendants, on the other hand, the Mediator issued a $60 million mediator's proposal to resolve all claims subject to the negotiation of non-financial terms for the Settlement and Court approval, which Class Representatives and Defendants accepted on April 16, 2024. ¶¶54-57. These negotiations were at all times adversarial and at arm's-length, and have produced a result that is in the best interests of the Class.

---

[7] *In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *10 (N.D. Cal. Aug. 7, 2023) (approving settlement and noting Mr. Murphy's involvement as a third-party neutral).

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

10

Furthermore, Class Representatives and Class Counsel had a comprehensive understanding of the strengths and weaknesses of the case before reaching the proposed Settlement. As noted above and in detail in the Canty Declaration (*see* §§III.-V.), the Parties were in a strong position to understand the merits of Class Representatives' claims and Defendants' defenses, and had sufficient information to evaluate the case and the benefits of the Settlement. *See Destefano v. Zynga Inc.,* 2016 WL 537946, at *12 (N.D. Cal. Feb. 11, 2016) (noting that the extent of discovery completed and stage of proceedings supports final approval of settlement where plaintiffs engaged in a pre-filing investigation, opposed defendants' motions to dismiss, worked with consultants, propounded and responded to some discovery, and prepared and participated in mediation session).

Accordingly, it is respectfully submitted that this factor supports approval of the Settlement.

### D.       Rule 23(e)(2)(C): The Relief Provided by the Settlement Is Adequate

In determining whether a class-action settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate," taking into account several factors. Fed. R. Civ. P. 23(e)(2)(C). This factor overlaps with the Ninth Circuit factors that consider "the strength of the plaintiffs' case," the "amount offered in the settlement," and "the risk, expense, complexity, and likely duration of further litigation" and the risk of maintaining class action status." *Churchill*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026.

Here, the $60 million Settlement Amount presents an outstanding recovery for the Class. As noted below and in the Canty Declaration, the Settlement recovers at least 5.8% of the maximum $1.036 billion in damages estimated by Class Representatives' damages expert, and it recovers 10% of the lower bound of estimated recoverable damages ($600 million), which are very favorable percentages of recovery. ¶¶9, 76, 93.

While Class Representatives believe that the case against Defendants is strong, that confidence must be tempered by the fact that the Settlement is certain and that every case involves significant risk of no recovery, particularly in a complex securities case such as this one.

Class Representatives' Motion for Final Approval of Proposed Class Action Settlement and Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-cv-02990-SI

11

### 1. Rule 23(e)(2)(C)(i): Risks of Continued Litigation

"It is well-recognized that securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win." *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019). Here, the "[d]ifficulties and risks in litigating weigh in favor of approving [the] class action settlement." *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *5 (N.D. Cal. Mar. 4, 2024). Class Representatives and Class Counsel recognize the significant challenges and risks they would face moving forward, as well as the expense and length of continued litigation through summary judgment motions, trial, and likely appeals. As set forth below, the benefits conferred on the Class by the $60 million Settlement far outweigh the costs, risks, and delay of further litigation, and confirm the adequacy of and reasonableness of the Settlement.

**Falsity**. With respect to Class Representatives' allegations of false and misleading statements during Okta's earnings calls on March 2, 2022 and June 2, 2022, Defendants would have likely argued that discovery showed the alleged misstatements on those dates were not actionably false or misleading. Specifically, Defendants would have likely argued that Plaintiffs would not be able to prove the theory of fraud credited by the Court in its Order denying, in part, Defendants' motion to dismiss. ¶67.

For example, the Court's determination that the statements from the March 2, 2022 and June 2, 2022 earnings call were actionable relied, in large part, on the Complaint's allegation that Okta scrapped its initial integration plan—which involved keeping Auth0 employees as specialists selling Auth0 products exclusively for one year—at the last minute in favor of a new plan where all salespeople would be generalists expected to sell both Okta and Auth0 products. *See* ECF No. 72 at 19-20. Moreover, in finding that falsity was sufficiently alleged, the Court also relied on the Complaint's allegation that Okta did not provide training to these salespeople, which allegedly harmed the Company's sales since the salespeople did not have knowledge of how to effectively sell the products. ¶68.

However, Defendants would likely seek to proffer evidence that Okta's decision to change

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

12

its integration plan happened earlier than alleged in the Complaint, and thus, was not a last-minute shift in integration plans. Moreover, Defendants would also likely seek to introduce evidence suggesting that Okta provided training opportunities and resources prior to and after the integration of the sales teams. ¶68. Defendants would therefore likely argue that Class Representatives could not prove that Defendants concealed any material negative information about Okta's integration plan or the training provided to its combined sales force, presenting a real risk to establishing the theory of fraud that the Court credited in upholding the alleged misstatements on March 2, 2022 and June 2, 2022. ¶69.

**Scienter**. Defendants would undoubtedly continue to argue that Class Representatives could not establish that the alleged misstatements were made with the requisite intent. Defendants would likely seek to introduce evidence showing that, despite some challenges, the attrition and sales integration problems did not begin to impact the Company's financial performance until after the June 2022 statements and that any integration challenges faced by the Company before then were therefore routine. Defendants likely would have argued that, at best, Defendants had knowledge that Okta was going through some expected integration challenges that would come along with any major acquisition, and that such challenges did not raise to the level of severity requiring disclosure because, at that time, the integration issues had yet to have any impact on the Company's financial results or projections. ¶¶70-72.

Moreover, Defendants would likely attempt to inform the trier of fact that any integration challenges did not impact the Company's performance until after the June 2022 misstatements and, as a result, Defendants had no duty to disclose routine integration challenges before that. Defendants would have thus argued their general statements that the integration was going well—qualified with other statements that there was still work to do—were not made with any fraudulent intent to mislead investors at the time the statements were made. ¶73.

**Loss Causation and Damages**: While the Class Representatives' damages expert estimated that maximum damages were approximately $1.036 billion after netting out Class Member gains on pre-Class Period purchases, Defendants and their experts would have made

1   several arguments that any recoverable damages should be much lower. If some of these

2   arguments were successful, recoverable damages could be approximately $600 million, if not

3   much lower or potentially zero. ¶¶74-77.

4         For instance, at least one analyst downgraded the Company's stock prior to the August

5   31, 2022 corrective disclosure based on, among other things, "increasing concerns around

6   increased sales turnover & Auth0/Okta sales integration issues." Accordingly, there was a risk

7   that Defendants could have successfully argued that the August 31, 2022 alleged disclosure (the

8   only allegedly corrective disclosure remaining in the case) was not corrective because the market

9   had already priced in at least some risk about employee attrition and sales integration challenges

10  before then. At minimum, Class Representatives' damages expert would have been required to

11  reliably account for this information, which could have significantly reduced the total amount of

12  recoverable damages. ¶75.

13        Furthermore, issues relating to damages would likely have come down to an unpredictable

14  and hotly disputed "battle of the experts." The uncertainty as to which side's expert's view might

15  be credited by the jury presents a substantial litigation risk in securities actions. *See, e.g., In re*

16  *Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (finding that risks

17  related to the "battle of experts" weighed in favor of settlement approval); *Nguyen v. Radient*

18  *Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in

19  securities case where "[p]roving and calculating damages required a complex analysis, requiring

20  the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he

21  outcome of that analysis is inherently difficult to predict and risky").

22        In contrast, the Settlement recovers at least 5.8% of the potential $1.036 billion in damages

23  and recovers 10% of the likely lower bound of estimated recoverable damages ($600 million).

24  ¶93. Courts regularly approve settlements with comparable or lower percentage recoveries than

25  obtained here. *See, e.g.*, *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal.

26  Mar. 3, 2022) (approving settlement that recovers approximately 7.3% of likely recoverable

27  damages); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding

28

Class Representatives' Motion for Final Approval of Proposed Class Action Settlement and Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-cv-02990-SI

14

settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5,  2021) (approving $10 million settlement that recovered approximately 2% of total estimated damages, as it was "consistent with the 2–3% average recovery that the parties identified in other securities class action settlements").

Moreover, the $60 million recovery is four times greater than the median recovery of $15 million in securities class action cases in 2023. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research 2024), Ex. 3 at 1. Similarly, the Settlement recovers a greater percentage of estimated damages than median settlements in similarly sized cases. According to Cornerstone Research, for cases with total estimated damages (based on Cornerstone's methodology) of more than $1 billion, median settlements in 2023 recovered 2.0% of total estimated damages, and from 2014 to 2022, median settlements recovered 2.6% of damages. *Id.* at 6.

Lastly, the Settlement represents a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of completing fact and expert discovery, summary judgment, trial, and post-trial litigation. *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ("the cost, complexity and time of fully litigating the case all suggest that this settlement was fair"); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). At each of these stages, there would be significant risks attendant to the Action's continued prosecution, and there was no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

**Risks of Maintaining Class Certification.** Although the Court certified a litigation class on February 5, 2024, Defendants could move to decertify the class. Rule 23 (c)(1) provides that a class certification order may be altered or amended at any time before a decision on the merits, which is an "inescapable and weighty risk that weighs in favor of a settlement." *In re Google Location History Litig.*, 2024 WL 1975462, at *6 (N.D. Cal. May 3, 2024).

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

15

Accordingly, in light of all the substantial risks and expense of continued litigation and compared to the certain and prompt recovery of $60 million, the Settlement is an excellent result.

### 2. Rule 23(e)(2)(C)(ii): Effective Process for Distributing Relief to the Class

Rule 23(e)(2)(C)(ii) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

Here, the proceeds of the Settlement will be distributed with the assistance of an experienced claims administrator, Epiq Class Action and Claims Solutions ("Epiq"). The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Specifically, a Claimant will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Ex. 4-A. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* ¶¶84-89; Ex. 4-A at pages 9-12. Class Representatives' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *See* Stipulation at ¶28(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court. *Id.*

After the Settlement reaches its Effective Date (Stipulation at ¶37) and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds after the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. *See* Stipulation at ¶25; Ex. 4-A at ¶68. Thereafter, Class Representatives recommend that the balance that remains in the Net Settlement Fund, after payment of any outstanding Notice and Administration Expenses and Taxes, be donated to Consumer Federation of America ("CFA"), a non-profit, non-sectarian organization, or such other

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-cv-02990-SI

16

1  organization approved by the Court.[8] *Id.*

2  **3.      Rule 23(2)(C)(iii): Anticipated Legal Fees and Expenses**

3  Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorneys' fees,

4  including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in Class Counsel's

5  Motion for an Award of Attorneys' Fees and Payment of Expenses and Memorandum of Points

6  and Authorities in Support Thereof, submitted herewith, Class Counsel seek an award of

7  attorneys' fees of 22% of the Settlement Fund and Litigation Expenses of $280,272.17, with

8  accrued interest. Class Counsel's Fee Memorandum also includes a request by the Class

9  Representatives for $17,000 in connection with their representation of the Class, pursuant to the

10  PSLRA. Approval of the requested attorneys' fees is not part of any agreement with Defendants,

11  and the Settlement cannot be terminated based on any ruling on the fees or expenses.

12  **E.      Rule 23(e)(2)(D): Class Members Are Treated Equitably
          Relative to One Another**

13

14  The Settlement does not improperly grant preferential treatment to either Class

15  Representatives or any segment of the Class. Rather, all members of the Class that submit eligible

16  Claims, including Class Representatives, will receive a *pro rata* distribution from the Net

17  Settlement Fund pursuant to the Plan of Allocation approved by the Court, which is discussed

18  below.[9] *See generally* Ex. 4-A at ¶¶51-69; Canty Decl. at §VIII.

19

20

---

21  [8] CFA is an association of non-profit consumer organizations that was established in 1968 to

22  advance the consumer interest through research, advocacy, and education. *See generally* www.consumerfed.org. With respect to victims of financial fraud, CFA has an Investor Protection program that works nationwide to promote consumer-oriented policies that safeguard investors

23  against fraud through: (i) the development of educational material for investors; (ii) drafting policies and legislation; (iii) and providing testimony and comments on legislation and

24  regulations. See www.consumerfed.org/issues/investor-protection. CFA has been approved as a cy pres beneficiary in several securities settlements in California, including, *In re Intuitive*

25  *Surgical Sec. Litig.*, Case No. 5:13-cv-01920-EJD (N.D. Cal.); *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 12-cv-04677-YGR (N.D. Cal.); and *In re Broadcom Corp. Sec. Litig.*, No. 01-CV-

26  00275-MLR (C.D. Cal.).

27  [9] Class Representatives' request for reimbursement of their reasonable costs and expenses directly related to their participation in the Action, noted above, would not constitute preferential

28  treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of plaintiffs' costs explicitly contemplated by the PSLRA in addition to receiving their *pro rata* recovery).

---

## II.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

In addition to seeking final approval of the Settlement, Class Representatives also seek final approval of the proposed Plan of Allocation. The Plan of Allocation, drafted with the assistance of Class Representatives' damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Class Members equitably, as required by Rule 23(e)(2)(D). The standard for approval of a plan of allocation in a class action under Rule 23 of the Federal Rules of Civil Procedure is the same as the standard applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Vataj*, 2021 WL 1550478, at *10. An allocation formula need only have a "reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id*.

Each Authorized Claimant, including Class Representatives, will receive a distribution pursuant to the Plan, and Class Representatives will be subject to the same formula for distribution of the Settlement as other class members. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) ("[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a pro rata distribution based [sic] of the Settlement Fund based on their net losses"). "[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen v. Sino Clean Energy, Inc*., 2013 WL 12303367, at *8 (C.D. Cal. July 9, 2013).

Claimants' Recognized Loss Amounts per share will be calculated using the transactional information provided by Claimants in their Claim Forms. Authorized Claimants will recover their proportional "*pro rata*" amount of the Net Settlement Fund based on the sum of their Recognized Loss Amounts per share, *i.e.*, their total Recognized Claims. *See* Ex. 4-A at ¶¶52, 60-61.

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

18

Here, the objective of the Plan of Allocation is to distribute the Net Settlement Fund equitably among those Class Members who suffered economic losses as a result of the alleged violations of the federal securities law with respect to shares of Okta Class A common stock purchased or otherwise acquired during the Class Period. The Plan provides for the calculation of a "Recognized Loss Amount" for each properly documented purchase or acquisition of Okta Class A common stock during the Class Period. A Claimant's total Recognized Claim will depend on, among other things, when their shares were purchased and/or sold during the Class Period in relation to the disclosure date alleged in the Action, whether the shares were held through or sold during the PSLRA's 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of the shares when they were sold or held. *See* Ex. 4-A at ¶¶51-69; *see also* Canty Decl. at §VIII. In developing the Plan of Allocation, Class Representatives' consulting damages expert considered the amount of artificial inflation allegedly present in Okta Class A common stock during the Class Period that was purportedly caused by the alleged fraud. ¶85.

The Plan of Allocation was fully described in the Notice and, to date, there has been no objection to the proposed plan. *See* Ex. 4-A at ¶¶51-69. It is respectfully submitted that the proposed Plan of Allocation will result in a fair distribution of the available proceeds among Class Members who submit valid claims.

## III.     THE NOTICE PROGRAM AND REACTION OF THE CLASS TO DATE

Notice of a class action settlement must be directed "in a reasonable manner to all class members who would be bound" by the Settlement. Fed. R. Civ. P. 23(e)(1)(B). In granting preliminary approval of the Settlement, the Court approved Class Representatives' proposed notice plan. *See* ECF No. 124. The notice program's combination of individually mailed Notice to all Class Members who could be identified with reasonable effort, supplemented by the Summary Notice in a widely circulated publication, transmission over a business newswire, and publication on internet websites, satisfied all requirements of Rule 23, due process, the PSLRA, and the Northern District's Guidance. *See, e.g., Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *4 (N.D. Cal. May 6, 2024) (approving similar notice program that included mailing notices to

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

19

potential class members and nominees followed by publication notice and posting notice on a settlement website); *Zynga*, 2016 WL 537946, at *7 (similar notice program constituted "the best form of notice available under the circumstances").

As detailed in the accompanying Mailing Declaration of the Claims Administrator, as of October 2, 2025 a total of 61,665 copies of the Notice Packet have been mailed to potential Class Members, brokers, and nominees. *See* Ex. 4 at ¶¶5-13. 276 Notice Packets were returned as undeliverable, of which, to date, 66 have been remailed. *Id*. at ¶¶10-11. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on August 13, 2024. *Id*. at ¶14. The Claims Administrator also maintained a dedicated settlement website, www.OktaSecuritiesLitigation.com, to provide potential Class Members with information concerning the case, the Settlement, and access to copies of the Notice, Claim Form, Stipulation, Preliminary Approval Order, and other case-related documents. *Id*. at ¶¶16-17. Claim Forms can be submitted to the Claims Administrator by mail or using the Settlement website. As of October 2, 2024, 507 Claim Forms have been received, however most claims are submitted closer to the deadline. Updated information will be submitted to the Court with Class Representatives' reply papers. *See* Ex. 4 at ¶¶24-25.

Notice of a class action settlement "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill*, 361 F.3d at 575. The contents of the notices here provided the necessary information for Class Members to make an informed decision regarding the Settlement and contained all of the information required by Rule 23(c)(2)(B); the PSLRA, 15 U.S.C. §77z-1(a)(7); and Northern District's Guidance. The notices collectively informed Class Members of, among other things, (1) the nature of the Action and the claims asserted; (2) the definition of the Class; (3) the amount of the Settlement; (4) the Plan of Allocation; (5) the reasons why the Parties are proposing the Settlement; (6) the estimated average recovery per affected share; (7) the maximum amount of attorneys' fees and expenses that will be sought; (8) the identity and contact information for the representatives of Class Counsel; (9) Class Members' right to object to the

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

20

1   Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses as well as the right

2   to request exclusion; (10) the binding effect of a judgment on Class Members; and (11) the dates

3   and deadlines for Settlement-related events.

4   While the objection and exclusion deadline – October 18, 2024 – has not yet passed, to

5   date, no objections have been received by Class Counsel or docketed by the Court and no requests

6   for exclusion have been received. *See* Ex. 4 at ¶22. The reaction to date supports approval of the

7   Settlement and the proposed Plan of Allocation. Class Representatives will address any

8   objections, if any, in their reply submission.

9   **CONCLUSION**

10   For all the foregoing reasons, Class Representatives respectfully request that the Court

11   grant final approval to the proposed Settlement and approve the Plan of Allocation for the

12   distribution of the Net Settlement Fund. Proposed orders will be submitted with Class

13   Representatives' reply papers, after the deadline for seeking exclusion and objecting has passed.

14   Dated: October 3, 2024                    **LABATON KELLER SUCHAROW LLP**

15

16                                    By:    /s/ *Michael P. Canty*
                                            Michael P. Canty (*pro hac vice*)
17                                          James T. Christie (*pro hac vice*)
                                            Nicholas D. Manningham (*pro hac vice*)
18                                          140 Broadway
                                            New York, NY 10005
19                                          Telephone: (212) 907-0700
                                            mcanty@labaton.com
20                                          jchristie@labaton.com
                                            nmanningham@labaton.com
21

22                                          *Attorneys for Plaintiffs and the Class*

23                                          **ADAMSKI MOROSKI MADDEN**
                                            **CUMBERLAND & GREEN LLP**
24                                          James M. Wagstaffe (#95535)
                                            Mailing Address:  P.O. Box 3835
25                                          San Luis Obispo, CA 93403-3835
                                            Physical Address:  6633 Bay Laurel Place
26                                          Avila Beach, CA 93424
                                            Telephone: (805) 543-0990
27

28                                          *Liaison Counsel for Plaintiffs and the Class*

Class Representatives' Motion for Final Approval of Proposed Class Action Settlement and      21
Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-cv-02990-SI

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on October 3, 2024, I authorized the electronic filing of the foregoing

3 with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

4 to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all

5 registered participants only.

6        I certify under penalty of perjury under the laws of the United States of America that the

7 foregoing is true and correct.

8        Executed on October 3, 2024

9

10                     /s/ *Michael P. Canty*

11                     MICHAEL P. CANTY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28