**LABATON KELLER SUCHAROW LLP**
MICHAEL P. CANTY (*pro hac vice*)
  mcanty@labaton.com
JAMES T. CHRISTIE (*pro hac vice*)
  jchristie@labaton.com
NICHOLAS MANNINGHAM (*pro hac vice*)
  nmanningham@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700

**ADAMSKI MOROSKI MADDEN**
**CUMBERLAND & GREEN LLP**
JAMES M. WAGSTAFFE, SBN 95535
  wagstaffe@wvbrlaw.com
Mailing Address:  Post Office Box 3835
San Luis Obispo, CA 93403-3835
Physical Address:  6633 Bay Laurel Place
Avila Beach, CA 93424
Telephone: (805) 543-0990

*Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OKTA, INC. SECURITIES LITIGATION | CASE NO. 3:22-cv-02990-SI |
| | **CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | **Date**:  Nov. 8, 2024<br>**Time**:  10:00 a.m.<br>**Judge**: Hon. Susan Illston<br>**Courtroom**: 1, 17th Floor |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION.................................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

PRELIMINARY STATEMENT ................................................................................... 2

ARGUMENT ................................................................................................................ 3

I.   CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 22% OF THE
     COMMON FUND SHOULD BE APPROVED................................................... 3

     A.   Class Counsel Is Entitled to an Award of Attorneys' Fees from the
          Common Fund ........................................................................................... 3

     B.   A Reasonable Percentage of the Fund Recovered Is the Appropriate
          Method for Awarding Attorneys' Fees in Common Fund Cases ............ 4

     C.   The Requested Attorneys' Fees of 22% of the Settlement Fund Is Lower
          than Comparable Fees .............................................................................. 5

     D.   Analysis Under the *Vizcaino* Factors Justifies a Fee Award of 22% Under
          the Circumstances of this Case ................................................................ 7

          1.   The Results Achieved ....................................................................... 8

          2.   The Risks of Litigation .................................................................... 9

          3.   The Skill Required and the Quality of Work ................................. 11

          4.   The Contingent Nature of the Fee and the Financial Burden Carried by
               Counsel ........................................................................................... 12

          5.   Reaction of the Class to Date.......................................................... 14

     E.   Lodestar Cross-Check of the Fee Request .............................................. 15

II.  CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE
     NECESSARY TO ACHIEVE THE BENEFIT OBTAINED.......................... 18

III. CLASS REPRESENTATIVES' REQUESTS FOR REIMBURSEMENT
     PURSUANT TO 15 U.S.C 77z-1(a)(4) IS REASONABLE ............................ 19

CONCLUSION............................................................................................................ 20

Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses and                    i
 Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-cv-02990-SI

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Amgen Inc. Sec. Litig.*,
5
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)........................................................... 6, 15, 19

6

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ................................................................................... 14

7

*In re Anthem Inc. Data Breach Litig.*,
8
    2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................................................. 6

9

*In re Apple Inc. Device Performance Litig.*,
10
    2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ............................................................. 4

11

*In re Apple Inc. Device Performance Litig.*,
    2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ....................................................... 5, 6, 15

12

*Baird v. BlackRock Institutional Tr. Co.*,
13
    2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) ............................................................... 5

14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
15
    472 U.S. 299 (1985) .............................................................................................. 4, 13

16

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935,942 (9th Cir. 2011) ............................................................................... 5

17

*Boeing Co. v. Van Gemert*,
18
    444 U.S. 472 (1980)................................................................................................... 3

19

*In re Celebrex (Celecoxib) Antitrust Litig.*,
20
    2018 WL 2382091 (E.D. Va. Apr. 18, 2018) ............................................................. 7

21

*Cheng Jianghen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ............................................................. 8

22

*Christine Asia Co. v. Yun Ma*,
23
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................................. 7

24

*City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores*,
    2019 WL 1529517 (W.D. Ark. Apr. 8, 2019).............................................................. 7

25

*Destefano v. Zynga Inc.*,
26
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ....................................................... 5, 9, 11, 13

27

*In re Extreme Networks, Inc. Sec. Litig.*,
28
    2019 WL 3290770 (N.D. Cal. July 22, 2019) ......................................................... 12, 15

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

ii

*In re Facebook Biometric Info. Priv. Litig.*,
522 F. Supp. 3d 617 (N.D. Cal. 2021), *aff'd*, 2022 WL 822923 (9th Cir. Mar.
17, 2022) ....................................................................................................................... 17

*Glass v. UBS Fin. Servs. Inc.*,
331 F. App'x. 452 (9th Cir. 2009) ............................................................................. 4, 5

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ....................................................................................... 14

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................................................. 19

*Hanlon v. Chrysler Corp.*,
150 F. 3d 1011 (9th Cir. 2998) .................................................................................. 5, 7

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ............................................................................................ 18

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619883 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom*, *Hefler v. Pekoc*,
802 F. App'x. 285 (9th Cir. 2020) .......................................................................... 8, 17

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ......................................................................................................... 8

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) .............................................. 11, 12, 14

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................................................. 20

*In re Immune Response Sec. Litig*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................. 18, 20

*In re MacBook Keyboard Litig.*,
2023 WL 3688452 (N.D. Cal. May 25, 2023) ............................................................... 6

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ......................................................................................................... 16

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................................................. 5

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................... 7, 9, 12, 20

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ................................................................................. 5, 6, 7

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

iii

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir.
   2010) ............................................................................................................................ 13

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................................ 9

*Peace Officers' Annuity & Benefit Fund of Ga. v. Davita, Inc.*,
   2021 WL 2981970 (D. Colo. July 15, 2021) ............................................................. 7

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................................... 14

*Rutti v. Lojack Corp. Inc.*,
   2012 WL 3151077 (C.D. Cal. July 31, 2012) ......................................................... 16

*Schulein v. Petroleum Dev. Corp.*,
   2015 WL 12698312 (C.D. Cal. Mar. 16, 2015) ...................................................... 20

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................................................... 7

*In re Silver Wheaton Corp. Sec. Litig.*,
   2020 WL 4581642 (C.D. Cal. Aug. 6, 2020) ............................................................ 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................ 4, 13

*In re Titanium Dioxide Antitrust Litig.*,
   2013 WL 6577029 (D. Md. Dec. 13, 2013) .............................................................. 7

*In re Verifone Holdings, Inc. Sec. Litig.*,
   2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ...................................................... 17

*Vincent v. Hughes Air W., Inc.*,
   557 F.2d 759 (9th Cir. 1977) ..................................................................................... 4

*Vincent v. Reser*,
   2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ....................................................... 3, 18

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ......................................................................... *passim*

*In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., and Prods. Liab. Litig.*,
   2019 WL 2077847 (N.D. Cal. May 10, 2019) .......................................................... 6

*In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*,
   19 F.3d 1291 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe
   Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994) ................................................... 4, 7

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

iv

*In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litigation*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................ 14

**Docketed Cases**

*In re Alphabet, Inc. Sec. Litig.*,
  No. 18-cv-06245, slip op. (N.D. Cal. Sept. 30, 2024) ........................... 17

*In re Broadcom Corp. Class Action Litig.*,
  No. CV-06-5036-R, slip op. (C.D. Cal. Dec. 4, 2012) ........................... 20

*In re Brocade Sec. Litig.*,
  No. 3:05-CV-02042- CRB, slip op. (N.D. Cal. Jan. 26, 2009) ...................... 6

*Hatamian v. Advanced Micro Devices, Inc.*,
  No. 14-cv-00226-YGR, slip op. (N.D. Cal. Mar. 2, 2018) ...................... 20

*In re Hewlett-Packard Co. Sec. Litig.*,
  No. SACV 11-1404, slip op. (C.D. Cal. Sept. 15, 2014) ...................... 6

*In re Intuitive Surgical Sec. Litig.*,
  No. 5:13-cv-01920, slip op. (N.D. Cal. Dec. 20, 2018) ...................... 20

*In re Sandisk LLC Sec. Litig.*,
  No. 3:15-cv-01455-VC, slip op. (N.D. Cal. Oct. 23, 2019) ...................... 6

*In re Snap Inc. Sec. Litig.*,
  No. 2:17-cv-03679-SVW-AGR, slip op. (C.D. Cal. Mar. 9, 2021) ...................... 6

*In re Titan, Inc. Sec. Litig.*,
  No. 04-CV-0676, slip op. (S.D. Cal. Dec. 20, 2005) ...................... 6

*In re Twitter Inc. Sec. Litig.*,
  No. 4:16-cv-05314, slip op. (N.D. Cal. Nov. 21, 2022) ...................... 6, 17

*In re Verisign, Inc. Sec. Litig.*,
  No. C-02-2270-JWC(PVT), slip op. (N.D. Cal Apr. 24, 2007) ...................... 6

**Statutes**

15 U.S.C. § 77z-1(a)(4) ............................................................................ 19

15 U.S.C. § 78u-4(a)(6) .............................................................................. 5

15 U.S.C. § 78u-4(a)(4) ............................................................................ 1, 2

**Rules**

Fed. R. Civ. P. 23(h) ................................................................................ 1

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

v

Fed. R. Civ. P. 54(d) .................................................................................................................... 1

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

vi

# NOTICE OF MOTION

PLEASE TAKE NOTICE that Class Counsel Labaton Keller Sucharow LLP ("Class Counsel" or "Labaton"), on behalf of itself and all Plaintiffs' Counsel, will move this Court on November 8, 2024 at 10:00 a.m., before the Honorable Susan Illston, for an Order, pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure: (i) awarding attorneys' fees in the amount of 22% of the Settlement Fund; (ii) awarding Litigation Expenses in the amount of $280,272.17, plus accrued interest; and (iii) approving Class Representatives' requests for payment of their costs and expenses (including lost wages) related to their representation of the Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), §15 U.S.C. § 78u-4(a)(4).[1]

The Motion is supported by the following Memorandum of Points and Authorities, and the accompanying Declaration of Michael P. Canty in Support of (I) Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses, dated October 3, 2024 ("Canty Declaration" or "Canty Decl."), with annexed exhibits.

Pursuant to the Court's Preliminary Approval Order (ECF No. 124), any objections to this Fee and Expense Application must be filed with the Court by October 18, 2024. A proposed order will be submitted with Class Counsel's reply submission on or before November 1, 2024, after the deadline for objecting has passed.

# STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should approve Class Counsel's request, on behalf of Plaintiffs' Counsel, for an award of attorneys' fees in the amount of 22% of the Settlement Fund.

2.      Whether the Court should approve Class Counsel's request for payment of Litigation Expenses incurred by Class Counsel in the amount of $280,272.17.

---

[1] All capitalized terms used herein are defined in the Stipulation and Agreement of Settlement, dated May 29, 2024 ("Stipulation"), and have the same meanings as set forth therein. ECF No. 119-2.
"Plaintiffs' Counsel" refers collectively to Labaton Keller Sucharow LLP, Adamski Moroski Madden Cumberland & Green LLP, and O'Neill, Heinrich, Damkroger, Bergmeyer & Shultz, P.C., L.L.O.

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-cv-02990-SI

1

3.      Whether the Court should award Class Representatives $17,000, in the aggregate, pursuant to 15 U.S.C. § 78u-4(a)(4), for reimbursement of their reasonable costs and expenses (including lost wages) related to their representation of the Class.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

As detailed in the Stipulation, the proposed Settlement, if approved by the Court, will resolve the Action in exchange for a payment of $60,000,000.[2] This recovery represents an excellent result for the Class as it provides substantial, near-term compensation to Class Members, while avoiding the risks associated with pursuing the Action through dispositive motion practice, trial, and the inevitable appeals that would follow.

In order to achieve this significant recovery, Class Counsel vigorously pursued the claims against Defendants for more than two years, during which Class Counsel, among other things, conducted an extensive investigation and prepared a detailed consolidated amended complaint; opposed Defendants' motion to dismiss the Complaint through briefing and oral argument; moved for and obtained class certification; and negotiated aggressively against a widely recognized and respected defense firm on a fully contingent basis. In litigating the Action, Class Counsel worked tirelessly on behalf of the Class and expended substantial time and resources to ensure the best possible recovery for Class Members, all without any guarantee of recovery.

Class Counsel has not received any compensation for its successful litigation of the case. Class Counsel respectfully requests: an award of an attorneys' fee equal to 22% of the Settlement Fund, which will include any accrued interest; that Class Counsel be paid out of the Settlement Fund for Litigation Expenses in the amount of $280,272.17, plus accrued interest; and that Class Representatives' request for reimbursement in the total amount of $17,000, pursuant to the PSLRA, be approved. The requested fee and expenses have been approved by Class

---

[2]   The terms of the Settlement are set forth in the Stipulation. Unless otherwise noted, citations and internal quotations have been omitted.

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

2

1    Representatives. *See* Ex. 1 at ¶¶2, 7, 12; Ex. 2 at ¶¶2, 7, 12.[3]

2            As discussed herein, the requested 22% fee is ***below*** the Ninth Circuit's "benchmark" for

3    contingent fees in common fund cases and represents a great value for the Class considering the

4    excellent recovery and the risks that Class Representatives and Class Counsel overcame and

5    continued to face in the Action. The requested fee is also supported by the other factors considered

6    by courts in the Ninth Circuit in determining the reasonableness of the fee, including the results

7    achieved, the quality of Class Counsel's efforts, awards in similar cases, and the lodestar cross

8    check. Furthermore, the expenses requested are reasonable in amount and were necessarily

9    incurred for the successful prosecution of the Action. Accordingly, it is respectfully submitted

10   that the requested fees and expenses should be awarded in full.

11                                               **ARGUMENT**

12   **I.     CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 22% OF THE
            COMMON FUND SHOULD BE APPROVED**

13           **A.     Class Counsel Is Entitled to an Award of Attorneys' Fees
14                    from the Common Fund**

15           It is well settled that attorneys who represent a class and achieve a benefit for class

16   members are entitled to a reasonable fee as compensation for their services. The Supreme Court

17   has recognized that "a lawyer who recovers a common fund for the benefit of persons other than

18   himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*

19   *Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vincent v. Reser*, 2013 WL 621865, at *4

20   (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478). Indeed, the Ninth Circuit has

21   expressly reasoned that "a private plaintiff, or his attorney, whose efforts create, discover,

22

23   _____
         [3]    All exhibits referenced herein are annexed to the Canty Declaration, filed herewith. For
24   clarity, citations to exhibits that themselves have attached exhibits, will be referenced as "Ex.__-
     __." The first numerical reference is to the designation of the entire exhibit to the Canty
25   Declaration and the second alphabetical reference is to the exhibit designation within the exhibit
     itself.
26           The Canty Declaration is an integral part of this motion and is incorporated herein by
     reference. For the sake of brevity, the Court is respectfully referred to it for, *inter alia*, a detailed
27   description of the allegations and claims, the procedural history of the Action, the risks faced by
     the Class in pursuing litigation, the efforts that led to a settlement, and a description of the services
28   provided by Class Counsel. Citations to "¶" in this motion refer to paragraphs in the Canty
     Declaration.

increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this rule, known as the "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*, 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).

The Supreme Court has also emphasized that private securities actions, like this Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord, Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'").

### B.   A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

Although courts within this Circuit have discretion to choose either the lodestar or percentage method of calculating fees (*see WPPSS*, 19 F.3d at 1296), in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002), the Ninth Circuit expressly approved the use of the percentage method in common fund cases. *See also Glass v. UBS Fin. Servs. Inc.*, 331 F. App'x. 452, 456-57 (9th Cir. 2009) (affirming district court's use of percentage of recovery method to award fee).

The percentage-of-recovery method for awarding attorneys' fees is preferable in cases with a common-fund recovery as it "aligns the lawyers' interests with achieving the highest award for class members, and reducing the burden on the courts that a complex lodestar calculation requires." *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021). Indeed, "the use of the percentage-of-the fund method in common fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs'

counsel." *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *12 (N.D. Cal. Feb. 17, 2023); *see also Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x. 452, 456-57 (9th Cir. 2009) (overruling objection based on use of percentage-of-the-fund approach); *Baird v. BlackRock Institutional Tr. Co.*, 2021 WL 5113030, at *6-7 (N.D. Cal. Nov. 3, 2021) (applying percentage of the fund method and lodestar crosscheck).

Further, the percentage of the fund method is appropriate in common fund cases because "the benefit to the class is easily quantified." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935,942 (9th Cir. 2011); *Destefano v. Zynga Inc.,* 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the Class, the Court will primarily determine attorneys' fees using the percentage method. . . ").

The use of the percentage-of-recovery method also comports with the language of the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

**C.**     **The Requested Attorneys' Fees of 22% of the**
          <u>**Settlement Fund Is Lower than Comparable Fees**</u>

In applying the percentage of the fund method, the Ninth Circuit has established 25% as a "benchmark" percentage, which may be adjusted depending on the circumstances of a case. *Bluetooth*, 654 F.3d at 942 ("courts typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure"); *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1029 (9th Cir. 2998) ("This circuit has established 25% of the common fund as a benchmark for attorneys' fees."); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("Under the percentage of recovery method, the attorneys' fees equal some percentage of the common settlement fund; in

this circuit, the benchmark is 25%.); *see also In re Apple Inc. Device . Performance Litig.*, 2023 WL 2090981, at *12. "It is well established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees." *In re Anthem Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018).

Here, the requested fee of 22% is, of course, *less than* the 25% benchmark. A review of fee awards in district courts within the Ninth Circuit, and elsewhere, shows that an award of 22% is on the lower end of percentage fees awarded in securities and other complex common fund cases with comparable settlements. *See, e.g., In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *13-14 (N.D. Cal. May 25, 2023) (awarding 30% of $50 million settlement); *In re Sandisk LLC Sec. Litig.*, No. 3:15-cv-01455-VC, slip op. at 2 (N.D. Cal. Oct. 23, 2019) (Ex. 8)[4] (awarding 25% of $50 million settlement); *In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., and Prods. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Hewlett-Packard Co. Sec. Litig.*, No. SACV 11-1404, slip op. at 2 (C.D. Cal. Sept. 15, 2014) (awarding 25% of $57 million settlement) (Ex. 8); *In re Verisign, Inc. Sec. Litig.*, No. C-02-2270-JWC(PVT), slip op. at 1 (N.D. Cal Apr. 24, 2007) (awarding 25% of $78 million) (Ex. 8); *In re Titan, Inc. Sec. Litig.*, No. 04-CV-0676, slip op. at 3 (S.D. Cal. Dec. 20, 2005) (awarding 25% of $61.5 million settlement) (Ex. 8).[5]

Additionally, a recent analysis by NERA Economic Consulting of securities class action settlements found that from 2014-2023, the median attorneys' fee award for settlements of between $25 million and $100 million was 25%. *See* Edward Flores and Svetlana Starykh, Recent

---

[4] All unreported slip opinions are submitted in a compendium of cases, attached as Ex.8 to the Canty Declaration.

[5] Indeed, awards of more than 22% are frequently awarded within the Ninth Circuit in substantially larger settlements as well. *See, e.g., In re Twitter Inc. Sec. Litig.,* No. 4:16-cv-05314, slip op. at 2 (N.D. Cal. Nov. 21, 2022) (awarding 22.5% of $809,500,000 settlement) (Ex. 8); *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, slip op. at 1-3 (C.D. Cal. Mar. 9, 2021), (awarding 25% of $154.7 million settlement) (Ex. 8); *In re Amgen Inc. Sec. Litig.,* 2016 WL 10571773, at *9-10 (C.D. Cal. Oct. 25, 2016) (awarding 25% of $95 million settlement); *In re Brocade Sec. Litig.*, No. 3:05-CV-02042- CRB, slip op. at 13 (N.D. Cal. Jan. 26, 2009) (awarding 25% of $160 million settlement) (Ex. 8).

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

6

Trends in Securities Class Action Litigation: 2023 Full-Year Review (NERA 2024), Ex. 7 at 29.[6]

Accordingly, a 22% fee would be *lower than* numerous fee awards throughout the Ninth Circuit and nationwide.

### D.   Analysis Under the *Vizcaino* Factors Justifies a Fee Award of 22% Under the Circumstances of this Case

The guiding principle in this Circuit is that a fee award must be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008).

In assessing attorneys' fees under the percentage method, the Court can consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of the work; (4) awards made in similar cases; and (5) the contingent nature of the fee and financial burden carried by counsel. *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD- Rental Antitrust Litig.* 779 F. 3d 954-55 ("When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work), and whether the case was handled on a contingency basis.").

The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Hanlon,* 150 F.3d at 1029; *see also Vizcaino*, 290 F.3d at 1048 (district courts

---

[6] *See also In re Celebrex (Celecoxib) Antitrust Litig.*, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) (awarding 33% of $94 million settlement fund); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding 33.33% of $163.5 million settlement fund); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *20 (S.D.N.Y. Oct. 16, 2019) (awarding 25% of $250 million settlement); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *15-16 (S.D.N.Y. July 21, 2020) (awarding 25% of $240 million settlement); *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores*, 2019 WL 1529517, at *2 (W.D. Ark. Apr. 8, 2019) (awarding 30% of $160 million settlement); *Peace Officers' Annuity & Benefit Fund of Ga. v. Davita, Inc.*, 2021 WL 2981970, at *4 (D. Colo. July 15, 2021) (awarding 30% of $135 million settlement).

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-cv-02990-SI

7

must ensure that fee awards are "supported by findings that take into account all of the circumstances of the case").

### 1.    The Results Achieved

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"); *see also Hefler v. Wells Fargo & Co.*, 2018 WL 6619883, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom*, *Hefler v. Pekoc*, 802 F. App'x. 285 (9th Cir. 2020). Class Counsel submits that the $60 million proposed Settlement is an excellent result for the Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through summary judgment and trial.

As discussed in the Canty Declaration, the Settlement represents a very meaningful portion of the Class's reasonably recoverable damages, as estimated under various potential scenarios analyzed by Class Representatives' damages expert. If the Class's claims survived summary judgment, trial, post-trial motions, and appeals completely intact, then maximum aggregate damages were estimated to be approximately $1.036 billion, after netting out gains on pre-Class Period purchases. However, Defendants would have likely sought to establish that their maximum exposure, assuming liability was proven, was roughly $600 million, based on arguments that at least some of the stock price decline on the sole remaining allegedly corrective disclosure was not attributable to the alleged fraud, because the market had already priced in at least some risk about employee attrition and sales integration challenges before then. At minimum, Class Representatives' damages expert would have been required to reliably account for this information, which could have significantly reduced the total amount of recoverable damages. Accordingly, the Settlement recovers a range of approximately 5.8% to 10% of these estimated damages. ¶¶9, 75, 76, 93. This excellent recovery supports approval of the fee. *See, e.g. Cheng Jianghen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) (finding settlement that represents approximately 10% of total maximum potential damages is a "favorable

outcome in light of the challenging nature of a securities class action cases" and supports the fee award).

Significantly, the $60 million Settlement Amount is four times the median recovery of $15 million in securities class action cases in 2023. ¶8; *see* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research 2024), Ex. 3 at 1. During the period from 2018 through 2022, the median settlement value was $11.7 million, and in 2022 it was $13.5 million. *Id*. It is also well above the $9 million median recovery for securities class actions prosecuted and settled within the Ninth Circuit from 2014 through 2023, above the average securities settlement nationwide in 2023 of $47.3 million, and above the $46.5 million average from 2018 to 2022. *Id*. at 1, 15. In terms of the percentage of recovery achieved here, the Settlement recovers a greater percentage of estimated damages than median settlements in similarly sized cases. According to Cornerstone Research, for cases with total estimated damages (based on Cornerstone's methodology) of more than $1 billion, median settlements in 2023 recovered 2.0% of total estimated damages, and from 2014 to 2022, median settlements recovered 2.6% of damages. *Id*. at 6.

In sum, the Settlement provides an excellent recovery for the Class, which supports approval of the requested fee.

### 2. The Risks of Litigation

The risk involved in a litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379, n.10 (9th Cir. 1995) (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *see also Zynga*, 2016 WL 537946, at *17 (approving requested fee and noting that "as to the second factor . . . the risks associated with the case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation"); *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d at 1047 (noting that the risk of litigation, including the ability to prove loss causation and the risk that Defendants prevail on damages, support the requested fee). As set forth

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

9

in Section VI. of the Canty Declaration, Class Counsel confronted, and would continue to do so if the litigation had continued, a number of significant legal and factual challenges during the course of the litigation.

Principally, the Court had granted Defendants' Motion to Dismiss, in part, dismissing all allegations related to the data security incident in January 2022 and a majority of the alleged misstatements related to the Auth0 integration. As a result, Class Representatives moved into discovery with a significantly shorter Class Period (March 3, 2022 through August 31, 2022) and more limited theory of fraud. For example, although the Court found that the two remaining allegedly false and misleading statements were actionable, there was a substantial risk that the Court could have changed course at summary judgment or at trial—especially given the potential for evidence to develop that undercut the aspects of the statements (relating to training and the timing of the integration plan) that the Court originally credited. For instance, Defendants would likely argue in continued litigation that Class Representatives could not prove that Defendants concealed any material negative information in the earnings calls about Okta's integration plan or the training provided to its combined sales force, presenting a real risk to establishing the theory of fraud that the Court credited in upholding the March and June alleged misstatements. ¶¶65, 67-69.

Class Counsel also faced significant challenges with respect to proving Defendants' scienter. Defendants would have likely sought to establish, *inter alia*, that despite some challenges, the attrition and sales integration issues did not begin to impact the Company's financial performance until after the June 2022 statements and that any integration challenges faced by the Company before then were therefore routine. ¶¶70-71. Defendants likely would have argued that, at best, Defendants had knowledge that Okta was going through some expected integration challenges that would come along with any major acquisition, and that such challenges did not raise to the level of severity requiring disclosure because, at that time, the integration issues had yet to have any impact on the Company's financial results or projections. Accordingly, Defendants would likely seek to establish that they did not make the decision to revise Okta's

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

10

1    FY23 guidance until late July 2022, nearly two months after the final alleged misstatements on

2    June 2, 2022, and thus, their general statements that the integration was going well—qualified

3    with other statements that there was still work to do—were not made with any fraudulent intent

4    to mislead investors at the time the statements were made. ¶¶72-73.

5          As mentioned above, even if Class Counsel was successful in proving falsity and scienter

6    with respect to the March 2 and June 2, 2022 alleged misstatements, the case presented significant

7    challenges and uncertainty with respect to proving loss causation and damages. Defendants were

8    likely to seek to establish that the August 31, 2022 alleged disclosure (the only allegedly

9    corrective disclosure remaining in the case) was not corrective because the market had already

10   priced in at least some risk about employee attrition and sales integration challenges before then.

11   At minimum, Class Representatives' damages expert would have been required to reliably

12   account for this information, which could have significantly reduced the total amount of

13   recoverable damages. ¶¶74-75.

14         Regardless of who would ultimately be successful at trial, there is no doubt that both sides

15   were dealing with difficult challenges and preparing complex and nuanced information for the

16   Court, and in the future a jury, with no certainty as to the outcome. Class Counsel worked

17   diligently to achieve a significant result for the Class in the face of these very real risks. Under

18   these circumstances, the requested fee is fully appropriate.

19                    **3.       The Skill Required and the Quality of Work**

20         Courts have recognized that the "prosecution and management of a complex national class

21   action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, 2005 WL 1594389,

22   at *12 (C.D. Cal. June 10, 2005); *see also Vizcaino,* 290 F.3d at 1048. "This is particularly true

23   in securities cases because the Private Securities Litigation Reform Act makes it much more

24   difficult for securities plaintiffs to get past a motion to dismiss." *Zynga*, 2016 WL 537946, at *17

25   (quoting *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d at 1047).

26         From the inception of the Action, Class Counsel—a firm that practices extensively in the

27   highly challenging field of complex securities litigation and has skillfully litigated these types of

28

actions in courts across the country through trial (*see* Ex. 5)—engaged in a rigorous and concerted effort to obtain the maximum recovery for the Class. This case required an in-depth investigation, a thorough understanding of complicated factual and legal issues, fact discovery, class certification efforts, and the skill to respond to the host of challenges that Defendants raised during the litigation. *See generally* Canty Declaration; Class Representatives' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation ("Settlement Memorandum"). Class Counsel's efforts have resulted in an excellent result for the Class, particularly in light of the risks and challenges of continued litigation, given the Court's decision on the Motion to Dismiss shortening the Class Period and limiting Class Representatives' theory of fraud.

Defendants, however, strenuously maintained, and would continue to contend, that no liability or damages could be proven at trial, and aggregate damages would vary depending on the findings returned by a jury. *See generally* Canty Decl. at §VI. Accordingly, the quality of the legal services provided by Class Counsel over the course of the Action, together with its substantial experience in complex class actions and commitment to the litigation, enabled Class Counsel to obtain the very favorable Settlement, and supports the requested fee award. *See, e.g., In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *11 (N.D. Cal. July 22, 2019) (approving requested fee and noting the "fine quality" of Labaton's work as a factor weighing in favor of approval of the fee request).

The quality of opposing counsel is also important in evaluating the quality of the work done by Class Counsel. *See, e.g.*, *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12. Class Counsel was opposed in this Action by very skilled and highly respected lawyers at Gibson, Dunn & Crutcher LLP, a firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases such as this. ¶103. In the face of this opposition, Class Counsel was able to develop the case so as to obtain a very favorable recovery for the Class.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Counsel

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *In re Omnivision Techs.,*

Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses and Memorandum of Points and Authorities in Support Thereof
Case No. 3:22-cv-02990-SI

12

*Inc.,* 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *see also Zynga,* 2016 WL 537946, at *18 (noting that "when counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award").

The Supreme Court has also emphasized that private securities actions such as this provide "a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc.*, 472 U.S. at 310; *Tellabs, Inc.*, 551 U.S. at 319 (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions). Yet, vigorous private enforcement of the federal securities laws and state corporation laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to large corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. For example, Class Counsel tried *In re JDS Uniphase Securities Litigation*, Case No. C-02-1486 CW (EDL) (N.D. Cal. Nov. 27, 2007), through to a disappointing verdict for the defendants, receiving no compensation and expending millions of dollars in time and expenses. *See also In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million). *See also* ¶¶95-101.

Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses and Memorandum of Points and Authorities in Support Thereof Case No. 3:22-cv-02990-SI

13

Class Counsel is aware of many other hard-fought lawsuits where excellent professional efforts by members of the plaintiff's bar produced no fee for counsel. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011)); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation). As the court in *In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litigation,* 364 F. Supp. 2d 980 (D. Minn. 2005) recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994.

Here, because Class Counsel's fee was entirely contingent, the only certainty was that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended. Unlike counsel for defendants, who are paid and reimbursed for their expenses on a current basis, Class Counsel have received no compensation for their efforts during the course of the Action. In the face of very real uncertainties regarding the outcome of the case, Class Counsel prosecuted this Action on a wholly contingent basis, knowing that the litigation could last for years and would require devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of compensation or reimbursement.

### 5.    Reaction of the Class to Date

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See In re Heritage Bond Liti*g., 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award.").

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

14

Here, a total of 61,665 Notices reporting the maximum amount of the Fee and Expense Application have been sent to potential Class Members and their brokers, banks, and other nominees, and the long-form notice was made available on a website dedicated to the Settlement. *See* Declaration of Morgan Kimball Regarding Notice Mailing, dated October 2, 2024, Ex. 4 ("Mailing Decl."), ¶¶5-12. Additionally, the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire*. Ex. 4 at ¶14. In addition, the Stipulation and Notice, among other documents, were posted to a website dedicated to the Settlement. *Id*. at ¶16. Although the objection deadline will not run until October 18, 2024, to date no objections to the requested amount of attorneys' fees and expenses have been received.[7]

### E.     Lodestar Cross-Check of the Fee Request

Although an analysis of counsel's lodestar is not required for an award of attorneys' fees in the Ninth Circuit, it is often considered in order to ensure that an awarded fee would not result in an unearned "windfall" to counsel. *In re Amgen Inc. Sec. Litig*., 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness."); *In re Extreme Networks, Inc. Sec. Litig*., 2019 WL 3290770, at *10 (noting that "lodestar may provide a useful perspective on the reasonableness of a given percentage award").

The Ninth Circuit has recognized that attorneys in common fund cases are frequently awarded a "multiple" of their lodestar, rewarding them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051. For example, the district court in *Vizcaino* approved a fee that reflected a multiple of 3.65 times counsel's lodestar. *Id*. The Ninth Circuit affirmed, holding that the district court correctly considered the range of multiples applied in common fund cases. *Id*.

"Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate." *In re Apple*, 2023 WL 2090981, at *12. Class Counsel's "lodestar,"

---

[7] Class Counsel will address any future objections in its reply papers, which will be filed with the Court on or before November 1, 2024.

1    derived by multiplying the hours worked on the litigation by each attorney and professional by

2    their current hourly rates, is $2,882,615.50.[8] *See* Ex. 5-A. This lodestar is a function of the

3    vigorous but efficient prosecution of the case, as described in the Canty Declaration. As detailed

4    in the Canty Declaration, and Labaton's Fee and Expense Declaration, 4,618.80 hours of attorney

5    and professional time were expended litigating the Action for the benefit of the Class. *Id*.

6    Consistent with the Northern District of California Procedural Guidance for Class Action

7    Settlements, Labaton's Declaration includes a table showing the firm's time broken down into 13

8    different categories of work. Ex. 5-B.

9         The work of Class Counsel was necessary to the success of the litigation and as more fully

10   described in the Canty Declaration, Class Counsel: (i) conducted an extensive investigation of the

11   claims at issue, including interviews with approximately 19 former Okta employees (nine of

12   whom provided information for use in the Complaint); (ii) prepared and filed a detailed

13   Complaint, which expanded the scope of the initial complaint by adding particularized allegations

14   supporting claims that Defendants misled investors about the Auth0 integration; (iii) opposed

15   Defendants' wide ranging motion to dismiss the Complaint through briefing and oral argument;

16   (iv) moved for and obtained class certification; (v) researched, drafted, and propounded discovery

17   requests on Defendants; (vi) reviewed nearly 4,000 documents in connection with the mediation

18   process; (vii) prepared for and participated in a formal mediation process, including drafting and

19   analyzing extensive mediation statements; and (vii) consulted with experts in the fields of

20   damages and loss causation. *See generally* Canty Decl. at §§III.-V. The substantial time devoted

21   to the Action reflects the dedicated effort needed to prosecute the claims and bring them to a

22   favorable and timely resolution.

23        Additionally, Class Counsel's rates are reasonable and range from $750 to $1,275 for

24   partners, $800 to $925 for of counsels, and $300 to $650 for associates and staff attorneys. *See*

25

26   _____

27   [8] The Supreme Court and other courts have held that the use of current rates is proper since
     such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S.
     274, 283-84 (1989); *Rutti v. Lojack Corp. Inc.*, 2012 WL 3151077, at *11 (C.D. Cal. July 31,
28   2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates") (citing
     *Jenkins*, 491 U.S. at 284).

Ex. 5-A. Class Counsel submits that these rates are comparable or less than those used by peer defense-side law firms litigating matters of similar magnitude and complexity. Sample defense firm rates in 2023, gathered by Labaton annually from bankruptcy court filings nationwide, often exceeded these rates. ¶107; Ex. 6.

Here, the requested fee of 22%, if awarded, would represent a "multiplier" of approximately 4.58 of Class Counsel's lodestar. This lodestar multiplier is within the reasonable range given, in particular, the significant result achieved and the efficiency of the litigation, accordingly the lodestar cross-check supports the fee request. *See, e.g., In re Alphabet, Inc. Sec. Litig.*, No. 18-cv-06245, slip op. at 12 (N.D. Cal. Sept. 30, 2024) (Ex. 8) (approving fee in $350 million settlement representing 4.58 multiplier); *In re Verifone Holdings, Inc. Sec. Litig.,* 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) (awarding fee in $95 million settlement with a 4.3 multiplier); *In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314, ECF No. 661 at 9 (N.D. Cal. Oct. 13, 2022) (fee brief reporting multiplier of 4.14 to 4.33), and *Twitter*, slip op. at 2 No. 4:16-cv-05314 (N.D. Cal. Nov. 21, 2022) (Ex. 8) (awarding fee in $809.5 million settlement representing a 4.14 multiplier); *Hefler*, 2018 WL 6619983, at *14 (awarding fee in $480 million settlement representing a 3.22 multiplier); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (awarding fee in $650 million common fund settlement representing 4.71 multiplier finding that "the results obtained and the risks at trial warrant a higher-end multiplier"), *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022). Given the risks undertaken by Class Counsel and the excellent results achieved for the Class, a risk multiplier of approximately 4.58 is reasonable here.

Furthermore, additional work will be required of Class Counsel on an ongoing basis, including:  correspondence with Class Members; preparation for, and participation in, the final approval hearing; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Class Members who have submitted valid Claim Forms. However, Class Counsel will not seek payment for this additional work.

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

17

## II.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel has incurred expenses in the aggregate amount of $280,272.17 to litigate the Action and achieve a recovery for the Class. Ex. 5-C.

"Attorneys who create[] a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent,* 2013 WL 621865, at *5. In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the non-contingent marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'").

The main expense here relates to work performed by Class Representatives' experts and other professionals ($121,105.64 or approximately 43% of total expenses). The services of Class Representatives' consulting damages experts were necessary throughout the course of the litigation to analyze loss causation and damages issues, prepare the motion for class certification, engage in the mediated settlement discussions, and to prepare the Plan of Allocation. Class Counsel also retained outside counsel for the representation of confidential witnesses identified during the investigation of the claims. Class Counsel received crucial advice and assistance from these professionals. ¶114.

Class Counsel also paid $45,800 (or approximately 16% of total costs) in mediation fees assessed by the mediator in this matter. ¶116.

Class Counsel was also required to travel and to work long hours. Work-related transportation, lodging, and meal costs totaled $15,830.01. ¶117. All airfare is at coach-equivalent rates. *See In re Immune Response Sec. Litig*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("reimbursement for travel expenses . . . is within the broad discretion of the Court").

A significant cost was the expense of electronic discovery, including retaining a database provider to host and manage the data from the document productions obtained in the Action. Those costs totaled $65,453.40, or approximately 23% of the total expenses. ¶115.

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

18

Computerized research totals $15,351.08. These are charges for computerized factual and legal research services, such as PACER and Thomson one Research. These services allowed counsel to perform media searches concerning the Company and Defendants, obtain analysts' reports and financial data, and access court dockets. Charges for Westlaw and Lexis/Nexis have not been included. ¶118.

The other expenses for which Class Counsel seeks payment are the types of expenses that are necessarily incurred in litigation. These expenses include, among others, duplicating costs, long distance telephone and conference call charges, and court filing fees. In sum, Class Counsel's expenses, in an aggregate amount of $280,272.17, were reasonable and necessary to the prosecution of the Action and should be approved.

## III.   CLASS REPRESENTATIVES' REQUESTS FOR REIMBURSEMENT PURSUANT TO 15 U.S.C 77Z-1(A)(4) IS REASONABLE

The PSLRA, 15 U.S.C. § 77z-1(a)(4), permits an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019); *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *10 (reasoning that "courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of the class" and awarding State of Connecticut $30,983.99 related to the time it dedicated to the case).

Here, Class Representatives, sophisticated institutional investors that took their responsibilities on behalf of the Class very seriously, are seeking $17,000 in total related to the time they dedicated to the Action. *See* Exs. 1 and 2. Consistent with the Northern District guidelines, Class Representatives have submitted declarations setting forth the time and effort they dedicated to the Action, including conferring with counsel on the overall strategy for prosecuting the Action; reviewing pleadings and court filings; evaluating regular status reports; searching for and compiling documents for production to Defendants; reviewing interrogatory

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-02990-SI

19

and other discovery responses; preparing for and attending a full-day mediation in New York; and analyzing and responding to Defendants' settlement proposals over the course of the mediation. *See* Ex. 1 at ¶¶4, 10 and Ex. 2 at ¶¶4, 10.

Numerous cases have approved reasonable payments to compensate class representatives for the time, effort, and expenses devoted by them on behalf of a class, which represent costs to the representatives. *See, e.g., In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920, slip op. at 4 (N.D. Cal. Dec. 20, 2018) (awarding $49,754.18 and $9,100.00 to class representatives) (Ex. 8); *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-YGR, slip op. at 4 (N.D. Cal. Mar. 2, 2018) (awarding costs and expenses to two class representatives in the amount of $8,348.25 and $14,875.00) (Ex. 8); *In re Broadcom Corp. Class Action Litig.*, No. CV-06-5036-R (CWx), slip op. at 2 (C.D. Cal. Dec. 4, 2012)(awarding costs and expenses to class representative in the amount of $21,087) (Ex. 8); *Schulein v. Petroleum Dev. Corp.*, 2015 WL 12698312, at *6 (C.D. Cal. Mar. 16, 2015) (approving awards ranging from $7,500 to $10,000 to compensate named plaintiffs for "the time they spent litigating the case"); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d at 1049 (awarding lead plaintiffs collectively $29,913.80 for the time they dedicated to the litigation); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1173-74 (awarding $40,000 to lead plaintiff pursuant to PSLRA).

As explained in one decision, courts "award such costs and expenses to both reimburse named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as provide an incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the first place." *Hicks v. Stanley*, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

Class Counsel respectfully submits that the amounts sought here are reasonable based on Class Representatives' active involvement in the Action from inception to settlement.

## CONCLUSION

For all the foregoing reasons, Class Counsel respectfully requests that the Court award: (i) attorneys' fees of 22% of the Settlement Fund; (ii) Litigation Expenses in the amount of

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-cv-02990-SI

20

1   $280,272.17; and (iii) $17,000 to Class Representatives, pursuant to the PSLRA. A proposed

2   order will be submitted with Class Counsel's reply papers, after the deadline for objecting has

3   passed.

4   Dated: October 3, 2024                    Respectfully submitted,

5                                             **LABATON KELLER SUCHAROW LLP**

6

7                              By:    /s/ *Michael P. Canty*
                                      Michael P. Canty (*pro hac vice*)
8                                     James T. Christie (*pro hac vice*)
                                      Nicholas D. Manningham (*pro hac vice*)
9                                     140 Broadway
                                      New York, NY 10005
10                                    Telephone: (212) 907-0700
                                      mcanty@labaton.com
11                                    jchristie@labaton.com
                                      nmanningham@labaton.com
12

13                                    *Attorneys for Plaintiffs and the Class*

14                                    **ADAMSKI MOROSKI MADDEN
                                      CUMBERLAND & GREEN LLP**
15                                    James M. Wagstaffe (#95535)
                                      Mailing Address:  P.O. Box 3835
16                                    San Luis Obispo, CA 93403-3835
                                      Physical Address:  6633 Bay Laurel Place
17                                    Avila Beach, CA 93424
                                      Telephone: (805) 543-0990
18
19                                    *Liaison Counsel for Plaintiffs and the Class*
20
21
22
23
24
25
26
27
28

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on October 3, 2024, I authorized the electronic filing of the foregoing

3  with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

4  to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all

5  registered participants only.

6      I certify under penalty of perjury under the laws of the United States of America that the

7  foregoing is true and correct.

8      Executed on October 3, 2024

9

10                              /s/ *Michael P. Canty*
                                Michael P. Canty
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28